**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

FILED

Nov 3  4 12 PM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

Joan KOSSOFF,                    :
    Plaintiff                      :
                        :

vs.                              :    Civil No. 3:03cv203 (PCD)
                        :
                        :

GENERAL ELECTRIC CAPITAL CORP., :
    Defendant                      :

## RULING ON MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant moves to dismiss the present action. For the reasons stated herein, the Motion [Doc. No. 13] is **granted, in part**. Counts Three, Four, Six, and Seven are **dismissed** entirely, **without prejudice**. Count Five is **dismissed, in part**.

## I. STANDARD OF REVIEW:

A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir. 2001), quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A motion to dismiss must be decided on the facts as alleged in the complaint. Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001). All facts in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 390 n.1 (2d Cir. 2001).

## II. BACKGROUND:

Plaintiff, a former employee of Defendant, alleges the following violations while in Defendant's employ: the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621,

1

et seq, (Count One); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq

(Count Two); the Connecticut Fair Employment Practices Act ("FEPA"), Conn. Gen. Stat. § 46a-

50, et seq (Count Three - Age Discrimination), (Count Four - Disability Discrimination); as well

as several common law causes of action, including Breach of the Covenant of Good Faith (Count

Five); Breach of Contract (Count Six); Promissory Estoppel (Count Seven); Negligent

Misrepresentation (Count Eight); and Fraud (Count Nine).  As a result, Plaintiff alleges the stress

of unemployment, humiliation and embarrassment, loss of esteem, damage to her professional

career and reputation, lost wages and fringe benefits, mental pain and suffering, physical

disorders, and being compelled to accept employment at substantially lower pay.

Plaintiff is over the age of 40 with sciatica, which materially restricts her ability to sit.

She began employment with Phoenixcor, Inc., Defendant's predecessor in interest on or about

July 21, 1997 as Director of Contracts.  In April 1999, Defendant acquired Phoenixcor, Inc..

Plaintiff remained in her position and was thereafter employed by Defendant.  With or without

reasonable accommodations, Plaintiff was able to perform all essential functions of her position.

Defendant was aware of her diagnosis and perceived her as disabled.  Plaintiff alleges that

throughout her employment, an alleged contract, whether expressly written, oral, or implied,

provided that Plaintiff would not be subject to disparate treatment on the basis of any disability,

perceived disability, or her age.

On or about April 2000, Plaintiff was informed by her supervisor, Jon Edel, that she

would be removed from her position.  Edel told Plaintiff that because the attorney handling

Phoenixcor's portfolio left, the position of Manager of Contracts required formal paralegal

training.  Plaintiff does not have this training and was told that she was therefore no longer

2

qualified for the position. Plaintiff was thus to be moved to Customer Service with the title of

Support Services Manager where she would provide backup for the Contracts Department. Edel

told Plaintiff that her compensation and benefits would remain unchanged. She would also be

permitted to telecommute from home one day a week. Plaintiff accepted the new position in

reliance on Edel's statements.

The replacement Manager of Contracts, Christine Wright, is a non-physically disabled

female under the age of 40. Plaintiff trained Wright with respect to contract products, the

computer system, and information database for approximately three months.

In June 2001 Plaintiff was informed by a coworker that her position was going to be

transferred to St. Louis, Missouri. When Plaintiff asked what was going to happen to her, Edel

told her that he did not know.

In August 2001, Edel told Plaintiff of Defendant's concern about her telecommuting on

Fridays. Jennifer Cherry, under the age of 40 and not disabled, from Human Resources was

worried that there was no way to know if Plaintiff was actually working while at home. Edel,

however, had actually knew that not only was she working, but that she was also working many

evenings and weekends.

In September 2001, Plaintiff asked Edel when she would be receiving her annual raise.

Edel said that he had requested her raise. Over the next few months, Plaintiff inquired about her

raise, without response. In December 2001, Plaintiff was told that because she was at the top of

the pay scale for customer service persons, she would not receive a raise.

In September 2001, Wright took maternity leave until January 2002. Plaintiff agreed to

fill in for her, taking on additional responsibilities. Plaintiff satisfactorily performed Wright's

3

duties for the entire time, during which time she learned that paralegal training was not required for the position. Any changes made to the position were minor, not requiring paralegal training, and Plaintiff was able to pick up on the differences in less than a month.

