# EXHIBIT
# C

# PAES & PAES, LLC

4 Washington Avenue
Sandy Hook, CT 06482
(203) 270-6441
(203) 270-0212 - fax

Michael T. Paes          - admitted to practice in Connecticut & New York
Fern H. Paes             - admitted to practice in Connecticut

Service by Facsimile not Accepted

August 28, 2003

Attorney Lawrence Peickes
Wiggin & Dana, LLP
400 Atlantic Street
PO Box 110325
Stamford, CT 06911-0325

Re:    Kossoff v. GE Capital
       Our File No. 018.02EMP

Dear Lawrence:

This will confirm our conversation earlier today, in which plaintiff consents to a two-week extension of time for defendant to respond to plaintiff's first request for production of documents. This courtesy was made based upon your statements that the request is because your client is in the process of compiling the requested documents, and that the response will be in good faith, opposed to merely or primarily raising objections, and that you will try to send the documents prior to the time period if possible.

In addition, I wanted to remind you that we also provided to your our documents listed in our 26a disclosure as part of your discovery request. Please provide your 26a disclosure documents as we agreed.

Please call me if you have any questions. Thank you.

Very truly yours,

FERN PAES

FP/ks
VIA FAX AND MAIL

# EXHIBIT
# D

# PAES & PAES, LLC

Michael T. Paes    - admitted to practice in Connecticut & New York
Fern H. Paes    - admitted to practice in Connecticut

4 Washington Avenue
Sandy Hook, CT 06482
(203) 270-6441
(203) 270-0212 - fax

Service by Facsimile not Accepted

September 23, 2003

Attorney Lawrence Peickes
Wiggin & Dana, LLP
400 Atlantic Street
PO Box 110325
Stamford, CT 06911-0325

Re:    Kossoff v. GE Capital
       Our File No. 018.02EMP

Dear Lawrence:

We have received Defendant's Responses to our First Request for Production of Documents. There are several matters which I would like to call to your attention. First, we specifically agreed that we would consent to an extension of time for you to respond based upon your statements that the request is because your client is in the process of compiling the requested documents, and that the response will be in good faith, opposed to merely or primarily raising objections. What has been provided is exactly what you stated you would not do, take the extension and then raise a laundry list of unfounded objections.

In addition, notably absent are your 26a disclosure documents, as we agreed. In our conversation earlier today, you said there "may be" additional documents, but that you would check. We once again call for production of any documents from your FRCP 26a disclosure, which were not provided in your response to our First Request for Production of Documents, as we had sent our 26a disclosure documents to you on 7/21/03.

It is apparent that your responses are far complete. My concerns include the following issues:

With regard to your objections, general objection 4 is not a valid objection. The fact that a document is alleged to be "of a confidential or proprietary nature" is not a valid objection.

LRCP 37 states that privilege logs must be provided when privilege or work product protection is alleged. General objection 3 claims this, as well as in response to numerous specific requests, including 4, 6, 8, 10, 11, 12, 14-19, 21-26, 28, 29, 31, 32, and 34. No privilege log has been provided. Further, the fact that documents may be in your possession, or otherwise channeled through counsel does not render them privileged. Contrary to your assertion that this was listed merely as a precaution, because you were unsure of the intent of our requests, your

# PAES & PAES, LLC

responses show that specific documents exist which you are seeking to shield, without providing a log (see infra, #25, 26 and 28).

With regard to request 2, at the very least, I would assume your client had an I9 file on Ms. Kossoff.

With regard to request 3, if it is your position that Ms. Wright, a non-disabled female under the age of 40 had a job description, while her predecessor, Ms. Kossoff, did not, we accept that as your response.

With regard to request 7, if there are any documents regarding changes in duties from one position to the other, they are to be produced. I believe the language of the request is self-explanatory.

With regard to request 9, these documents surely are relevant, and reasonably calculated to lead to the discovery of admissible evidence, as they relate to the qualifications of the person who allegedly was more qualified than Ms. Kossoff. In addition, if you feel there is a basis for a protective order, that is your prerogative, but the fact that you allege is may "violate individual privacy rights" is not a valid objection under FRCP 26b. If you have a proposal for some sort of confidentiality for those, we would consider your request. Otherwise, they must be produced.

