UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOAN KOSSOFF,

                         Plaintiff,

    v.

GENERAL ELECTRIC CAPITAL CORPORATION,

                        Defendant.

Civ. Action No. 3:03CV00203(PCD)

DATE: NOVEMBER 5, 2003

## REPLY TO MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR ORDER

The Plaintiff in the above matter hereby files this reply to Defendant's Memorandum in Opposition to Plaintiff's motion for order compelling Defendant to provide complete responses to Plaintiff's First Request for Production of Documents. Plaintiff is not seeking to abuse the discovery process, as Defendant claims. Defendant has refused to provide numerous required documents. Plaintiff has repeatedly attempted to resolve the outstanding issues prior to motion practice, but has had no adequate response from Defendant.

ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED

## DEFENDANT'S OBJECTIONS REGARDING CONFIDENTIALITY

Defendant has made numerous objections on the basis that they are "confidential" (general objection 4, requests 9, 15, 21, 22). As set forth in our motion, this is not a valid objection. However, in an effort to address these alleged concerns, Plaintiff has repeatedly asked Defendant for a proposed proposal for a confidentiality order by Defendant (see Exhibits D and F of motion). None has been offered to date. As such, Plaintiff has no option other than making the instant motion.

## PRIVILEGE LOG

Defendant previously had refused to produce a log based as required by LRCP 37 with regard to its numerous claims of privilege. However, based upon its 10/24/03 letter (Exhibit A), Plaintiff has withdrawn the portion of the instant motion with regard to that issue (Exhibit B).

## REQUEST 2

Plaintiff withdraws this request, subject to information it may obtain through deposition of Defendant's witnesses.

## REQUEST 7

As important issue in this lawsuit is the change in Defendant's positions from Director of Contracts to Manager of Contracts, and whether Plaintiff was qualified for both positions, or only the first. What is uncontested is:

1.    Plaintiff held the position of Director of Contracts for Defendant;

2.    The position of Manager of Contracts came into existence at about the same time Director of Contracts was discontinued, although the roles were substantially, if not entirely,

2

similar;

3.    Defendant alleged on its posting that the Manager of Contracts was intended to replace

the vacant position of an attorney who resigned;

4.    Plaintiff was told she was not qualified for the position of Manager of Contracts, because

she was not a paralegal;

5.    Plaintiff trained Wright in her duties for three months for her position of Manager of

Contracts;

6.    Despite this, when Wright was on maternity leave, Plaintiff served in this role for several

months, without the need for any additional assistance from Defendant.

Kossoff also assumed that Wright had received training from others, although it appears she had

not. As such, the circumstances surrounding this change in positions needed to be addressed.

Defendant now states that there was no change in job duties or training from Director of

Contracts to Manager of Contracts (see Defendant's Memorandum in Opposition, page 5). This

flies in the face of its position alleged to the Connecticut Commission of Human Rights and

Opportunities (CHRO) that Kossoff was not qualified for the second position.

Further, the *knowledge* Plaintiff has is irrelevant. The request was for responsive

*documents*. If there are any, they must be produced.

## REQUEST 9

As stated in the motion, Plaintiff seeks the personnel file of Wright, in order to determine how

Defendant allegedly determined she was qualified for a position for which Plaintiff was allegedly not.

This would include performance reviews, positive and/or negative notes/warnings, and any information

which would show what she did while serving in this position. If Defendant's objection is limited to

3

documents such as benefit forms, Plaintiff has already on numerous occasions stated it would consider any reasonable confidentiality proposals - none has been made by Defendant.

Defendant also ignored the fact that it has alleged to the CHRO that Ms. Kossoff, when she took over Ms. Wright's duties while Wright was on pregnancy leave, did not perform the full "panoply" of Wright's duties. Ms. Wright's reviews will shed further light on her duties and responsibilities she performed. This request is relevant, and Defendant should be compelled to respond.

## REQUESTS 13 and 20

As Defendant admits, it has agreed to turn over certain documents relevant to Plaintiff's requests, but to date, none have been provided. While the statement about "common knowledge" as to what PAR representatives were earning, Plaintiff must take Defendant at its word at this point, if it chose to, rather than looking at its own data, used the personal knowledge, including prejudices, of some unnamed individuals (although it calls into question Defendant's confidentiality arguments as to salary information from other requests, such as request 9). The Court should note that Defendant alleged to CHRO that Kossoff's salary was "way above scale for the job she held", and that her salary at the time was "already more than double the salary for this particular job classification". These two quotes indicate, if accurate, that Defendant was using data more specific than "common knowledge". As such, this information is relevant.

