**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

*FILED*

*Nov 13  2 39 PM '03*

*U.S. DISTRICT COURT*

------------------------------------------------------- X
JOAN KOSSOFF,                                                   :
                                                                        :    Civil Action No. 3:03CV00203 (PCD)
                                   Plaintiff,                   :
                                                                        :
v.                                                                      :
                                                                        :
GENERAL ELECTRIC CAPITAL                         :
CORPORATION,                                              :    OCTOBER 30, 2003
                                                                        :
                                 Defendant.                  :
------------------------------------------------------- X

## DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Plaintiff's motion to compel falsely portrays defendant as unreasonable, obstructionist and disinterested in compromise. It is, however, quite plain from the scope of defendant's production, and the meet and confer letters exchanged by the parties pursuant to Fed. R. Civ. P. 37(a)(2)(A) and D. Conn. L. Civ. R. 37(a)2, that defendant has been more than willing to turn over a broad range of documents bearing any logical, even if remote, connection to the claims at stake in this litigation. Plaintiff, on the other hand, appears to be on a mission to exploit the discovery process in order to maximize disruption, inconvenience, and cost by peppering defendant with sweeping requests for, *inter alia*, irrelevant company-wide documentation. Because the instant discovery motion is not "substantially justified" a monetary sanction in an amount equal to the expense incurred by defendant in opposing the motion, including reasonable attorneys' fees, is warranted. Fed. R. Civ. P. 37(a)(4)(B).

**ORAL ARGUMENT REQUESTED**

## I.   **Governing Standard**

Under Fed. R. Civ. P. 26(b)(1), as presently constituted, "attorney-managed discovery is now limited to matters 'relevant to the claim or defense of any party.'  Discovery that is not relevant to any claim or defense in the action but does relate to the subject matter of the case can be had, but only on court order based on a showing of good cause." Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2008, at pp. 18-19 (2003 Pocket Part).

For discovery purposes, information is deemed relevant if, at a minimum, it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Put another way, 'a showing of relevance can be viewed as a showing of need, as for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of matter not relevant to the subject matter involved in the pending action.'" Chaplaincy of Full Gospel Churches v. Johnson, 217 F.R.D. 250, 256 (D.D.C. 2003) (citation omitted). Clearly, then, "courts remain concerned about 'fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests' and have therefore limited discovery to the issues involved in the particular case." Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.D.C. 2003) (citation omitted).

Albeit broad, therefore, "[t]he scope of discovery ... is not without bounds, and limitations are imposed where the discovery is 'unreasonably cumulative or duplicative,' 'overly burdensome ... [or] expensive' or 'the burden or expense of the proposed discovery outweighs its likely benefit.'" Security Ins.Co. of Hartford v. Trustmark Ins. Co., __ F.R.D. __, 2003 WL 22350786, at *3 (D. Conn. June 10, 2003) (Dorsey, J.)  "Thus, likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery ..." Six

<u>West Retail Acquisition, Inc. v. Sony Theatre Management Corp.</u>, 203 F.R.D. 98, 102 (S.D.N.Y. 2001).

These basic limitations on discovery apply no less to employment discrimination cases. As the Eleventh Circuit recently reiterated, "discovery in Title VII cases is 'not without limits. The information sought must be relevant and not overly burdensome to the responding party.'" <u>Wright v. AmSouth Bancorporation</u>, 320 F.3d 1198, 1205 (11th Cir. 2003) (citation omitted). Consequently, "[e]ven in cases involving [age or disability-based] discrimination, where such claims, by necessity, require discovery on how others are treated, discovery 'should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct.'" <u>Pleasants</u>, 208 F.R.D. at 9 (citation omitted).

The discovery rules also make plain that "[w]hen a plaintiff first pleads its allegations in entirely indefinite terms, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing, that plaintiff abuses the judicial process. That is what occurred here. The limits which Rule 26(b)(2)(ii) place upon discovery are aimed at just such a tactic." <u>Koch v. Koch Industries, Inc.</u>, 203 F.3d 1202, 1238 (10th Cir. 2000).

## II.  **Argument**

We address the disputed discovery items in the order they appear in plaintiff's memorandum of law.

