UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN KOSSOFF, <br><br> Plaintiff, <br><br> VS. <br><br> GENERAL ELECTRIC CAPITAL CORPORATION. <br><br> Defendant. | Civil Action No. <br> 3:03CV00203(PCD) <br><br><br><br><br> February 12, 2004 |

## AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff, by her attorney, alleges, upon personal knowledge as to herself and upon information and belief as to others:

### NATURE OF THE ACTION

1. This is an action brought for: [1] negligent misrepresentation; [2] breach of implied covenant of good faith and fair dealing; [3] fraud, and [4] discrimination based upon age and disability in violation of Age Discrimination in Employment Act, and the Americans with Disabilities Act.

### THE PARTIES

2. Plaintiff JOAN KOSSOFF is a resident of the County of Bergen, State of New Jersey.

3. Upon information and belief, Defendant General Electric Capital Corporation, is a foreign corporation duly authorized to conduct business in the State of Connecticut, with offices located in Norwalk and Stamford, CT.

### JURISDICTION AND VENUE

4. This court has jurisdiction over this action pursuant to 28 USC 1343(a)(4) and 28 USC 1331 and 28 USC 1332 because the issues include federal civil rights questions, Defendants is a foreign corporation doing business in the State of Connecticut. Pendant jurisdiction in this matter is

appropriate because all federal and state matters are related by common facts. Diversity jurisdiction is appropriate in this matter because the amount in controversy exceeds SEVENTY FIVE THOUSAND DOLLARS ($75,000).

5. Venue is proper in this district under 42 USC 2000e et al. because the Plaintiff and or Defendant resided in the district at the time this action was commenced and the discriminatory actions occurred primarily in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. Plaintiff is a woman over the age of 40.

7. Plaintiff commenced employment for Defendant's predecessor in interest, Phoenixcor, Inc. on or about July 21, 1997 as Director of Contracts.

8. On or about April 1999, Defendant acquired Phoenixcor, Inc.

9. As a result of this acquisition, Plaintiff became employed by Defendant in the same position on or about May 17, 1999.

10. Plaintiff was diagnosed with sciatica, and Defendant was aware of this.

11. Due to this condition, Plaintiff is materially restricted in her daily life functions, having a substantial impairment in her ability to sit.

12. With or without reasonable accommodations, Plaintiff was able to perform all essential functions of her position.

13. Plaintiff was also perceived as disabled by Defendant in her employment with Defendant, as reflected in her performance appraisal.

14. On or about April of 2000, at the offices of Defendant, Plaintiff was told by her supervisor, John Edel, that she would be removed from her position, and offered her a Customer Service position, with the title of Support Services Manager or Director, and in this role, would provide only backup

2

|     |     |
| --- | --- |
|     | for the Contracts Department. |
| 15. | The reason given by Edel for this decision was that the person handling the position of Manager of Contracts needed to have formal paralegal training, as the attorney handling Phoenixcor's portfolio had left Defendant's employ. |
| 16. | At this time Edel also told Plaintiff that she was not qualified for the position of Manager of Contracts. |
| 17. | At this time Plaintiff also was also told by Edel that in her new position: |
|     | a.  She would be permitted to telecommute one day a week from her home; and |
|     | b.  Her compensation and benefits would not be affected. |
| 18. | At the time this position was offered to Plaintiff, Defendant intended it only to be a temporary position. |
| 19. | When it offered the position to Plaintiff, that Defendant presented it as a permanent position, in whole or in part, to induce her to accept the position. |
| 20. | Plaintiff accepted the new position in reliance of Edel's statements as detailed in the prior paragraphs. |
| 21. | Upon information and belief, the person hired as Manager of Contracts, Christine Wright, was a non-physically disabled female under the age of 40. |
| 22. | Plaintiff was ordered to train Wright with regard to contract products, teaching her the company computer system and information data base and similar tasks. |
| 23. | This training period of Wright by Plaintiff lasted approximately three months. |
| 24. | In or about June of 2001, Plaintiff was informed by a coworker that her duties were going to be transferred to St. Louis, Missouri. |
| 25. | When Plaintiff asked Edel what was going to happen to her employment with Defendant, she was |

told a lot of the work would still be left in Norwalk and that she had nothing to fear.