Defendant failed to pay Plaintiff her VIC bonus for worked performed in 2001 to which she alleges that she was entitled.

In January 2002, Plaintiff learned that she would be terminated. In February 2002, Plaintiff received a severance package from Defendant. At about the same time, orally requested a copy of her personnel records to conduct a job search. The records were eventually supplied, after a second oral request in April 2002. Included was a statement on her most recent performance appraisal, "health and commuting issue could be limiting factors in placing elsewhere." Plaintiff had not previously noticed this phrase on the review document.[1]

On or about May 31, 2002, Plaintiff filed a claim of age and disability discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC") (CHRO Case 0220427 and EEOC Case 16AA201303). While Plaintiff's complaint was pending with the CHRO and EEOC, Defendant invoked an Employee Issue Resolution Program known as Resolve. Defendant attempted to stay the administrative proceedings so that the matter could be handled through Resolve. Although this program was in effect throughout Plaintiff's employment, she was only made aware of it once she filed a complaint with the EEOC and CHRO. It was not invoked during the course of

---

[1]    In her Complaint, ¶ 42, Plaintiff states that the document "was *not* kept in a separate locked file, apart from her personnel file." (emphasis added). It is not clear whether the document was supposed to be kept separate. Plaintiff does not assert that it was. Regardless the meaning of ¶ 42 is unclear.

4

her employment, despite the fact that she had made it known that she was unhappy with the terms of her employment. Except for this instance, Defendant has never invoked Resolve. On or about November 5, 2002, Plaintiff received a right to sue notice.

## III. ANALYSIS:

### A. Timeliness of ADA, ADEA, and FEPA Claims:

A charge of discrimination alleging violations of the ADEA and ADA must be filed with the EEOC within 300 days of the allegedly discriminatory conduct. See 29 U.S.C. § 626(d)(2) (establishing limit for the ADEA), 42 U.S.C. § 2000a-5(e)(1) (Stating that a Title VII claim must be filed with the EEOC within 300 days of the discriminatory act), and 42 U.S.C. § 12117(a) (Establishing that 42 U.S.C. § 2000a-5(e)(1) deadlines are applicable to ADA claims). The FEPA requires a claimant to file a complaint within 180 days of the discriminatory conduct. Conn. Gen. Stat. § 46a-82(e).

With respect to the federal law claims, the deadlines established are subject to equitable tolling. Put simply the doctrine means that "a statute of limitations does not run against a plaintiff who is unaware of his cause of action." Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 60 (2d Cir. 1986) (internal citations omitted). The doctrine "was developed in the context of actions based on fraud," but has also "been applied in cases alleging causes of action other than fraud where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action." Long v. Frank, 22 F.3d 54, 58 (2d Cir. 1994), cert denied 513 U.S. 1128, 130 L. Ed. 2d 883, 115 S. Ct. 938 (1995) (internal citations omitted). Plaintiff's state law claims are subject to similar principles. See Williams v. Comm'n on Human Rights & Opportunities, 257 Conn. 258, 277-79 (Conn.

2001) (Interpreting § 46a-82(e) as a statute of limitations subject to equitable tolling and looking to federal law for guidance on interpreting state anti-discrimination laws).

Defendant argues that Plaintiff's action with respect to the hiring of Wright should be time barred for failing to comply with the above cited deadlines. Defendant argues that the "absolute latest point" Plaintiff could have learned of the alleged discriminatory conduct was in July 2000 when Wright was hired. Def. Mem. Supp. Motion to Dismiss at 7. Thus, when Plaintiff filed a complaint with the EEOC and the CHRO it was almost two years later and well past the 300 and 180 day limitation periods. This argument is not on its own dispositive.