With regard to request 13 and 20, Kossoff specifically alleged in both her CHRO and court complaint that she was told by John Edel that she was at the top of her pay scale, and that it was the reason she did not receive a raise. Your CHRO reply specifically:

– Compared her salary with those of other PAR representatives, as proof that her salary was "at a rate more than double the average salary of her peers";
– Stated Kossoff's salary "was way above scale for the job she held"; and
– Does not deny Kossoff's allegation that John Edel told she "would get no raise, because [she] was at the top of her pay scale for customer service persons", but only said Kossoff's "allegations are far from sufficient to support an inference of unlawful discrimination.

Your own allegations render this evidence relevant.

With regard to request 15, as stated above, the fact that you allege is may "violate individual privacy rights" is not a valid objection under FRCP 26b. Further, whether Ms. Kossoff was or was not paid her VIC bonus, as opposed to other employees for the Defendant,

2

# PAES & PAES, LLC

surely is relevant to the issue of disparate treatment, and the three year period is very reasonable, especially in light of the fact that she was employed with Defendant or its predecessor company since 1997.

With regard to request 17, the term "discrimination of employees" is not incomprehensible. If Defendant has produced any documents relating to its duty under its anti-discrimination and/or equal employment opportunities responsibilities, they must be produced.

With regard to requests 18 and 19, Kossoff's complaint alleges discrimination based upon age, disability, and perceived disability discrimination, and includes specific allegations of disparate treatment/impact. As such, your claim that they are "neither relevant not reasonably calculated to lead to the discovery of admissible evidence" is ridiculous. With regard to the time issue, if you agree to provide the requested documents, we will limit our request to the dates of April 1999 through 2003.

With regard to request 21, the issue of the qualifications physical identities of the individuals who held those positions is an allegation in the complaint, and as such, you claim that the request is "neither relevant not reasonably calculated to lead to the discovery of admissible evidence" is ridiculous. With regard to the time issue, if you agree to provide the requested documents, we will limit our request to the dates of April 1999 through 2003.

With regard to request 22, the issue of accommodations given to disabled employees is an element of the claim for disability discrimination. As such, you claim that the request is "neither relevant not reasonably calculated to lead to the discovery of admissible evidence" is ridiculous. With regard to the time issue, if you agree to provide the requested documents, we will limit our request to the dates of April 1999 through 2003. With regard to the issue of "individual privacy rights", as I indicated earlier in this letter, if you have a proposal for some sort of confidentiality for the requested documents, we would consider your request. Otherwise, that is not a valid objection, and the documents must be produced.

With regard to request 24, your first assumption as to our intent is correct, and under the circumstances, we feel the request is appropriate as it stands. If you have a counter-proposal, we certainly would consider it, but we do not feel our request is overly broad, and as the issue of whether the RESOLVE program is known to employees, and if it has been used (either by employees or Defendant as a defense to claims brought in other forums, as with Ms. Kossoff), it certainly is not "neither relevant not reasonably calculated to lead to the discovery of admissible evidence". The same stands for request 27.

With regard to request 29, at issue in this lawsuit is whether the transfer of Kossoff's

3

# PAES & PAES, LLC

files, duties, and work to St. Louis were decided and conducted in a discriminatory fashion. As such, we are seeking all documents that relate to the basis for the decision. I would remind you that your CHRO response alleged that Ms. Kossoff was offered a position in St. Louis.

With regard to request 31, the five-year time period selected is reasonable under the circumstances, and the issue of what positions may have been available to Ms. Kossoff is relevant to the allegations in this lawsuit.

With regard to request 32, the period Ms. Kossoff was allowed to work from home on Fridays in 2000 and 2001, and as such, the time period is reasonable, relevant, and not unduly burdensome. Second, if it is Defendant's position that it did not know and was unable at that time to monitor computer usage from remote sites when *any* of Kossoff's work was done at home versus on Defendant's physical plant, we would accept that as an answer.