## REQUEST 15

There are numerous reasons why the documents Defendant proposes to provide are insufficient:

1.    Plaintiff's claims include allegations of disparate treatment. To limit disclosure to those

4

on notice of layoff would prevent an evaluation of whether there was disparate treatment of those in her class (age protected, disabled and/or perceived as disabled). At the very least, all documents on this subject regarding any employees under the supervision of the same representatives for Defendant responsible for determining Plaintiff's VIC entitlement (although it has not been disclosed which employees these are);

2.  Defendant's attempts to separate management and non-management level employees is similarly without basis. Plaintiff initially was working in a line management-level position. There is an issue of fact as to the classification of her varied roles after Defendant discontinuing her position; and

3.  At the very least, those individuals whose VIC bonuses was in any way handled by Mr. Edel or Jennifer Cherry, identified by Defendant in its response to CHRO be disclosed, as well as former Phoenixcor employees.

## REQUEST 17

Contrary to Defendant's assertions, Plaintiff did not limit this request to "legally mandated posters advising employees of their rights under federal laws prohibiting discrimination in employment". The reference to documents mandated by federal law are more than just the postings. At the very least, this includes EEO-1 documents and affirmative action plans. Plaintiff is also seeking documents maintained by Defendant which would show its compliance (or non-compliance) with its obligations related to discrimination, including notes or minutes of meetings, and/or results of any studies/reviews. As this lawsuit is for discrimination against Ms. Kossoff, these documents clearly are relevant.

5

## REQUESTS 18 and 19

Defendant mistakenly characterizes its offer to produce documents. It offered to produce data only for former Phoenixcor employees, not those for whom Jennifer Cherry had maintained responsibilities for through her position in Human Resources (Ms. Cherry was identified as a decision-maker in Defendant's CHRO response). Its offer also did include new employees of Defendant (e.g. Ms. Wright). As such, Defendant's objection is improper.

## REQUEST 21

Defendant's response with regard to this section defies logic. First it states that it has no such documents, then it says it does, and offers to provide some of it. Plaintiff believes that the request is proper under the circumstances, and Defendant should be compelled to respond.

## REQUEST 22

Contrary to Defendant's allegations, this request is relevant. Plaintiff was told that she had to stop telecommuting, not because the job could not be <u>done</u> from home, but because Jennifer Cherry said she could not tell whether or not Ms. Kossoff <u>was, in fact, working</u> from home (Kossoff deposition at 183, 184, 185). This treatment was, in fact, different from what GE Company policy is with regard to telecommuting (Exhibit C) Moreover, if Defendant has no disabled employees and/or does not accommodate them, this is indeed relevant to the claim of disability discrimination.

## REQUEST 24

As detailed in the motion, there is an issue of fact as to whether the RESOLVE program was known and/or available to Plaintiff. At her deposition, Defendant introduced certain documents which it claims provide evidence that she was aware of this program while employed

there. As such, request 24 asked for documents regarding this program. It would seem logical that these documents be provided so this issue can be determined.

Further, while Defendant claims the request is overbroad, it has produced no documents at all on this issue.

## REQUEST 29

Plaintiff is not seeking documents "concerning plaintiff's role in the transfer of her files to St. Louis. At issue in this lawsuit is whether Defendant's decision to transfer Plaintiff's files, *duties, and work* from Connecticut to St. Louis were decided and conducted in a discriminatory fashion. These documents are relevant to determine if the decision to move this position was conducted in a discriminatory manner. As detailed in the motion, Defendant's CHRO response alleged that Ms. Kossoff expressed no interest in a St. Louis position, implying that one was available and that she turned it down. As such, these documents should be provided.

## REQUEST 31

Defendant's allegation that Request 31 is irrelevant is false. Ms. Kossoff was removed from a position for which she was well qualified, told she was not qualified for a substantially similar position that had opened up, and was induced to accept a different, apparently unposted position, when she was in part told that her pay would not be affected. However, she was later denied a raise, being told that she was at the top of her pay scale (because, despite her title as Director, Defendant alleged that she was merely a customer service representative). Had she known that, she could have looked internally for a different position that might not have ended and might not have limited her pay raises. This request is necessary to compute damages.