### A.  **General Objection No. 4**

Plaintiff misses the point of defendant's General Objection No. 4 and misunderstands the nature of the protections afforded by Fed. R. Civ. P. 26(c). Simply because a protective order

*may* issue to limit dissemination and use of confidential or private information does not mean that such information is *always* discoverable. Defendant's general objection on confidentiality grounds speaks to documents that are highly personal, such as other employees' personnel files and internal grievances, having absolutely nothing to do with this case. The availability of a protective order does not magically remove the "irrelevant" label from otherwise non-discoverable private information. First Aviation Services, Inc. v. Gulf Ins. Co., 205 F.R.D. 65, 67 (D. Conn. 2001) (notwithstanding existence of protective order, "a request for *all* the documents from a lawsuit that does not appear to have any bearing on the instant lawsuit is beyond the scope of discovery.") (emphasis in original).

**B.    Privilege Log**

Defendant has already advised plaintiff that the only documents protected against disclosure by the attorney-client privilege and/or the work product doctrine are "written communications between a party and its trial counsel after commencement of the action and the work product material created after commencement of the action," which, per D. Conn. L. Civ. R. 37(a)1, need not be identified in a privilege log. This issue is therefore moot.

**C.    Request No. 2**

With respect to Request No. 2, plaintiff's motion seeks an Order compelling production of documents *not* actually requested. Thus, Request No. 2 demands "[a] complete copy of Kossoff's medical file, as well as any other *files* maintained by Defendant on Kossoff." (emphasis added). As we have advised plaintiff on three occasions now, defendant did not maintain a "medical file," or any other "file," on plaintiff (aside from the personnel file that has been produced). The fact that an I-9 form exists does not mean there is some unaccounted for "file." If there are specific documents plaintiff is seeking that are not contained in a specific

4

"file[] maintained by Defendant on Kossoff," she should make a specific request. It is certainly

not defendant's burden to undertake a blind search for documents that are not described by

plaintiff with any degree of particularity. <u>Cotracom Commodity Trading Co. v. Seaboard Corp.</u>,

189 F.R.D. 655, 666 (D. Kan. 1999) ("Fed. R. Civ. P. 34 requires that requests for production

identify sought documents with reasonable precision.").

**D.    Request No. 7**

As we have previously advised plaintiff at least twice, Request No. 7 necessarily

presupposes there was some "change in job duties or training for the position of Director of

Contracts, and/or Manager of Contracts ..." when that is simply not the case. Plaintiff has, in

response, seemingly altered Request No. 7 to demand production of documents describing the

differences between her old job and the newly created position filled by Christine Wright. That

information is plainly articulated in the job description already produced, and in any event is well

within the scope of plaintiff's knowledge. Indeed, plaintiff testified in some detail at her

deposition as to the differences and similarities between the two jobs. (Pltf's Dep. at pp. 128-

38).[1] Defendant is at a loss to figure out what more plaintiff could possibly be searching for by

way of Request No. 7. <u>See</u> Fed. R. Civ. P. 26(b)(2) (discovery "shall be limited by the court if it

determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is

obtainable from some other source that is more convenient, less burdensome, or less expensive

...").

**E.    Request No. 9**

Simply because the position plaintiff belatedly claims to have been discriminatorily

denied was procured by Christine Wright does not make the entire contents of Ms. Wright's

---

[1] Cited excerpts and exhibits from plaintiff's deposition are appended hereto at Tab A.

personnel file open for inspection. Personnel records are by their very nature confidential and ought not be subject to production on a wholesale basis, even in the case of the successful candidate for a disputed position. While some documents contained in Ms. Wright's personnel file, such as her resume and offer letter, are plainly relevant, others, such as her benefit forms and payroll-related records, are not. Defendant has produced Ms. Wright's resume and offer letter; plaintiff tenders literally no explanation as to how anything else contained in her personnel file might shed light on this case.

**F.    Request Nos. 13 & 20**

From defendant's representation that plaintiff was at the top of the pay scale for the position she held, plaintiff leaps to the conclusion that the decision to keep her 2002 salary flat was based on some formal compensation survey. As defendant has explained more than once, however, no such survey was conducted. Rather, this representation was based on common knowledge that the PAR salary scale topped out well below plaintiff's annual salary at the time of $81,293.00. Thus, there are no documents responsive to plaintiff's request for compensation records consulted in connection with the salary decision alleged to be discriminatory. Nevertheless, defendant has offered to turn over information concerning PAR salaries during the relevant time period, which should have obviated any dispute.