26. In or about August of 2001, Plaintiff was told by Edel that Defendant was concerned about her telecommuting on Fridays, because Jennifer Cherry (under the age of 40, not disabled) from the Human Resources Department did not have a way to know if Plaintiff was working while at home.

27. Edel had actual knowledge that not only was Plaintiff working on Fridays, but also many evenings and weekends.

28. From June of 2001, at the offices of Defendant, Plaintiff repeatedly asked Edel what the status of her position, and what was going to happen to her.

29. Although Edel and/or Defendant knew her position was temporary, until in or about October of 2001, he told her he did not know, although he and GE knew her position was to be terminated.

30. In or about September 2001, Plaintiff asked Edel when she was going to receive her annual raise.

31. In or about September 2001 Edel told Plaintiff that he had put in for her raise.

32. On or about September 2001 Wright went out on maternity leave.

33. Plaintiff was asked to take over Wright's duties, and accepted the additional duties.

34. Plaintiff then learned that:

   a. Paralegal training was not required to perform the duties of Manager of Contracts;

   b. The only changes in duties from Director of Contracts to Manager of Contracts were very minor, none of which required paralegal training; and

   c. She was able to become familiar with all the responsibilities, including what Defendant said required paralegal training in less than a month.

35. Over the next few months, Plaintiff asked Edel on numerous times for information on her raise but was not given any response, other than that he had put in for it.

36. On or about December 2001 Plaintiff was told by Edel that she would not receive any raise, because

4

she was at the top of the pay scale for customer service persons.

37. Upon information and belief, she was compared not with Managers or Directors, which was her title, given to her by Defendant, but with customer service representatives, referred to as PAR's who were all substantially younger.

38. Plaintiff performed the Manager of Contracts job satisfactorily until Wright returned in or about January of 2002.

39. Defendant failed to pay Plaintiff her VIC bonus for work performed in 2001, to which she was entitled.

40. In or about January of 2002, Plaintiff learned she would be terminated.

41. In or about February of 2002 Plaintiff received a severance package from Defendant.

42. Defendant failed to provide Plaintiff with information regarding open GE and GE Capital positions in the said packages prepared for her by its Human Resources department, in accordance with their policies and representations.

43. In or about February of 2002 Plaintiff orally made a request for a copy of her personnel records in order to conduct a job search.

44. When this was not supplied, Plaintiff made a second oral request for her personnel records in or about April of 2002.

45. When the records were supplied, it included a statement on her most recent performance appraisal that "health and commuting issues could be limiting factors in placing elsewhere."

46. Plaintiff had not noticed this phrase on the review document previously.

47. Upon information and belief, this document was not kept in a separate locked file, apart from her personnel file, even though it contained information about medical issues.

48. Defendant also maintained a separate medical file on Kossoff and other employees, but these also

5

49. were not kept in a separate locked file.

49. Prior to this date, Plaintiff did not have a reason to review her personnel file.

50. Defendant has alleged that performance appraisals are not always kept in an employee's personnel file.

51. During the course of her employment, a contract existed between plaintiff as employee and defendant as employer

52. Said contract, whether expressly written, expressly oral, or implied provided that plaintiff would not be subject to disparate treatment on the basis of any physical disability, perceived physical disability or her age, by Defendant.

53. On or about May 31, 2002, Plaintiff filed a claim of discrimination based upon age and disability with the Connecticut Commission on Human Rights and Opportunities and the U.S. Equal Employment Opportunity Commission (CHRO Case 0220427, EEOC Case 16AA201303).