While it is true that Wright was hired in 2000, Plaintiff alleges that she was unaware of the possibility of a discriminatory motive until she discovered that paralegal training was not necessary for the position in late 2001. Pl. Mem. Opp. Motion to Dismiss at 6. Thus, given Defendant's promises regarding the new position, Plaintiff is justified in relying on them until breached. See Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 49 (2d Cir. 1985) (Until breach is apparent an employer's promise to resolve adverse action amicably by promising reinstatement or otherwise "sending positive signals" as to that possibility justifies an employee's belief in a non-discriminatory reason and allows for tolling). Furthermore, she alleges that she was not aware of any discriminatory motive, at least based on any alleged disability, until April 2002 when she was provided with personnel records referencing her condition. Id. As the Court must accept as true Plaintiff's allegations that she was lied to about the necessary qualifications, she would not have been on notice as to her claim until September 2001 at the earliest. Thus, even measuring from September 1, 2001 through May 31, 2002 (when she filed an EEOC and CHRO complaint), this puts her well within the 300 day limitation period

6

Case 3:03-cv-00203-PCD    Document 23    Filed 11/03/2003    Page 7 of 18

for the ADA and ADEA. Accordingly, with respect to the federal law claims pertaining age and disability discrimination and the hiring of Wright, Defendant's Motion to Dismiss on timing grounds is **denied**.[2]

The timing of Plaintiff's state law claims is not as easily resolved. Plaintiff alleges that she began filling in for Wright in September 2001 and was able to familiarize herself with the new requirements of the job within a month. While the dates are unclear, even assuming that she did not begin filling in for Wright until the very end of September and assuming that she did not realize that paralegal training was not required until a month later, the very end of October, she still does not meet the 180 day requirement under the FEPA. Conn. Gen. Stat. § 46a-82(e).

In the alternative, at least with respect to disability discrimination under Conn. Gen. Stat. § 46a-60, et seq, Plaintiff asserts that she was unaware of Defendant's discriminatory motivations until April 2002 when she discovered a reference to her disability in her personnel files. Pl. Mem. Opp. Motion to Dismiss at 6. It is unclear, however, why she never discovered this reference before. In her Complaint, Plaintiff states that the document containing the reference "was not kept in a separate locked file, apart from [the rest of] her personnel file." Complaint ¶ 42. As before, this may be a typographical error of some sort, but on its face, it suggests that she should have noticed the reference earlier. Moreover, in her brief Plaintiff argues only that the reference "had not been noticed by Plaintiff previously." Pl. Mem. Opp. Motion to Dismiss at 6.

---

[2]     Defendant's argument, in its Reply Brief, concerning discrete acts, cf. National R.R. Passenger Corp. v Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) is not dispositive. Morgan's discussion of discrete acts is in reference to the continuing violations theory, which is not at issue here. Similarly, Defendant's invocation of St. Mary's Honor Center v Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) is inapplicable. St. Mary's pretext discussion dealt with the burden shifting analysis that takes place under Title VII once a prima facie case has been made and not equitable tolling.

7

If she is arguing that Defendant deliberately kept this information from her, thus preventing her from being on notice to her possible claim, the argument is not clearly stated. Furthermore, this argument only goes to her claim of disability and not age discrimination. Accordingly, Defendant's Motion to dismiss the state law claims for failure to comply with the timing requirements is **granted**, and the Counts Three and Four are **dismissed without prejudice**.

B. Exhaustion of Remedies under the ADA and FEPA:

Exhaustion of remedies is a "precondition to suit." Holtz v. Rockefeller & Co., 258 F.3d 62, 83 (2d Cir. 2001) (internal citations omitted). Typically a plaintiff "may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." Id. A claim will be considered reasonably related "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Butts v. New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402 ( 2d Cir. 1993) (internal citations omitted).

Under the ADA, "disability" means with respect to an individual, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Defendant argues that because the Act makes a distinction between an actual physical impairment and being regarded as having a physical impairment the two claims are not reasonably related. Def. Mem. Supp. Motion to Dismiss at 8-10. Defendant also argues that Plaintiff only raised the "regarded as" complaint at the administrative level and is therefore barred from making any actual disability claim here. Id.