With regard to request 34, we do not feel considering the allegations in this suit, the request is relevant, and not unduly burdensome.

Obviously, it is our intent to avoid unnecessary motion practice, but if these documents are not received within seven days, we will be forced to move the court for an order to compel, and for attorneys' fees. Please call me if you have any questions. Thank you.

Very truly yours,

MICHAEL PAES

FP/ks
VIA FAX AND MAIL

4

# EXHIBIT
# E

# Wiggin & Dana

Counsellors at Law

Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, Connecticut
06911-0325
www.wiggin.com

Lawrence Peikes
203.363.7609
203.363.7676 fax
lpeikes@wiggin.com

**VIA FACSIMILE & U.S. MAIL**

September 26, 2003

Michael Paes, Esq.
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT 06482

Re:    <u>Kossoff v. GE Capital</u>

Dear Michael:

This is in response to your letter dated September 23, 2003, concerning
defendant's document production in the above-referenced case. Preliminarily,
we find your assertion that defendant procured an extension of time to respond
to plaintiff's document requests "and then raise[d] a laundry list of unfounded
objections" to be perplexing. Of the 34 requests propounded by plaintiff,
defendant objected and did not respond to a grand total of eight (8), all of which
were patently overly broad and/or unduly invasive.

## Initial Disclosures

With respect to defendant's initial disclosures, you seem to be laboring under the
false impression that defendant has some production obligation under Fed. R.
Civ. P. 26(a)(1). To the contrary, the rule states that a party must provide "a
copy of, *or a description by category and location of*, all documents, data
compilations, and tangible things that are in the possession, custody or control
of the party and that the disclosing party may use to support its claims or
defenses, unless solely for impeachment." Fed. R. Civ. P. 26(a)(1)(B) (emphasis
added). Defendant complied with the rule by identifying various categories of
documents that might be pertinent to its defense. In any event, to the extent
plaintiff's request for production sought documents within the categories
specified in defendant's initial disclosures, those documents have been produced.

## General Objection No. 4

Contrary to your contention, General Objection No. 4, protesting any demand
for confidential or proprietary information, is perfectly appropriate. Indeed,
Fed. R. Civ. P. 26(c) expressly provides that a protective order may issue
directing "that a trade secret or other confidential research, development, or
commercial information not be revealed or be revealed only in a designated
way." Rule 26(c) further authorizes the district judge to "make any order which
justice requires to protect a party or person from annoyance, embarrassment,

*Wiggin & Dana*

Michael Paes, Esq.
September 26, 2003
Page 2

oppression or undue burden or expense including ... that the discovery not be had." We believe plaintiff's various requests to inspect other employees' personnel records is an annoyance to the affected employees, potentially embarrassing, oppressive and invasive of an expectation of confidentiality.

## Privilege Log

Plaintiff's concern about the absence of a privilege log is overblown. As we discussed, in many instances an attorney-client privilege or work product objection was stated "to the extent" a request might be read to encompass protected documents. This does not mean privileged documents within the scope of any particular request actually are in existence. Rather, the objection was stated as a cautionary measure in case the request was intended to be broader than we construed it, or if responsive privileged documents are created, or discovered, in the future. The only privileged documents in our possession take the form of written communications between counsel and representatives of GE Capital. Although it is readily obvious that such documents are not subject to disclosure, we will identify them in a log as a formality.

## Request No. 2

Turning to the specific requests at issue, as stated in our response to Request No. 2, aside from a personnel file, which has been produced in its entirety, there are no "files" maintained with respect to plaintiff. Your assumption that defendant must have an "I9 file" is mistaken. An I-9 form no doubt was filled out and submitted by plaintiff, and you are welcome to a copy upon an appropriate request. This, however, is merely further evidence that plaintiff's discovery strategy amounts to a proverbial fishing expedition -- what light could plaintiff's I-9 form, confirming she is authorized to work in the United States, possibly shed on her claims in this lawsuit?

## Request No. 3

As we already stated in our response to Request No. 3, defendant is not in possession of a job description relating to the position held by plaintiff. To our knowledge, Phoenixcor did not maintain any such job description and GE Capital did not create one when plaintiff came over in connection with the acquisition.