7

## REQUEST 34

Defendant's allegation that Request 34 is undefined is absurd at best. It likens the request to a request for all correspondence by and between parties, not specifying the subject matter of correspondence. Here, Plaintiff requests documents, including notes and minutes of meetings in which Ms. Kossoff or her position were discussed. Moreover, it is not a "refer to or relate" request that would require Defendant to provide a copy of every document in its possession. Defendant had provided specious arguments not relevant to the request. This case alleges fraud and negligent misrepresentation when Ms. Kossoff was induced to accept a different position with Defendant by it telling her she was not qualified for an allegedly new position that was, in fact, substantially similar to the one from which she was being removed. It also alleges disability and age discrimination. Such documents may show the reasoning behind decisions on Ms. Kossoff's employment. "Broad requests for production are not necessarily harassing or burdensome where the party requesting discovery is ignorant of the specific contents of the opposing parties' records. Petz v. Ethan Allen, Inc., 113 F.R.D. 494, 496 (1985).

## SANCTIONS

Defendant ignores numerous issues in its request for sanctions.

1.    Contrary to its statements, it has not turned over all responsive documents. In response to several requests, it states it would provide documents (13, 15, 18-21), but none of these have been provided to date. In fact, in its 10/2/03 letter, it admits that not all documents it claims to have produced have been produced (Exhibit D);

2.    It also, after making numerous broad and vague objections regarding "privacy", has ignored Plaintiff's repeated requests for a proposed stipulation for confidentiality;

8

3.    As was stated in the motion, Defendant made numerous objections invoking privilege.

When Plaintiff sought a privilege log, pursuant to local rules, Defendant agreed to

provide one. However, based upon its 10/24/03 letter (Exhibit A), it actually undertook

no investigation to see if this objection was relevant until _after_ Plaintiff filed this motion.

    Had Defendant provided the documents it stated it would, undertaken **any** steps

to compile a stipulation of confidentiality, and abided by its obligations with regard to the

objections it raised, motion practice could have been avoided. Plaintiff has taken all

reasonable steps to avoid the necessity of filing the instant motion. There is no advantage

to Plaintiff prolonging litigation, or undertaking motion practice it can avoid. But

counsel cannot allow Defendant to cherry-pick what documents it provides to Plaintiff,

when these documents are responsive and relevant to the case at bar.

    WHEREFORE, Plaintiff respectfully requests that its motion be granted in its entirety,

together with such other and further relief as to this Court may deem just and proper.

Respectfully submitted,
PAES & PAES, LLC, Attorney for Plaintiff
4 Washington Avenue
Sandy Hook, CT 06482
203-270-6441

By:

MICHAEL T. PAES
Federal Bar No. CT19303

CERTIFICATION    This is to certify that a copy of this Reply to Memorandum in opposition to
Plaintiff's Motion to Compel was sent to Attorneys for Defendant, Attorney
Lawrence Peickes, Wiggin & Dana, LLP, 400 Atlantic Street, PO Box 110325,
Stamford, CT 06911-0325 via first class mail, postage prepaid, on this date.

MICHAEL PAES

9

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOAN KOSSOFF,

                      Civ. Action No. 3:03CV00203(PCD)

           Plaintiff,

    v.

GENERAL ELECTRIC CAPITAL CORPORATION,    DATE: NOVEMBER 5, 2003

                Defendant.

Pursuant to LRCP 37(a)(2), Plaintiff offers this certification of counsel's good faith efforts to resolve the issues in this motion prior to motion practice.

STATE OF CONNECTICUT     )
COUNTY OF FAIRFIELD      )    ss.:

MICHAEL PAES, being duly sworn, hereby deposes and says:

1.     I am over the age of eighteen (18), and understand the nature of an oath.  I am counsel for the Plaintiff in this action.

2.     As detailed in the "relevant facts" portion of Plaintiff's motion, I have repeatedly conferred with counsel for the Defendant in an effort to resolve the discovery issues of the motion.