**G.    Request No. 15**

It is frankly absurd for plaintiff to suggest that her narrow claim alleging discriminatory denial of a VIC bonus for 2001 legitimately begets an expansive discovery demand for documentation concerning the VIC bonuses awarded to every one of GE Capital's thousands of employees over a three-year period. "There is certainly no authority for this nearly infinite expansion of the notion of what is relevant to a distinct claim of ... discrimination." Pleasants,

208 F.R.D. at 13. Defendant is perfectly willing to provide information concerning the 2001 VIC bonus awarded to similarly situated employees, i.e., employees on notice of layoff reporting to the same manager(s) responsible for deciding plaintiff's VIC entitlement. Anything more is beyond the reasonable scope of discovery. See Banks v. CBOCS, West, Inc., 2003 WL 1888844, at *3 (N.D. Ill. April 16, 2003) ("Furthermore, the request for information as to 'each and every employee' terminated for violating the Rules of Conduct is overbroad because [plaintiff] and non-management employees are decidedly not similarly situated. Finally, the request for information on several types of violations is overbroad. Only violations of the rules prohibiting insubordination -- the same misconduct in which [plaintiff] allegedly engaged -- relate to his claim.") (citations omitted).

### H.    Request No. 17

Plaintiff explains for the first time in her moving papers that this poorly worded request for documents relating to "discrimination of employees" actually refers to legally mandated posters advising employees of their rights under federal laws prohibiting discrimination in employment. This case, however, does not concern defendant's compliance with its posting obligations, and plaintiff does not claim to have been ignorant of her rights. Plaintiff offers no explanation as to why these postings might be relevant to her claims, and certainly fails to justify putting defendant to the burden of searching for company-wide postings over a six-year period, extending back before defendant even acquired the business and prior to the point in time when plaintiff claims to have been victimized by unlawful discrimination.

### I.    Request Nos. 18 & 19

In an effort to procure broad statistical data concerning the demographics of GE Capital's entire workforce, plaintiff miscasts her complaint as advancing a disparate impact claim; there is

no such claim alleged. Plaintiff, moreover, continues to demand production of records relating to employees' disabilities and perceived disabilities despite being advised at least three times that no such records exist.

While age-related data is maintained by defendant for benefit purposes and the like, plaintiff's request for age statistics is unbounded in time or scope and thus far too broad. Properly focused statistical evidence may be relevant and admissible in the context of a disparate treatment claim, but "the ability to present statistical evidence does not equate with the right to obtain discovery regarding information that is not relevant to the claim at issue." EEOC v. District of Columbia Public Schools, 217 F.R.D. 12, 15 (D.D.C. 2003) (citation omitted). In employment discrimination cases, discovery is properly "limited ... to the relevant corporate department, similarly situated employees, time period, and decision makers." Balderston v. Fairbanks Morse Engine Div. of Coltec Industries, 328 F.3d 309, 320 (7th Cir. 2003). Request Nos. 18 & 19 extend well beyond these parameters and, therefore, are plainly objectionable.

Nevertheless, defendant offered to produce statistical information within the range of relevance. Plaintiff, however, apparently misunderstands defendant's narrowing proposal. Defendant did not purport to propose production of information concerning the age composition of the Phoenixcor workforce back when that entity was acquired by GE Capital. Rather, defendant offered to provide information concerning the ages of employees working within the former Phoenixcor business units at the time of plaintiff's layoff, the broadest possible group appropriate for comparison. Because GE Capital's workforce was, at the time, comprised of many thousands of employees divided among nearly thirty largely autonomous businesses, company-wide statistics are meaningless.

8

"In employment discrimination cases, discovery is usually limited to information about employees in the same department or office absent a showing of particularized need for, and the likely relevance of, broader information." Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 2002 WL 453242, at *4 (S.D. Ind. March 25, 2002) (and cases cited therein). Plaintiff makes no such showing of "particularized need." Indeed, compiling data reflecting the age demographics of defendant's entire workforce would be a Herculean task producing no tangible benefit to the ultimate resolution of this case.