54. On or about November 5, 2002 Plaintiff received a right to sue notice, attached herein as Exhibit A.

### AS AND FOR A FIRST CAUSE OF ACTION - DISCRIMINATION BASED UPON AGE, CONTRARY TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT

55. Plaintiff restates and realleges the allegations of paragraphs 1 through 54 as if fully set forth herein.

56. Pursuant to the Age Discrimination in Employment Act, it is illegal for an employer to discharge from employment or discriminate against her in the terms, conditions, or privileges of employment because of that individual's age.

57. By its actions including but not limited to its termination of Plaintiff, failure to give Plaintiff a raise, failure to consider Plaintiff for or give her the position of Manager of Contracts, and failure to give Kossoff the VIC bonus she had earned, Defendant violated the Age Discrimination in Employment Act.

58. Due to its illegal actions, Plaintiff has suffered, the stress of unemployment, loss of esteem, damage to her professional career and reputation, lost wages and fringe benefits, mental pain and suffering, and physical disorders.

### AS AND FOR A SECOND CAUSE OF ACTION - DISCRIMINATION BASED UPON DISABILITY, CONTRARY TO THE AMERICANS WITH DISABILITIES ACT

59. Plaintiff restates and realleges the allegations of paragraphs 1 through 58 as if fully set forth herein.

60. Pursuant to the Americans with Disabilities Act, it is illegal for an employer to discharge from employment or discriminate against her in the terms, conditions, or privileges of employment because of that individual's disability or perceived disability.

61. By its actions including but not limited to its termination of Plaintiff, failure to give Plaintiff a raise, failure to consider Plaintiff for or give her the position of Manager of Contracts, and failure to give her the VIC bonus she earned, Defendant violated the Americans with Disabilities Act.

62. Due to its illegal actions, Plaintiff has suffered, the stress of unemployment, loss of esteem, damage to her professional career and reputation, lost wages and fringe benefits, mental pain and suffering, and physical disorders.

### AS AND FOR A THIRD CAUSE OF ACTION - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

63. Plaintiff restates and realleges the allegations of paragraphs 1 through 62 as if fully set forth herein.

64. During the period of time when Plaintiff was employed by Defendant, Defendant had an Employee Issue Resolution Program known as Resolve.

65. Such a mandatory Program was not revealed to Plaintiff until at least a month after she had filed a letter through her attorney complaining of her treatment and asking to enter into settlement discussions, and filed her complaint with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunities Commission, despite the fact that she made

7

it known to her supervisor, Edel, that she was unhappy about the terms and conditions of her employment.

66. Plaintiff was hired prior to the institution of Resolve.

67. Plaintiff was never offered nor accepted extra consideration to bind her to utilize the Resolve program.

68. The Resolve program is not mandatory.

69. Defendant attempted to stop the Commission from performing its duties, alleging that the complaint needed to be stayed until the complaint was handled through Resolve.

70. Except for this attempt to stop the Commission from performing its duties, Defendant has never even attempted to use the Resolve process or indeed any mediation process, although Plaintiff through her attorney stated that she was willing to negotiate.

71. As such, the Resolve process is a sham and breaches the implied covenant of good faith and fair dealing inherent in every contract.

72. By its actions including but not limited to terminating Plaintiff's employment and the events leading thereto as heretofore detailed, including that Defendant failed to inform Plaintiff that her position was in fact, temporary, Defendant breached its implied duty of good faith and fair dealing with respect to performance and enforcement of its employment contract.

73. As a direct and proximate result of said breach, Plaintiff has suffered and lost wages and benefits, has been humiliated and embarrassed, has suffered mental anguish and loss of self esteem, suffered the pain of unemployment, and has been compelled to accept employment for substantially lower pay.

### AS AND FOR AN FOURTH CAUSE OF ACTION - NEGLIGENT MISREPRESENTATION

74. Plaintiff restates and realleges the allegations of paragraphs 1 through 73 as if more fully set forth

8

herein.

75. Defendant's statements that Plaintiff would not suffer any loss of wages or other benefits in the transfer from Director of Contracts to Support Services Manager were made with the intent of inducing Plaintiff to accept the transfer.