As an initial matter, although the claims do involve different legal standards, Defendant

8

cites no authority that these claims are not reasonably related.  The only authority Defendant does

cite, outside this circuit, finds the claims to be reasonably related.  Def. Mem. Supp. Motion to

Dismiss at n. 3.  However, fully exploring this argument necessitates going beyond the complaint

in order to explore exactly what Plaintiff raised at the administrative level, which is inappropriate

in addressing a motion to dismiss.  See Merritt v. Shuttle, Inc., 245 F.3d at 186 (A motion to

dismiss must be decided on the facts alleged in the complaint).[3]  Accordingly, Plaintiff's claim is

sufficient to survive a motion to dismiss and, with respect to this point, Defendant's Motion is

**denied**.

  C. Breach of the Covenant of Good Faith:

  Plaintiff asserts two ways in which Defendant's actions were in breach of the implied

covenant of good faith and against public policy.  The first involves the particular way in which

Resolve was invoked during the CHRO proceedings.  This argument centers around the

allegation that the program "was not revealed to Plaintiff until at least a month after she had filed

a letter through her attorney complaining of her treatment and asking to enter into settlement

negotiations."  Complaint, Count Five, ¶ 65.  Plaintiff alleges that the program was never used

except in this instance when Defendant used the program to "stop the Commission [CHRO]

from, performing its duties" by seeking a stay.  Id. at ¶ 66-67.  The second argument Plaintiff

makes is that in terminating her Defendant was in breach of the covenant of good faith.  See

Complaint, Count Five, ¶ 69 ("By its actions including but not limited to terminating Plaintiff's

---

[3] Under certain circumstances a court can go beyond the facts alleged in the complaint.  See
Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) (For purposes of a motion to dismiss, a
complaint includes "any written instrument attached to it as an exhibit or any statements or
documents incorporated in it by reference" as well as "documents that the plaintiffs either
possessed or knew about and upon which they relied in bringing the suit.").  Here the only
document relied on or attached by Plaintiff is the right to sue letter.  Complaint ¶ 46.

employment..., Defendant breached its implied duty of good faith...."). This argument seems to be largely abandoned in Plaintiff's opposition to Defendant's Motion. The majority of Defendant's arguments in favor of dismissal, however, deal with this latter position, so it should be addressed first.

Plaintiff's Complaint does not allege that she was hired for any specific period of time, therefore under Connecticut law she is deemed an at-will employee. Morris v. Hartford Courant Co., 200 Conn. 676, 677 (Conn. 1986), see also Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 158-59 (Conn. 2000) (Contracts of permanent employment, or for an indefinite term, are terminable at will). Although employed at-will, Connecticut has "recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Burnham, 252 Conn. at 159. This exception is narrow and the employee must be otherwise without any remedy. Id. at 159-60. The existence of a statutory remedy will preclude suit. Id. at 162.

As to the discharge itself, the only public policy violation Plaintiff would seem to allege is the wrongfulness of terminating an employee on the basis of her age and disability. However, with both these reasons, there are statutory remedies, see 29 U.S.C. §§ 621, et seq, 42 U.S.C. §§ 12101, et seq, and Conn. Gen. Stat. § 46a-50, et seq, and Plaintiff has invoked them in this very action. Therefore, to the extent that Count Five relies on the actual discharge to support a claim of breach of the covenant of good faith, this claim must fail and is **dismissed**.

However, Plaintiff does not rely solely on a wrongful discharge to support her allegation of a breach of the implied covenant of good faith and fair dealing. Rather, Plaintiff construes the

10

Resolve program as a contract between employer and employee and argues that the manner of

Defendant's use of Resolve violates the covenant of good faith. Pl. Mem. Opp. Motion to

Dismiss at 8.

In Connecticut, "every contract carries an implied covenant of good faith and fair dealing

requiring that neither party do anything that will injure the right of the other to receive the

benefits of the agreement." Retrofit Partners I, L.P. v. Lucas Indus., 201 F.3d 155, 161 (2d Cir.

2000), citing Habetz v. Condon, 224 Conn. 231, 238 (1992). This requires pleading three

elements: 1) That there was a contract, under which Plaintiff reasonably expected to receive

certain benefits; 2) That Defendant's conduct injured Plaintiff's right to receive some or all of

these benefits; and 3) That Defendant acted in bad faith. Franco v. Yale University, 238 F. Supp.

2d 449, 455 (D. Conn. 2002). "Bad faith means more than mere negligence; it involves a

dishonest purpose." Habetz, 224 Conn. at 237. While the Complaint could have more artfully

constructed this claim, Plaintiff does meet these requirements.