## Request No. 7

Defendant's production in response to Request No. 7 is complete. As has been explained, the request erroneously assumes there was a single Director of

Wiggin & Dana

Michael Paes, Esq.
September 26, 2003
Page 3

Contracts or Manager of Contracts job that transformed over time to encompass additional or different duties. To reiterate, there were two different positions.

## Request No. 9

We cannot agree that every document and form contained in Christine Wright's personnel file necessarily bears relevance to this case. What is arguably relevant are the documents we have produced, namely Ms. Wright's resume and offer letter and the job description for her position.

## Request Nos. 13 & 20

Request Nos. 13 and 20 seem to be rooted in the inaccurate assumption that defendant conducted a wholesale review of the salaries paid to customer service representatives for purposes of conducting a comparison with plaintiff's rate of compensation. To be clear, the disclosure in our CHRO position statement that plaintiff's "salary at the time of $77,422.00 per year was substantially greater than the average PAR salary of approximately $30,000.00" was based on common knowledge within the human resources department, not a formal salary survey.

## Request No. 15

For plaintiff to suggest that Request No. 15's demand for three years worth of records detailing the VIC and other bonus payments made to every one of the thousands of workers employed by GE Capital is patently absurd. Indeed, plaintiff does not even allege that she was discriminated against with respect to her bonus for the years 1999 and 2000. And, while 2001 bonus payments made to similarly situated employees might conceivably be relevant, the fact of the matter is that no appropriate comparator exists because defendant created plaintiff's job as a means of extending her period of employment and, therefore, the position was unique.

## Request Nos. 18 & 19

With regard to Request Nos. 18 and 19, first of all, defendant does not maintain records identifying employees by disability or perceived disability. Second, contrary to your contention, there is no "disparate impact" claim alleged in plaintiff's complaint. Statistical data of the sort requested is of marginal utility at best in a disparate treatment case like this one. Third, plaintiff's request for data reflecting the age composition of GE Capital's entire workforce is inherently overly broad. The decisions at issue were not corporate-wide, but rather impacted only a select group of former Phoenixcor employees. Because

Wiggin & Dana

Michael Paes, Esq.
September 26, 2003
Page 4

this group was, in large part, not hired by GE Capital, *inter alia*, the age composition of the workforce, even on a micro level, would be indicative of nothing.

### Request No. 21

Request No. 21 suffers from the same defects as Request Nos. 18 and 19, i.e., there are no records reflecting the disabilities or perceived disabilities of defendant's employees and information concerning the age composition of all employees bearing the title of "Manager" or "Director" is well beyond the scope of plaintiff's claims.

### Request No. 22

Request No. 22 is yet another example of blatant overreaching and intrusiveness. Plaintiff requests documents "regarding any accommodations given to any disabled employee for Defendant" yet she does not even purport to claim she was denied a reasonable accommodation for her alleged disability. Furthermore, to reiterate, GE Capital's workforce at the time numbered in the tens of thousands. It is preposterous to suggest that defendant has an obligation to search thousands upon thousands of files for records relating to accommodations that may have been offered to employees. By filing this lawsuit, moreover, plaintiff did not procure a right to invade the privacy rights of her former colleagues and delve into intimate information concerning their medical conditions and accommodation requests.

### Request No. 24

We remain thoroughly confused as to the legal theory upon which plaintiff's challenge to the Resolve program is based. Be that as it may, regardless of the precise nature of plaintiff's Resolve-related claim, she is most certainly not entitled to records pertaining to every (or for that matter, any) employee grievance processed through Resolve, as demanded by Request No. 24. This is highly personal information that cannot possibly have any bearing on the outcome of the instant case.

### Request No. 29

We have fully complied with Request No. 29 in producing all documents unearthed by a diligent search for records that directly relate to the transfer of files to St. Louis. If plaintiff's request is so broad as to encompass the files themselves, defendant's objections stand. For the record, moreover, we did not represent in our CHRO position statement that plaintiff was offered a position

## Wiggin & Dana

Michael Paes, Esq.
September 26, 2003
Page 5

in St. Louis; rather, we stated that plaintiff expressed no interest in relocating to St. Louis.