3.     As detailed in the attached Reply, Plaintiff has withdrawn her requests pursuant to:

    a.     Defendant's Privilege Log; and

    b.     Request for Production of Documents #2.

All other issues in the motion remain unresolved.

                                _____
                                MICHAEL PAES

Sworn to before me this 5th day of November, 2003.

_____
Commissioner of the Superior Court
State of Connecticut
Fern H. Paes

# EXHIBIT
# A

**Wiggin & Dana**

Counsellors at Law

Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, Connecticut
06911-0325
www.wiggin.com

Lawrence Peikes
203.363.7609
203.363.7676 fax
lpeikes@wiggin.com

VIA FACSIMILE & U.S. MAIL

October 24, 2003

Michael T. Paes Esq.
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT 06482

Re:    <u>Kossoff v. GE Capital</u>

Dear Michael:

As you will recall, during the course of our communications regarding the pending discovery dispute in the above-referenced case, we agreed to review our files for purposes of identifying documents responsive to plaintiff's request for production that are protected from disclosure by the attorney-client privilege and/or work product doctrine and prepare a privilege log. Having undertaken such a review, the only privileged documents that exist take the form of "written communications between a party and its trial counsel after commencement of the action and [] work product material created after commencement of the action," which need not be disclosed in a privilege log. D. Conn. L. Civ. R. 37(a)1. Accordingly, a privilege log is not required.

Very truly yours,

Lawrence Peikes

# EXHIBIT
# B

# PAES & PAES, LLC

Michael T. Paes         - admitted to practice in Connecticut & New York
Fern H. Paes            - admitted to practice in Connecticut

4 Washington Avenue
Sandy Hook, CT 06482
(203) 270-6441
(203) 270-0212 - fax

Service by Facsimile not Accepted

October 27, 2003

Attorney Lawrence Peickes
Wiggin & Dana, LLP
400 Atlantic Street
PO Box 110325
Stamford, CT 06911-0325

Re:    Kossoff v. GE Capital
       Our File No. 018.02EMP

Dear Lawrence:

    We have received your 10/24/03 letter.  Based upon your statements in that letter, we will withdraw the part of our motion requesting a privilege log.  We await a response on the balance of our motion.

    Thank you.

                                   Very truly yours,

                                   MICHAEL PAES

MP/ks

# EXHIBIT
# C



- ■ Home
- ⊞ Policy
- ⊞ Principles
- ⊞ Arrangement Options
- ⊞ Request Process
- ⊞ Tips & Tools
- ⊞ Manager Tools
- ⊞ Feedback
- ⊞ Request Form

     

# Philosophy

Creating an environment at GE Capital where our associates have the options they need to manage Work/Life challenges is critical to your and our business success. In gathering the "Voice of the Employee," through focus groups and the Quality & Growth Survey, you told us that you needed more support for your Work/Life challenges. This is why we are launching Flexible Work Arrangement Options. We believe that these options will help you manage your Work/Life priorities. We also believe that Flexible Work Options underscore the trust we have in the integrity of our workforce and demonstrate our commitment to become a Global Employer of Choice.



© WFD 1997-2001.  All rights reserved.   For internal use only by GE Capital.

00126



**GE Capital**  **WORK** *Arrangement*

⊞ Home
⊞ Policy
⊞ Principles
⊞ Arrangement Options
   ▫ **Guidelines**
   ▫ Flextime
   ▫ Part-Time
   ▫ Job Sharing
   ▫ Compressed Workweek
   ▫ Telework
   ▫ Remote Work
⊞ Request Process
⊞ Tips & Tools
⊞ Manager Tools
⊞ Feedback
⊞ Request Form

## Guidelines

The following section provides detailed guidance on the six Flexible Work Arrangement options offered at GE Capital.

- **Flextime:** Full-time employees vary the start and end times of their work days, while still covering core hours as determined by your Business.

- **Part-Time Work:** Employees reduce their workload and consequently their hours decrease to fewer than the standard workweek requirements.

- **Job Sharing:** Two employees with reduced workloads and corresponding reduced schedules share the responsibilities of a single full-time position.

- **Compressed Workweek (e.g., "4 days x full-time job responsibilities" or "4.5 days x full-time job responsibilities"):** This option, which allows employees to compress a full-time workload into fewer than five days per week, is available to the non-exempt population only.