## J.    Request No. 21

Request No. 21 broadly seeks documents regarding the age, disability, perceived disability and salary of every one of the thousands of GE Capital employees vested with the title of manager or director. Again, defendant does not maintain information reflecting employees' disabilities or perceived disabilities. Age-related salary information is irrelevant for the simple and obvious reason that aside from the discrete issue pertaining to her 2002 raise, plaintiff does not allege salary discrimination. Even if she did, that would not justify her demand for salary information on such a sweeping scale. Defendant has offered to produce a report showing the ages of all employees in plaintiff's business unit and the 2002 salaries of similarly situated employees. Anything more is beyond the scope of this litigation. See Curry v. Morgan Stanley & Co., 193 F.R.D. 168, 174 (S.D.N.Y. 2000) (denying motion to compel production of individual defendants' expense records because, plaintiff, a first-year analyst fired for expense account falsification, was not similarly situated to the defendants, all of whom were executives or managing directors).

9

K.    **Request No. 22**

Request No. 22 broadly demands production of all documents "regarding any accommodations given to any disabled employee for Defendant." The degree of invasiveness and burdensomeness associated with this request cannot be understated, and thus it would be objectionable even were there an accommodation issue presented in the matter *sub judice*. Plaintiff, however, admits she never requested an accommodation for any alleged disability, and further admits defendant granted the telecommuting accommodation ostensibly at issue. (Pltf's Dep. at pp. 81-82, 89-92, 105-06, 175-76, 183-85). Thus, plaintiff was permitted to telecommute on Fridays for several years, except for the period when she was covering for Ms. Wright during her maternity leave, a function plaintiff admittedly could not fulfill from home. (Pltf's Dep. at pp. 121-22, 184-85). Under the circumstances, ADA accommodations made for other employees are wholly irrelevant and needlessly intrusive. See Grayson v. O'Neill, 308 F.3d 808, 816-17 (7th Cir. 2002) (plaintiff's "Rule 56(f) motion was flawed" because "[e]vidence of generalized racism directed at others is not relevant unless it has some relationship with the employment decision in question.") (citation omitted); Heredia v. Heyman, 203 F.R.D. 112, 113 (S.D.N.Y. 2001) (denying motion to compel further responses to "questions which seek to establish a pattern of discrimination and a conspiracy to cover up civil rights violations [that] are outside the scope of the second complaint.").

L.    **Request No. 24**

RESOLVE is an internal grievance procedure available to defendant's employees as a means of voicing any type of work-related concern. At the outset of the agency proceedings, defendant asked the CHRO to suspend processing of plaintiff's charge and defer in the first instance to the RESOLVE program, which plaintiff never invoked. CHRO denied the request.

Plaintiff was not forced into RESOLVE, and defendant does not take the position that her claims are barred by her failure to initiate a RESOLVE case. It is, therefore, a complete mystery what plaintiff is complaining about vis a vis the RESOLVE program (a copy of which has in any event been produced). Certainly, plaintiff's complaint allegation, *repudiated at her deposition*, that "this program was never even revealed to her until after the termination of her employment,"[2] does not give rise to some cognizable cause of action.

Even were it otherwise, plaintiff makes no attempt whatsoever to justify her unbounded request for a copy of every single RESOLVE case file. "This request sweeps too broadly because it potentially involves complaints that have nothing to do with plaintiff's department or the persons [s]he accuses of discriminatory conduct." Marshall v. District of Columbia Water & Sewage Authority, 214 F.R.D. 23, 26 (D.D.C. 2003) (citation omitted) (refusing to order employer to produce "every complaint ever made for each position announced at WASA during a four year period."). See also Security Ins. Co. of Hartford, at *6 ("Furthermore, the mere suggestion that defendant raised the issue of rescission of a reinsurance agreement with Superior National Insurance does not justify discovery into all disputes.") (Dorsey, J.).

An Order compelling defendant to produce these highly personal and confidential case files is wholly unwarranted. See Fleming, 233 F. Supp. 2d at 615 (motion to compel response to interrogatory asking employer to "identify each and every police officer who has filed a complaint against the New York City Police Department for discrimination based upon race for 1996 until present" denied as overly broad); Catskill Development, L.L.C. v. Park Place Entertainment Corp., 206 F.R.D. 78, 95 (S.D.N.Y. 2002) ("Moreover, plaintiffs have asked for

---

[2] An e-mail confirming plaintiff's receipt of the RESOLVE program was identified and introduced as an exhibit to plaintiff's deposition. (Pltf's Dep. at pp. 211-12; Exh's. 10 & 11).

production of every record relating to every complaint, lawsuit and proceeding against a public company that runs 28 casinos nationwide -- a request that is overbroad on its face ...").