76. Defendant's statement that Plaintiff was not eligible for the Manager of Contracts position was made with the intent of inducing Plaintiff to accept a transfer to Support Services Manger.

77. Defendant's statements that Plaintiff could telecommute one day per week was made with the intent of inducing Plaintiff to accept a transfer to Support Services Manager.

78. Defendant's statements that if did not know what was going to happen to her or her position were made with the intent to stop her from seeking other employment inside or outside Defendant.

79. These statements were untrue and Defendant, at the time they were made, knew or reasonably should have known they were untrue.

80. As a direct and proximate result of Defendant's negligent misrepresentation, Plaintiff has suffered and lost wages and benefits, has been humiliated and embarrassed, has suffered mental anguish and loss of self esteem, suffered the pain of unemployment, and has been compelled to accept employment for substantially lower pay.

### AS AND FOR A FIFTH CAUSE OF ACTION - FRAUD

81. Plaintiff restates and realleges the allegations of paragraphs 1 through 80 as if more fully set forth herein.

82. Defendant's statements that Plaintiff would not suffer any loss of wages or other benefits in the transfer from Director of Contracts to Support Services Manager were made with the intent of inducing Plaintiff to accept the transfer.

83. Defendant's statement that Plaintiff was not eligible for the Manager of Contracts position was made

9

with the intent of inducing Plaintiff to accept a transfer to Support Services Manger.

84. Defendant's statements that Plaintiff could telecommute one day per week was made with the intent of inducing Plaintiff to accept a transfer to Support Services Manager.

85. Defendant's statements that it did not know what was going to happen to her were made with the intent to stop her from seeking other employment inside or outside Defendant.

86. These statements were untrue , in that, upon information and belief Defendant was in the process of planning to move all of Plaintiff's files and work out of state, at the time they were made, and Defendant knew or reasonably should have known they were untrue.

87. As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff has suffered and lost wages and benefits, has been humiliated and embarassed, has suffered mental anguish and loss of self esteem, suffered the pain of unemployment, and has been compelled to accept employment for substantially lower pay.

WHEREFORE, Plaintiff demands:

   I.   Avoidance of the transfer of Defendants' assets to the extent necessary to satisfy the named Plaintiffs' claims.

   II.  An attachment or other provisional remedy ordered by this Court against assets transferred by Defendant.

   III. In the first cause of action, monetary damages, liquidated damages costs, attorney's fees, and compensation for any negative tax consequences of any judgment for Plaintiff, together with such other and further relief as to this Court may deem just and proper;

   IV.  In the second cause of action, monetary damages, costs, attorney's fees, and compensation for any negative tax consequences of any judgment for Plaintiff, together with such other and further relief as to this Court may deem just and proper;

V.  In the third cause of action, monetary damages, reinstatement, costs, attorney's fees, punitive damages, and compensation for any negative tax consequences of any judgment for Plaintiff, together with such other and further relief as to this Court may deem just and proper,

VI. In the fourth cause of action, monetary damages, reinstatement, costs, attorney's fees, punitive damages, and compensation for any negative tax consequences of any judgment for Plaintiff, together with such other and further relief as to this Court may deem just and proper, and

VII. In the fifth cause of action, monetary damages, reinstatement, costs, attorney's fees, punitive damages, and compensation for any negative tax consequences of any judgment for Plaintiff, together with such other and further relief as to this Court may deem just and proper.

THE PLAINTIFF

By: _____
MICHAEL T. PAES, ESQ.
CT 19303
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT  06482
203-270-6441/ Juris No. 408 068

_____
FERN H. PAES, ESQ
CT 21566
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT  06482
203-270-6441/ Juris No. 408892

11

**CERTIFICATION**  This is to certify that a copy of this Amended Complaint was sent on this date, together with all exhibits, via first class mail, postage prepaid, to Attorney Lawrence Peickes, Wiggin & Dana, LLP, 400 Atlantic Street, PO Box 110325, Stamford, CT 06911-0325.