Neither party disputes that Resolve was a contract.[4] In essence, Plaintiff argues that

Defendant failed to invoke Resolve when it might have been of some benefit to her, i.e. prior the

administrative proceedings, and instead waited to invoke it as an "offensive weapon" to deprive

her of whatever benefit may have been and attempting to prevent her claim from proceeding.

Complaint, Count Five, ¶ 65-68 and Pl. Mem. Opp. Motion to Dismiss at 8-9. As to Defendant's

---

[4]    Defendant asserts that in denying that she is subject to Resolve, Plaintiff is arguing that it is not a
contract. On the contrary, what Plaintiff seems to argue is that when Defendant only invoked
Resolve, despite being aware of her unhappiness, when she complained to the Commission on
Human Rights and Opportunities and the Equal Employment Opportunities Commission, that was
bad faith depriving her of any contract benefit, and impliedly should no longer bind her. Pl. Mem.
Opp. Motion to Dismiss at 8.

11

actions being in bad faith, Plaintiff alleges that Defendant waited to invoke the program, despite

being aware of her complaints. Except for this "attempt to stop the Commission from

performing its duties, Defendant has never even attempted to use the Resolve process or indeed

in any mediation process [*sic*]." Complaint, Count Five ¶ 67. For the purpose of a surviving a

motion to dismiss, Plaintiff's allegations suffice.[5] Accordingly, Defendant's Motion to Dismiss

on this point is **denied**.

    D. Breach of Contract:

    Absent agreement as to the duration of Plaintiff's employment, she is deemed an at-will

employee. Morris, 200 Conn. at 677, see also Burnham, 252 Conn. at 158-59 (Contracts of

permanent employment, or for an indefinite term, are terminable at will). Being so employed

means that with few exceptions both parties may terminate the relationship for any reason, or no

reason, at any time. Thibodeau, 260 Conn. at 697-98. Plaintiff argues that, despite being free to

fire her, Defendant is not free to change other terms and conditions of her employment at will.

Specifically, Plaintiff argues that when, in about April 2000, Defendant assigned Plaintiff to a

new position and told her that her compensation and benefits would not be changed, Defendant

became bound so stating and therefore was in breach of contract when, in December 2001,

Defendant denied Plaintiff an annual raise and a VIC bonus. Pl. Mem. Opp. Motion to Dismiss

at 10-11.

    "To form a valid and binding contract in Connecticut, there must be a mutual

---

[5]    Defendant argues with reference to the dispute over Resolve that "a claim for breach of the duty of
good faith and fair dealing will only lie in favor of an at-will employee where the employer's
conduct contravenes some important public policy." Def. Reply Br. at 7. The authority Defendant
cites, Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691 (Conn. 2002), deals with
an employee challenging a dismissal itself, discussed above, which is not relevant here. Plaintiff is
challenging Defendant's use, or lack, of Resolve, not the termination itself.

12

understanding of the terms that are definite and certain between the parties." <u>L & R Realty v. Connecticut Nat'l Bank</u>, 53 Conn. App. 524, 534 (Conn. App. 1999). So long as any essential matters are left unresolved, the contract is not complete. <u>Adair v. Pfizer, Inc.</u>, 245 F. Supp. 2d 437, 441 (D. Conn. 2003). "Essential or material terms in a contract involving an employment relationship include, duration, compensation and the employee's duties." <u>Id</u>. There is no indication in the Complaint or Plaintiff's briefs that the duration of Plaintiff's employment was discussed. An essential term is thus lacking. Consequently, there can be no contract and similarly no breach of contract.[6]  Accordingly, Defendant's Motion to Dismiss Count Six is **granted** and the Count is **dismissed without prejudice**.