### Request No. 31

The five-year time period of Request No. 31 is but one basis for defendant's objection. Our primary objection sounds in relevance. By way of further explanation, defendant posts internal openings and invites qualified employees to apply. To our knowledge, plaintiff did not respond to any such posting, nor is she claiming in this lawsuit to have been discriminatorily denied any position other than the one held by Ms. Wright. Documentation concerning openings plaintiff did not seek to fill is plainly irrelevant.

### Request No. 32

As was explained in our response to Request No. 32, "there is no way for defendant to distinguish work product prepared by plaintiff at home from work product prepared by plaintiff in the office." It is, therefore, not possible for defendant to accurately represent that any particular document relates to home-work as opposed to office-work.

### Request No. 34

Request No. 34 is not sufficiently tailored to allow for a focused document search.

Hopefully, this will allay plaintiff's concerns regarding defendant's document production and enable us to proceed without the interruption, inconvenience and expense of motion practice. Nevertheless, we are fully prepared to discuss any of plaintiff's requests further and would be more than willing to explore a middle ground that would prove satisfactory to both sides. Please contact me if you wish to continue our dialogue.

Very truly yours,

Lawrence Peikes

# EXHIBIT
# F

# PAES & PAES, LLC

Michael T. Paes — admitted to practice in Connecticut & New York
Fern H. Paes — admitted to practice in Connecticut

4 Washington Avenue
Sandy Hook, CT 06482
(203) 270-6441
(203) 270-0212 - fax

Service by Facsimile not Accepted

September 30, 2003

Attorney Lawrence Peickes
Wiggin & Dana, LLP
400 Atlantic Street
PO Box 110325
Stamford, CT 06911-0325

Re:    Kossoff v. GE Capital
       Our File No. 018.02EMP

Dear Lawrence:

We have received your 9/26/03 letter. The positions you have taken are not adequate reasons for your failure to produce many documents. We agreed to the extension of time based upon your position that you needed an employee with your client who was out of town to assist in the compilation of the documents. Your response does not show this, based upon the number of documents (and the fact that many of them, such as the documents in Kossoff's personnel file) were available to you as far back as your response to the CHRO complaint. Further, you did not address my various suggestions for compromise. I too hope this can be resolved without the necessity of motion practice, but I do not want do delay discovery any further. As such, below is my final proposal to resolve the outstanding issues on the document requests.

With regard to the 26a disclosure documents, my reliance is not on the language of the Federal Rules, but rather our agreement. On more than one occasion, your agreed to provide these documents. Further, in your 6/18/03 letter to us, you agreed to copy disclosed documents. In good-faith reliance on your word, we have already given you copies of our voluntary disclosure documents several months ago. I would expect you to abide by your word.

With regard both to objection 4, as well as your various claims of "privacy" concerns, we would agree to a reasonable agreement whereby documents would be confidential other than for use in this matter. This would cover all your concerns.

With regard to privilege logs, the local rules require this. Further, as your own answers suggest on more than one request you are seeking to shield specific documents created prior to the onset of litigation, our request that you follow the local rules and provide a complete privilege log is reasonable.

With regard to request 2, my mention of the I9 form of Ms. Kossoff was not mentioned as

# PAES & PAES, LLC

an example of a document specifically related to the allegations in the suit, but rather, contrary to your assertions, your client had other responsive documents in its files.

With regard to request 7, we do not challenge the position that the Defendant created a separately-named position of Manager of Contracts when it eliminated the position of Director of Contracts. But as this case involves the failure to offer Kossoff the position of Manager of Contracts on the basis of discrimination, and that both positions had substantially the same duties, the request is relevant, and the documents should be provided.

With regard to request 9, as key issues include the qualification and treatment of Kossoff vs. Wright, we believe our request is reasonable. We offered previously to consider a confidentiality agreement, but you did not respond.

With regard to request 13 and 20, your assertion that the difference in salaries was "common knowledge within the human resources department" is only more reason for these documents to be provided. If you alleged certain facts to CHRO, those statements stand.