- **Telework:** Employees perform full-time work responsibilities up to several days a week at sites other than their primary location – usually their home or a satellite office.

- **Remote Work:** Employees perform full-time work responsibilities *exclusively* from a location outside the *primary work site* – usually their home or a satellite office.


### Elements of Success

FWAs represent a new work style that challenges many traditional assumptions about how and when work gets done. There are a number of considerations that are strongly correlated with the effective use of flexible scheduling. They are as follows:



**Assessing the Effect of the Option on the Work Team and Customers.** Considering the impact of a new schedule on other parties is necessary to develop a lasting schedule that will be supported by the Company. Scheduling options that negatively affect job performance are destined to fail. The request process encourages employees to consider which tasks and relationships may be affected by their new schedule and to come to some mutually agreeable solution to problems.

**Understanding Compatibility with Job Requirements.** Many positions have an element of time-intensive, concentrated work that requires little interaction and is feasible to perform on flexible scheduling. In general, jobs with greater autonomy are stronger candidates for FWAs. Those characterized by intensive customer contact or a high degree of team interaction may not be as compatible with or may need more intensive planning to be effectively executed on FWAs.

**Management Must Evaluate by Results.** Movement to flexible scheduling requires a true focus on results. To successfully manage by results, managers and employees need to collaborate to establish clear, measurable objectives and desired results. Examples of effective measures include quality standards, project deadlines, budget objectives, and customer input.

00127

**The Change in Schedule and/or Location Must Be Communicated.** Because FWAs mean that all employees are not always in the office at the same time, it is critical that there be constant and effective communication about how and when employees are accessible. Online calendars, team white boards, email and voicemail can all be used to ensure that employees know how to find out how someone can be reached. Over-communication of scheduling information, especially when everyone is getting used to

# EXHIBIT D

Wiggin & Dana          Counsellors at Law

Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, Connecticut
06911-0325
www.wiggin.com

Lawrence Peikes
203.363.7609
203.363.7676 fax
lpeikes@wiggin.com

VIA FACSIMILE & U.S. MAIL

October 2, 2003

Michael Paes, Esq.
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT 06482

Re:    Kossoff v. GE Capital

Dear Michael:

This is in response to your letter dated September 30, 2003, which in turn responds to my September 26 letter addressing plaintiff's concerns about the scope of defendant's document production in the above-referenced case. Unfortunately, as explained below, your "various suggestions for compromise" for the most part do not speak to defendant's objections. Nevertheless, we remain open to further dialogue in the hopes of resolving the remaining areas of dispute.

First of all, contrary to your contention, my letter of June 18, 2003, in no way indicates we will be sending you a copy of the documents identified in defendant's initial disclosures in the absence of a formal request. Rather, my letter simply states that "as to your suggestion that each side cover the cost of copying documents for production, we are amenable to such an arrangement." In any event, the point is moot because, as noted in my September 26 letter, "to the extent plaintiff's request for production sought documents within the categories specified in defendant's initial disclosures, those documents have been produced." If there are additional documents plaintiff believes might fall into one or more of the categories listed on our disclosures, we would certainly entertain a specific request for production.

With respect to the privilege log, as stated in my prior letter, we will be preparing one. We are, however, at a loss to ascertain the basis for your assertion that defendant is "seeking to shield specific documents created prior to the onset of litigation ..." Nothing is being concealed; rather, we are simply defending the right to preserve a legally protected confidence. To the extent you purport to suggest a document created pre-litigation cannot be protected by the attorney-client privilege or work product doctrine, you are mistaken.

Wiggin & Dana

Michael Paes, Esq.
October 2, 2003
Page 2

Request No. 2 sought production of "files" maintained by defendant regarding plaintiff other than her personnel file. To reiterate, there are no such "files."

Turning to Request No. 7, given that, as plaintiff acknowledges, defendant eliminated, rather than modified, the Director of Contracts job and created a new position of Manager of Contracts, by definition there would be no documents "regarding any change in job duties or training for the position of Director of Contracts, and/or Manager of Contracts ..." We note, however, that the differences in the two positions can be gleaned from the Contracts Administration Manager job description, which has been produced.