**M.    Request No. 29**

Defendant has already produced those documents it was able to unearth concerning plaintiff's role in the transfer of her files to St. Louis. We do not understand what else plaintiff is fishing for by way of Request No. 29. If plaintiff is demanding production of the voluminous transferred files themselves, the significance of which she neglects to explain, defendant is more than justified in objecting on grounds of relevance and undue burden.

**N.    Request No. 31**

Sprawling discovery demands akin to Request No. 31, which seeks "[a]ny and all documents ... regarding all positions which became open or available at Defendant's Norwalk, CT facility during 1997 through the termination of Kossoff's employment with Defendant," have been denounced in the strongest of terms. As recently articulated by one district court, "a request or interrogatory is unduly burdensome on its face if it uses the omnibus term 'relating to' or 'regarding' with respect to a general category or group of documents. ... [S]uch broad language makes 'arduous the task of deciding which of numerous documents may conceivably fall within their scope.' The use of such omnibus terms also requires the answering party to 'engage in mental gymnastics to determine what information may or may not be remotely responsive.'" Aikens v. Deluxe Financial Services, Inc., 217 F.R.D. 533 (D. Kan. 2003) (citations omitted).

Plaintiff nevertheless attempts to validate this far-reaching request by way of an allegation that prior to notifying plaintiff of her pending dismissal "Defendants made no effort to inform her of other jobs for which she might have been qualified." As a threshold matter, the limited durational scope of defendant's alleged transgression belies any need for six years worth

12

of data.  Beyond that, however, and more importantly, it is undisputed that GE-wide job opportunities are posted for all of defendant's employees to see.  These postings were no less available to plaintiff than any other employee.  We are therefore mystified by plaintiff's allegation that she was not made aware of internal job openings.

Plaintiff appears, therefore, to be suggesting defendant had some legal obligation to provide her with several months advance notice of her layoff, and then use that time to help her locate a new position; this suggestion is legally unfounded and, indeed, ludicrous.  Plaintiff does not allege, nor can she, that any such efforts were undertaken on behalf of younger employees. Absent such an allegation, plaintiff is in no position to claim she was discriminatorily denied job search assistance.  See Graham v. Long Island Rail Road, 230 F.3d 34, 41 (2d Cir. 2000) (rejecting plaintiff's claim that he was discriminated against by virtue of employer's failure to provide a last chance waiver for his first drug offense where "no categorical policy of giving last chance waivers for first offenses was in place when [plaintiff] was first dismissed."); Fakete v. Aetna Inc., 308 F.3d 335, 340 n.6 (3d Cir. 2002) (" ... the District Court correctly granted summary judgment on Fakete's denial-of-transfer-request claim ... because Fakete did not offer evidence that Aetna granted a transfer request by a similarly situated younger employee, and thus failed to make out a prima facie case.") (citation omitted).

Having failed to apply for any particular opening, moreover, plaintiff is unable to state so much as a prima facie case of discrimination based on her failure to procure an alterative position prior to her layoff.  Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000) (affirming dismissal of promotion discrimination claim where plaintiff "did not allege that she ever applied for the financial analyst position or that she was qualified for that position.").  Consequently, plaintiff cannot legitimately put defendant to the trouble and expense of compiling postings for

13

positions she did not pursue, much less can she claim an entitlement to six years worth of job postings.

### O.    Request No. 34

Plaintiff's request for "[a]ll documents, including notes and meetings in which Joan Kossoff or her position were discussed" is undefined by subject matter and therefore boundless on its face. "[T]he language of Plaintiff's request, absent some measure of specificity, could lead to a potentially limitless production." Quality Aero Technology, Inc. Telemetrie Elektronik, GMBH, 212 F.R.D. 313, 317 (E.D.N.C. 2002) (denying motion to compel production of "any and all correspondence by and between the parties, and/or their agents or representatives, to this action during the period 1995-present."). Defendant has produced notes of discussions relating to the layoff decision. To the extent plaintiff seeks something more she must be specific so that defendant can tailor its search. Robbins v. Camden City Bd. of Education, 105 F.R.D. 49, 60 (D.N.J. 1985) (denying motion to compel "the production of all documents that 'refer or relate to' plaintiff" because read literally this request "would require the defendant to provide a copy of every document in its possession, since all of these documents could conceivably 'refer or relate' to plaintiff's employment.").