*/s/ Michael Paes*

MICHAEL PAES

# EXHIBIT
# A

State of Connecticut
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**
1057 Broad Street, Bridgeport, CT 06604   (203) 579-6246
www.state.ct.us/chro
TDD (203) 579-6246

# RELEASE OF JURISDICTION

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES, ex rel.

November 5, 2002

Joan Kosoff

CHRO NO:  0220427
EOC NO:    16AA201203

v.

G E Capital Corporation
RESPONDENT

## RELEASE OF JURISDICTION

Pursuant to the provisions of Public Act 98-245, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above numbered and captioned complaint. The complaint was dismissed pursuant to:

[x] A merit assessment review pursuant to C.G.S. 46a-83(b)
[ ] Failure to accept full relief pursuant to C.G.S. 46a-83(c)

The complainant has not requested reconsideration of the dismissal.

Complainant is hereby authorized to commence a civil action in accordance with Section 46a-100 and sections 46a-102 to 46a-104, C.G.S. inclusive, against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the Hartford-New Britain judicial district.

<u>The Complainant must bring an action in Superior Court within ninety (90) days of receipt of this release and within two (2) years of the date of filing the complaint with the Commission</u>. Upon commencing the Superior Court action, the Complainant, or his/her attorney, <u>shall serve a copy of the complaint on the Commission for the purpose of providing legal notice</u>. However, in accordance with 46a-101, of C.G.S., <u>service of the complaint on the Commission does not make it a necessary party</u>, although, the Commission may opt to intervene.

The Superior Court shall have such authority as is conferred upon it by Section 46a-104 of the C.G.S., and other laws of the State of Connecticut.

Form 500(6)

Issued 7/1/98

**CHRO**    *Safeguarding Civil Rights in Connecticut*
Affirmative Action/ Equal Opportunity Employer

The Commission will take no further action in this matter.

*[signature]*
Tanya A. Hughes, Regional Manager

<u>Nobember 5, 2002</u>
Date Issued

bh

pc:  Complainant's Attorney:  Fern H. Paes, Esq.
                              Paes & Paes, LLC
                              4 Washington Avenue
                              Sandy Hook, CT 06482

    Respondent Contact:  Jennifer Cherry, Human Resources
                         G E Capital Corporation
                         401 Merritt Seven, 2nd Floor
                         Norwalk, CT 06856

    Respondent's Attorney:  Lawrence Peikes, Esq.
                            Wiggins & Dana LLP
                            400 Atlantic Street
                            P. O. Box 110325
                            Stamford, CT 06911-0325

    Complainant: Certified Mail # 7002 0510 0001 9474 0651

Joan Kosoff
300 Winston Drive, Apartment 2604
Cliffside Park, NY 07010

Form 500(6)                          2                          Issued 7/1/98

# DISMISSAL AND NOTICE OF RIGHTS

To: Joan Kosoff
300 WINSTON DRIVE
CLIFFSIDE PA, NJ 07010

From: E.E.O.C
Boston Area Office
JFK. Federal Bldg., Rm 475
Boston, MA 02203

☐ On behalf of a person aggrieved whose identity is CONFIDENTIAL ( 29 C.F.R. 1601.7(a) )

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 16AA201303 | Anne Giantonio, Supv. | (617) 565-3200 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.
☐ Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.
☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.
☐ We cannot investigate your charge because it was not filed within the time limit required by law.
☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.
☐ While reasonable efforts were made to locate you, we were not able to do so.
☐ You had 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.
☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.
☐ Other (briefly state) _____

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission

_____
Robert L. Sanders, Area Director

February 11, 2003
(Date)

Enclosure(s)

cc: Executive Officer
GENERAL ELECTRIC CAPITOL CORP.
401 MERRITT SEVEN, 2ND FLOOR
NORWALK, CT 06856

EEOC FORM 161 (Rev 09/97)                    FILE COPY

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** — Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred more than <u>2 years (3 years)</u> before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit <u>before 7/1/98</u> -- not 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA backpay recovery period.

**ATTORNEY REPRESENTATION** — Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** — All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request <u>within 6 months</u> of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*