<u>E. Promissory Estoppel</u>:

Connecticut recognizes promissory estoppel as requiring a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." <u>Grossman v. Computer Curriculum Corp.</u>, 131 F. Supp. 2d 299, 308 (D. Conn. 2000). A "fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." <u>D'Ulisse-Cupo v. Board of Directors of Notre Dame High School</u>, 202 Conn. 206, 213 (Conn. 1987). The promise must contain the "material terms that would be essential to

---

[6]    Plaintiff's argument, <u>cf</u>. <u>Lauture v. Int'l Business Machines Corp.</u>, 216 F.3d 258, 262 (2d Cir. 2000), that a "day to day" contract was created is inapplicable. Pl. Mem. Opp. Motion to Dismiss at 10. <u>Lauture</u> dealt with an entirely different cause of action, liability under 42 U.S.C. § 1981, and New York employment law, not Connecticut. 216 F.3d at 262-64. To adopt this argument with respect to a breach of contract allegation would necessitate holding that, in the absence of an agreement as to duration, Defendant was indefinitely bound with respect to the terms and conditions of Plaintiff's at-will employment. This is a proposition that flies in the face of well-established contract law.

an employment contract, such as terms regarding the duration and conditions of the plaintiff's

employment, and her salary and fringe benefits." Id. at 215. Without these terms, the

representations are at best indications "that the defendants intended to enter into another

employment contract with the plaintiff at some time in the future." Id at 214.

Here again Plaintiff's claim lacks specificity regarding the duration of Defendant's alleged

promise to employ her with the same benefits and compensation. Thus, for the same reason that

Plaintiff's breach of contract claims fails, her promissory estoppel claim fails. Defendant's

Motion to Dismiss Count Seven is **granted**, and the Count is **dismissed without prejudice**.

F. Negligent Misrepresentation:

In Connecticut, negligent misrepresentation involves "One who, in the course of his

business, profession or employment ... supplies false information for the guidance of others in

their business transaction," in which case that person "is subject to liability for pecuniary loss

caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable

care or competence in obtaining or communicating the information." D'Ulisse-Cupo, 202 Conn.

at 218, quoting Restatement (Second) of Torts § 552 (1979). Even an "innocent

misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to

know, or has the duty of knowing the truth." D'Ulisse-Cupo, 202 Conn. at 217. A plaintiff "need

not prove that the representations made by the defendants were promissory," only "that the

representations contained false information." Id. at 218. Accordingly, the fact that a defendant is

not subject to liability under a theory of promissory estoppel has no bearing on negligent

misrepresentation. Id.

An allegation of negligent misrepresentation is subject to the heightened pleading

14

standard of Fed. R. Civ. P. 9. <u>Yurevich v. Sikorsky Aircraft Div.</u>, 51 F. Supp. 2d 144, 152 (D.

Conn. 1999). This does not necessarily mean "that a plaintiff must plead all elements of a

negligent misrepresentation claim with particularity," instead the Rule requires "that the

complaint contain specific factual allegations demonstrating that a statement was false or

misleading when made." <u>Maalouf v. Salomon Smith Barney, Inc.</u>, No. 02 Civ. 4770 (SAS), 2003

U.S. Dist. LEXIS 5913, at *11 (S.D.N.Y. April 9, 2003). Plaintiff meets this standard.

      Plaintiff alleges that she was told she was no longer qualified for her position because

formal paralegal training would now be required. Complaint, ¶ 15. She alleges that she was

informed that in her new position she would be permitted to telecommute one day a week from

her home and that he compensation and benefits would not be affected. <u>Id</u>. at ¶ 17. With respect

to how these statements were false or misleading she alleges that once she started filling in for

Wright she discovered that paralegal training was not in fact required. <u>Id</u>. at ¶ 30. Plaintiff

alleges that in her new position she never received her VIC bonus, which she asserts is part of her

compensation and benefits. <u>Id</u>. at ¶ 35. Furthermore, she alleges that in her new position there

was concern over her telecommuting. <u>Id</u>. at ¶24. Finally, she alleges that she did not receive her

annual raise because she was at the top of the pay scale for customer service employees. <u>Id</u>. at ¶

32. The obvious implication of this last statement is that Defendant should have known that, as

part of her compensation and benefits, she would not be receiving her usual raise or bonus

for the stated reasons. Thus, the pleading standards of Rule 9 are met.