We believe requests 15 and 17 are reasonable, as per our prior letter. Also as per our prior letter, we would agree to limit the time period in requests 18, 19, 21, 22 to April 1999 through 2003.

With regard to requests 24 and 27, while we feel the requests are reasonable, we told you we would consider counter-proposals, but you did not make any. We await such a counter- short of that, all requested documents should be produced.

With regard to request 29, if your position is Ms. Kossoff told Defendant that she would not take a transfer to St. Louis if offered, than such documents evidencing such is required.

With regard to request 31, we stand by our position - the five-year time period selected is reasonable under the circumstances, and the issue of what positions may have been available to Ms. Kossoff is relevant to the allegations in this lawsuit.

With regard to request 32, we would accept a sworn statement from the Head of IT stating that they have attempted in good faith , but could not determine when Kossoff connected remotely.

With regard to request 34, we stand by our position - the request is neither irrelevant nor unduly burdensome. However, we would consider any proposal you consider proper - short of that, all documents should be provided.

2

# PAES & PAES, LLC

In general, corporations do not operate without meetings, with notes and/or minutes taken. You have failed to produce any of these dealing with multiple issues. These documents certainly are not subject to privilege.

If you have legitimate proposals for resolution of the issues requested in our letters, please provide them. If this is not resolved by Friday, we will proceed with appropriate motion practice. Thank you.

Very truly yours,

MICHAEL PAES

MP/ks
VIA FAX AND MAIL

3

# EXHIBIT
# G

## Wiggin & Dana

Counsellors at Law

Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, Connecticut
06911-0325
www.wiggin.com

Lawrence Peikes
203.363.7609
203.363.7676 fax
lpeikes@wiggin.com

VIA FACSIMILE & U.S. MAIL

October 2, 2003

Michael Paes, Esq.
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT 06482

Re:   <u>Kossoff v. GE Capital</u>

Dear Michael:

This is in response to your letter dated September 30, 2003, which in turn responds to my September 26 letter addressing plaintiff's concerns about the scope of defendant's document production in the above-referenced case. Unfortunately, as explained below, your "various suggestions for compromise" for the most part do not speak to defendant's objections. Nevertheless, we remain open to further dialogue in the hopes of resolving the remaining areas of dispute.

First of all, contrary to your contention, my letter of June 18, 2003, in no way indicates we will be sending you a copy of the documents identified in defendant's initial disclosures in the absence of a formal request. Rather, my letter simply states that "as to your suggestion that each side cover the cost of copying documents for production, we are amenable to such an arrangement." In any event, the point is moot because, as noted in my September 26 letter, "to the extent plaintiff's request for production sought documents within the categories specified in defendant's initial disclosures, those documents have been produced." If there are additional documents plaintiff believes might fall into one or more of the categories listed on our disclosures, we would certainly entertain a specific request for production.

With respect to the privilege log, as stated in my prior letter, we will be preparing one. We are, however, at a loss to ascertain the basis for your assertion that defendant is "seeking to shield specific documents created prior to the onset of litigation ..." Nothing is being concealed; rather, we are simply defending the right to preserve a legally protected confidence. To the extent you purport to suggest a document created pre-litigation cannot be protected by the attorney-client privilege or work product doctrine, you are mistaken.

Wiggin & Dana

Michael Paes, Esq.
October 2, 2003
Page 2

Request No. 2 sought production of "files" maintained by defendant regarding plaintiff other than her personnel file. To reiterate, there are no such "files."

Turning to Request No. 7, given that, as plaintiff acknowledges, defendant eliminated, rather than modified, the Director of Contracts job and created a new position of Manager of Contracts, by definition there would be no documents "regarding any change in job duties or training for the position of Director of Contracts, and/or Manager of Contracts ..." We note, however, that the differences in the two positions can be gleaned from the Contracts Administration Manager job description, which has been produced.

We do not disagree with your contention that Ms. Wright's qualifications for the job of Contracts Administration Manager is a relevant area of inquiry, but that begs the question as to whether plaintiff is entitled to pore over the entirety of a former colleague's personnel file. In response to Request No. 9, we have produced Ms. Wright's resume and offer letter; you have yet to explain how anything else contained in her personnel file could conceivably be pertinent to plaintiff's claims.