We do not disagree with your contention that Ms. Wright's qualifications for the job of Contracts-Administration Manager is a relevant area of inquiry, but that begs the question as to whether plaintiff is entitled to pore over the entirety of a former colleague's personnel file. In response to Request No. 9, we have produced Ms. Wright's resume and offer letter; you have yet to explain how anything else contained in her personnel file could conceivably be pertinent to plaintiff's claims.

Request Nos. 13 and 20 ask for documents that were consulted by defendant for purposes of making a "determination as to Kossoff's eligibility for a pay increase during 2001 and 2002" or "used to compare salaries with Kossoff." This request erroneously presupposes that defendant actually consulted a salary scale or other record in evaluating plaintiff's compensation. To the extent plaintiff requests documentation "regarding the pay scale for customer service persons" we are willing to provide salary information for Portfolio Administration Representatives (PAR's) employed by CEF during 2001.

We beg to differ with plaintiff's characterization of Request Nos. 15 and 17 as "reasonable" in scope. Plaintiff continues to offer no explanation as to the relevance of three years worth of data reflecting the VIC compensation paid to every one of the thousands of GE Capital employees. Indeed, plaintiff does not take issue with her VIC compensation for any year other than 2001. The request is patently over-broad, intrusive, and goes well beyond the reasonable scope of this litigation.

Plaintiff's offer "to limit the time period in requests 18, 19, 21, 22 to April 1999 through 2003" fails to cure the durational defect plaguing these requests, and, further, simply ignores the fundamental premise of defendant's objections. To repeat for the third time now, defendant does not maintain a record of its employees' disabilities or perceived disabilities. We obviously cannot turn over

Wiggin & Dana

Michael Paes, Esq.
October 2, 2003
Page 3

documents reflecting non-existent data. As for the age-related information, by its terms, these requests would encompass any document bearing the birth date of any individual employed by defendant over a four (4) year period. It is nonsensical for plaintiff to claim such an expansive volume of records is essential, or even meaningful, to the prosecution of her case. At most, plaintiff is entitled to information concerning the ages of similarly situated employees, the only appropriate comparators. If plaintiff is prepared to narrow her request to encompass former Phoenixcor employees only, defendant will provide birth dates for these employees; the appropriate discovery vehicle would seem to be an interrogatory, not a request for documents.

The reason we did not offer a compromise proposal with respect to Request Nos. 24 and 27, seeking a copy of every Resolve case file, beyond the fact we are still thoroughly perplexed as to the legal basis of plaintiff's challenge to the Resolve program, is that plaintiff remains mum as to how documents pertaining to other employees' grievances could possibly shed light on her claim. Plaintiff never even invoked Resolve, making the discovery demand all the more absurd.

With respect to Request No. 29, we will state one more time "that plaintiff expressed no interest in relocating to St. Louis." Since defendant does not assert that plaintiff was offered a specific position in St. Louis or that she "told Defendant that she would not take a transfer to St. Louis if offered ...," there are no documents within the scope of this request, as we understand it.

Given that plaintiff was not in defendant's employ for five (5) years, and never applied for a posted position, we are befuddled by your asseveration with regard to Request No. 31 that "the five year time period selected is reasonable under the circumstances, and the issue of what positions may have been available to Ms. Kossoff is relevant to the allegations in this lawsuit." There is but one job posting at issue in this case. Discovery is properly limited to that particular position.

Defendant has no obligation under the discovery rules to provide "a sworn statement from the Head of IT stating that they have attempted in good faith, but could not determine when Kossoff connected remotely."

Request No. 34 is a catch-all that is unbounded by time or subject matter. It is impossible for defendant to conduct a meaningful search for documents with no parameters for guidance. We observe, however, that notes and e-mails pertaining to the events that culminated in the elimination of plaintiff's position have in fact been produced.

Wiggin & Dana

Michael Paes, Esq.
October 2, 2003
Page 4

Defendant remains fully prepared to turn over any discoverable documents and information that bears some degree of relevance to the claims and defenses at issue in this lawsuit. We have made specific proposals to streamline plaintiff's disclosure demands and bring them within the scope of permissible discovery in an effort to avoid needless motion practice. Should plaintiff reject our proposals, and insist on judicial intervention, defendant will seek appropriate sanctions under Fed. R. Civ. P. 37(a)(4)(B).

Very truly yours,

Lawrence Peikes