## III.    Sanctions

Under Fed. R. Civ. P. 37(a)(4), "the losing party on a motion to compel *must* pay reasonable expenses, barring extenuating circumstances." Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc., 212 F.R.D. 94, 103 (E.D.N.Y. 2002) (emphasis in original) (citations omitted). In particular, the operative provision of Rule 37(a) states: "If the motion is denied, the court ... shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party ... who opposed

14

the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4)(B).

Plaintiff had no justification whatsoever, much less substantial justification, for filing the instant motion to compel. The record clearly reflects that defendant has freely turned over those documents within the scope of plaintiff's requests that relate in any way, directly or indirectly, to the issues posed by this litigation. In addition, defendant has proposed reasonable narrowing solutions that plaintiff has inexplicably rejected in favor of judicial intervention. For instance, in response to plaintiff's overly broad company-wide requests, defendant has reasonably offered to produce pertinent documentation encompassing plaintiff's work group and similarly situated employees. Even though defendant's proposed limitations fully comport with precedent establishing the appropriate contours of discovery in employment discrimination cases, plaintiff reflexively, and enigmatically, balked. See Glenn v. Williams, 209 F.R.D. 279, 281-82 (D.D.C. 2002) ("Review of the case law in these circuits clearly demonstrates that discovery in Title VII actions may appropriately be limited to employment units, departments, and sections in which there are employees who are similarly situated to the plaintiff.") (and cases cited therein).

The rules of civil procedure encourage litigants to compromise as a means of resolving their discovery disputes informally, and inexpensively, outside the courtroom. Murphy v. Barberino Bros., Inc., 208 F.R.D. 483, 484 (D. Conn. 2001) (the "meet and confer" requirement of Fed. R. Civ. P. 37(a)(2) and D. Conn. L. Civ. R. 37(a)2 "serves an important purpose, namely to conserve the scarce resources of the Court and to encourage counsel to engage in a good faith effort to eliminate or reduce areas of controversy and to resolve disputes between themselves."); Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 100 (S.D.N.Y. 1997) (denying motion to compel

where movant "did not attempt to negotiate a compromise ..., preferring instead prematurely to involve this Court in the parties' discovery dispute."). Defendant has been an advocate of compromise whereas plaintiff remains recalcitrant, stubbornly sticking to positions that are wholly unjustified and unreasonable, and thereby running afoul of the spirit and letter of the rules governing discovery.

Plaintiff "has not met [her] burden of proving that there was justification for [her motion] or that that there are any circumstances that make such an award of costs unjust." Worldcom Network Services, Inc. v. Metro Access, Inc., 205 F.R.D. 136, 143 (S.D.N.Y. 2002) (citation omitted). Sanctions are therefore appropriately imposed on plaintiff and/or her counsel. New York v. Solvent Chemical Co., Inc., 210 F.R.D. 462, 475 (W.D.N.Y. 2002) (awarding attorneys' fees to prevailing party on discovery motion where opponent "persisted in arguing its untenable position" which "prompted a response by [defendant], and served to needlessly prolong litigation of an issue that should not have been litigated in the first instance.").

## IV.    Conclusion

For the foregoing reasons, plaintiff's motion to compel should be denied in all respects and sanctions equal to the costs and fees incurred by defendant in opposing this motion should be imposed.

Respectfully submitted,

WIGGIN & DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

By:_____
   Lawrence Peikes (ct 07913)
   lpeikes@wiggin.com

Attorneys for Defendant
GENERAL ELECTRIC CAPITAL CORPORATION

17

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel served on this 30th day of October, 2003, by first-class U.S. Mail, postage prepaid, on:

> Michael T. Paes, Esq.
> Fern H. Paes, Esq.
> Paes & Paes, LLC
> 4 Washington Avenue
> Sandy Hook, CT  06482

> _____
> Lawrence Peikes

\2542\7\79127.1

18