      Defendant argues that Plaintiff did not rely on the promises made by Defendant to her

detriment and that even if she did, this reliance was not justified. Def. Mem. Supp. Motion to

Dismiss at 18, <u>and</u> Def. Reply Br. at 9. Plaintiff alleges in her complaint that she did rely on

15

these promises in accepting her new position. Complaint, ¶ 18. She alleges that it was to her

detriment inasmuch as she suffered lost wages and benefits as well as other more intangible

damages. Id. at 90.[7] Whether this reliance was justified is a question of fact not to be resolved

by a motion to dismiss. The Connecticut Supreme Court has "consistently held that the

reasonableness of a plaintiff's reliance is a question for trier of fact to determine based upon all of

the circumstances." Williams Ford, Inc., 232 Conn. at 580, citing State v. Duhan, 194 Conn.

347, 359 (Conn. 1984); Peterson v. Oxford, 189 Conn. 740, 745-47 (Conn. 1983); and Rene Dry

Wall Co. v. Strawberry Hill Associates, 182 Conn. 568, 573 (Conn. 1980). Accordingly

Defendant's Motion to Dismiss Count Eight is **denied**.

     G. Fraud:

     The essential elements of fraud are "(1) that a false representation was made as a

statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it

was made to induce the other party to act on it; and (4) that the latter did so act on it to his

injury." J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353, 358 (Conn. 1983) (internal

citation omitted). Allegations of fraud are also subject Rule 9(b) of the Federal Rules of Civil

Procedure. Acito v. IMCERA Group, 47 F.3d 47, 51 (2d Cir. 1995). As such, a complaint must

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

---

[7]     Defendant also argues that "[a]bsent an allegation that [P]laintiff declined an alternative job
opportunity ...she cannot demonstrate the sort of detrimental reliance required to support a claim
for negligent misrepresentation." Def. Mem. Supp. Motion to Dismiss at 19. Defendant cites to
no authority for this requirement, only a case, D'Ullise-Cupo, 202 Conn. at n. 5, where detrimental
reliance was satisfied by such an allegation. However, even in that case there was no such
allegation in the complaint. It only came out at oral argument. Id. Accordingly, even if it was a
requirement, Plaintiff would meet this requirement when in her Opposition Brief she alleges that
she did not apply for the position of Contracts Manager. Pl. Mem. Opp. Motion to Dismiss at 12.

16

fraudulent." <u>Id</u>. (internal citations omitted).  A plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." <u>Id</u>. at 52.  The purpose of this requirement is to "provide a defendant with fair notice of a plaintiff's claim, [and] to safeguard a defendant's reputation from 'improvident charges of wrongdoing.'"  <u>O'Brien v. National Property Analysts Partners</u>, 936 F.2d 674, 676 (2d Cir. 1991) (internal citations omitted).

Plaintiff meets these requirements.  She identifies the statements she alleges were fraudulent, namely that paralegal training was required, that her benefits and compensation would remain unchanged, and that she would be allowed to telecommute.  Complaint ¶ 15-17. Plaintiff identifies the speaker as Edel. <u>Id</u>. at ¶ 16-17.  She alleges that the statements were made around April 2000, <u>Id</u>. at ¶ 14, and although she does not specify the place until her Brief, Pl. Mem. Opp. Motion to Dismiss at 14, it is hard to see how this is fatal or failed to give Defendant fair notice of her claims.  Plaintiff explains why she believes the statements were false, Complaint ¶¶ 24, 30, 32, and 35, even supplementing her allegations in Count Nine alleging that "Defendant was in the process of planning to move all of Plaintiff's files and work out of state" at the time the promises were made.  <u>Id</u>. at Count Nine ¶ 95.  These allegations combine to create an inference of fraudulent intent sufficient to survive a motion to dismiss.

Defendant's arguments that Plaintiff failed adequately plead reliance with respect to fraud fail for the same reasons they failed in the previous section - she does plead reliance and whether or not her reliance was justified is a jury question.

Accordingly, Defendant's Motion to Dismiss Count Nine is **denied**.

## IV. CONCLUSION:

For the reasons stated herein, Defendant's Motion to Dismiss [Doc. No. 13] is **granted, in**

17

part. Counts Three, Four, Six, and Seven are **dismissed** entirely, **without prejudice.** Count

Five is **dismissed, in part**.

        SO ORDERED.

                      Dated at New Haven, Connecticut, November 3, 2003.

                             Peter C. Dorsey, U.S. District Judge
                                 United States District Court