Request Nos. 13 and 20 ask for documents that were consulted by defendant for purposes of making a "determination as to Kossoff's eligibility for a pay increase during 2001 and 2002" or "used to compare salaries with Kossoff." This request erroneously presupposes that defendant actually consulted a salary scale or other record in evaluating plaintiff's compensation. To the extent plaintiff requests documentation "regarding the pay scale for customer service persons" we are willing to provide salary information for Portfolio Administration Representatives (PAR's) employed by CEF during 2001.

We beg to differ with plaintiff's characterization of Request Nos. 15 and 17 as "reasonable" in scope. Plaintiff continues to offer no explanation as to the relevance of three years worth of data reflecting the VIC compensation paid to every one of the thousands of GE Capital employees. Indeed, plaintiff does not take issue with her VIC compensation for any year other than 2001. The request is patently over-broad, intrusive, and goes well beyond the reasonable scope of this litigation.

Plaintiff's offer "to limit the time period in requests 18, 19, 21, 22 to April 1999 through 2003" fails to cure the durational defect plaguing these requests, and, further, simply ignores the fundamental premise of defendant's objections. To repeat for the third time now, defendant does not maintain a record of its employees' disabilities or perceived disabilities. We obviously cannot turn over

Wiggin *& Dana*

Michael Paes, Esq.
October 2, 2003
Page 3

documents reflecting non-existent data. As for the age-related information, by its terms, these requests would encompass any document bearing the birth date of any individual employed by defendant over a four (4) year period. It is nonsensical for plaintiff to claim such an expansive volume of records is essential, or even meaningful, to the prosecution of her case. At most, plaintiff is entitled to information concerning the ages of similarly situated employees, the only appropriate comparators. If plaintiff is prepared to narrow her request to encompass former Phoenixcor employees only, defendant will provide birth dates for these employees; the appropriate discovery vehicle would seem to be an interrogatory, not a request for documents.

The reason we did not offer a compromise proposal with respect to Request Nos. 24 and 27, seeking a copy of every Resolve case file, beyond the fact we are still thoroughly perplexed as to the legal basis of plaintiff's challenge to the Resolve program, is that plaintiff remains mum as to how documents pertaining to other employees' grievances could possibly shed light on her claim. Plaintiff never even invoked Resolve, making the discovery demand all the more absurd.

With respect to Request No. 29, we will state one more time "that plaintiff expressed no interest in relocating to St. Louis." Since defendant does not assert that plaintiff was offered a specific position in St. Louis or that she "told Defendant that she would not take a transfer to St. Louis if offered ...," there are no documents within the scope of this request, as we understand it.

Given that plaintiff was not in defendant's employ for five (5) years, and never applied for a posted position, we are befuddled by your asseveration with regard to Request No. 31 that "the five year time period selected is reasonable under the circumstances, and the issue of what positions may have been available to Ms. Kossoff is relevant to the allegations in this lawsuit." There is but one job posting at issue in this case. Discovery is properly limited to that particular position.

Defendant has no obligation under the discovery rules to provide "a sworn statement from the Head of IT stating that they have attempted in good faith, but could not determine when Kossoff connected remotely."

Request No. 34 is a catch-all that is unbounded by time or subject matter. It is impossible for defendant to conduct a meaningful search for documents with no parameters for guidance. We observe, however, that notes and e-mails pertaining to the events that culminated in the elimination of plaintiff's position have in fact been produced.

Wiggin *&* Dana

Michael Paes, Esq.
October 2, 2003
Page 4

Defendant remains fully prepared to turn over any discoverable documents and information that bears some degree of relevance to the claims and defenses at issue in this lawsuit. We have made specific proposals to streamline plaintiff's disclosure demands and bring them within the scope of permissible discovery in an effort to avoid needless motion practice. Should plaintiff reject our proposals, and insist on judicial intervention, defendant will seek appropriate sanctions under Fed. R. Civ. P. 37(a)(4)(B).

Very truly yours,

Lawrence Peikes