## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-------------------------------------------------- X
JOAN KOSSOFF,                              :
                                           :      Civil Action No. 3:03CV00203 (PCD)
                     Plaintiff,            :
                                           :
v.                                         :
                                           :
GENERAL ELECTRIC CAPITAL                   :
CORPORATION,                               :      MARCH 1, 2004
                                           :
                     Defendant.            :
-------------------------------------------------- X
```

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant General Electric Capital Corporation ("defendant" or "GE Capital") submits this memorandum of law in support of its motion for summary judgment seeking dismissal of all counts alleged in the Amended Complaint filed by plaintiff Joan Kossoff ("plaintiff") in the above-captioned matter. Because discovery has revealed there to be no genuine issue as to any material fact, summary judgment is properly entered in defendant's favor.

## I.    INTRODUCTION

This dispute arises out of plaintiff's employment by GE Capital, and more particularly her layoff as a consequence of a job consolidation and, thereafter, a restructuring of operations. Plaintiff's core claims allege age-based and/or disability-based discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., respectively.[1]    Four

---

[1] Plaintiff's age and disability discrimination claims were also asserted under analogous provisions of the Connecticut Fair Employment Practices Act ("FEPA"), Conn. Gen. Stat. §§ 46a-60, et seq. The State law claims, however, were dismissed as untimely by Order dated November 3, 2003, and have not been carried over into the Amended Complaint.

adverse employment actions are challenged by plaintiff as discriminatory: (1) the denial of a raise for 2002; (2) the alleged denial of a Variable Incentive Compensation, or VIC, bonus for the year 2001; (3) the decision not to place plaintiff in the newly created position of Contracts Manager after her job as Director of Contracts was eliminated; and (3) the termination of plaintiff's employment.

As a threshold matter, plaintiff's disability discrimination claims necessarily fail because she is not disabled within the meaning of the ADA. Plaintiff has adduced no evidence supportive of a finding that, by virtue of her sciatica, she is substantially impaired in her ability to perform a major life activity, or that she was perceived as such by defendant. Ultimately, moreover, the record is devoid of evidence suggesting that any of the employment decisions at issue were in fact rooted in disability-based, or age-based, animus: (1) defendant elected not to increase plaintiff's salary for 2002 primarily because she had already been slated for lay-off and her salary was already more than double the average for comparable positions; (2) plaintiff did in fact receive a VIC bonus for 2001, although *for her benefit* it was called something else; (3) plaintiff lacked the necessary paralegal training and experience expressly required for the job of Contracts Manager; and (4) plaintiff's position was eliminated after her functions were transferred to a GE Capital office in St. Louis as part of a reorganization.

Plaintiff likewise fails to establish a triable issue of material fact with respect to her common law claims alleging breach of the covenant of good faith and fair dealing, negligent misrepresentation and fraud. The breach of covenant claim is predicated on the refuted allegation that defendant concealed its internal dispute resolution program, known as RESOLVE, from plaintiff and then attempted to use RESOLVE as a means of derailing her administrative claim

before the Connecticut Commission on Human Rights and Opportunities ("CHRO").[2]  In fact, it is undisputed that plaintiff was made aware of RESOLVE at the time of its implementation, and simply elected not to take advantage of the program.  Finally, plaintiff's fraud and negligent misrepresentation claims cannot be sustained because there is no evidence of a false representation, or detrimental reliance.

For these reasons, as expounded upon below, defendant is entitled to summary judgment on all counts.

## I.    STATEMENT OF UNDISPUTED FACTS

Plaintiff first became associated with defendant in April 1999, when GE Capital acquired Phoenixcor, Inc. ("Phoenixcor"), a financial services company based in Norwalk where plaintiff had been employed since July 21, 1997 as Director of Contracts.  At Phoenixcor, plaintiff was generally responsible for managing the documentation/contracts department, which supported all three of Phoenixcor's lines of business, i.e., direct lending, biotech, and third-party broker lending ("TPO").  (Pltf's Dep. at pp. 64-66, 75-78).  Plaintiff had six (6) Contracts Specialists, a Team Leader, a file clerk and an administrative assistant reporting to her at Phoenixcor.  (Pltf's Dep. at pp. 71-72, 79-80).

Several months after acquiring Phoenixcor, in early 2000, GE Capital decided to split up the Phoenixcor business lines and integrate the various components into existing GE Capital operational units.  The largest component of Phoenixcor's business, the lower middle market portfolio, was merged into GE Capital's existing Commercial Asset Funding ("CAF") organization.  The work previously performed by contracts personnel assigned to the lower

---

[2] To the extent plaintiff's claim for breach of the covenant of good faith and fair dealing was predicated on the allegation that she was wrongfully discharged, this count was dismissed for failure to state a claim upon which relief may be granted.  The Court also dismissed plaintiff's breach of contract claim.

middle market line was absorbed by CAF employees across the country, resulting in the layoff of two of plaintiff's substantially younger direct reports.[3]   GE Capital, however, retained two Contracts Specialists, one to service the biotech line of business, which remained in Norwalk, and the other to support the TPO line of business, originations for which were now the responsibility of an office located in Hunt Valley, Maryland.  (Cherry Dep. at pp. 59, 68-69; Pltf's Dep. at pp. 86-88).

As a consequence of this reallocation of functions, plaintiff no longer had any direct reports, her department having essentially been disbanded.  (Pltf's Dep. at pp. 106-07).   The management-level Director of Contracts position was, therefore, eliminated.  Rather than simply terminate plaintiff's employment, however, defendant created a job for her providing customer support to the remaining Phoenixcor portfolio of loans and leases.  This position was essentially that of a Portfolio Administration Representative ("PAR") with a handful of additional responsibilities.  (Pltf's Dep. at pp. 83-86, 119-21, 130-31, 144-46; Edel Dep. at p. 33; Cherry Dep. at pp. 69-72).

Although her duties were by and large no different those performed by an ordinary PAR, plaintiff was not assigned to that job classification because her salary at the time of $77,422.00 per year was substantially greater than the average PAR salary of approximately $30,000.00. Rather than cut plaintiff's pay, defendant instead gave her the title of Support Services Manager in order to justify compensating her at a rate more than double the average salary of her peers. (Pltf's Dep. at pp. 180-81; Edel Dep. at pp. 35, 89-90, 93; Cherry Dep. at pp. 51-54, 75-77, 124).

---

[3] The two Contracts Specialists impacted by this downsizing were Michelle Martin and Dewania Lofton, both of whom were in their thirties at the time.  In the meantime, two other Contracts Specialists resigned, as did the Team Leader, and the file clerk. (Pltf's Dep. at pp. 72-75).

4

Despite plaintiff's elevated compensation level, in September 2000, shortly after plaintiff assumed the position of Support Services Manager, defendant awarded her a roughly 5% merit increase pushing her annual salary over $80,000.00. (Pltf's Dep. at pp. 67-68, 190); Cherry Dep. at pp. 53-54, 105-06). Plaintiff also received a VIC bonus for the year 2000 of approximately $7,000.00, which plaintiff found satisfactory. (Pltf's. Dep. at pp. 108-09).

Meanwhile, in April 2000, Al Kolb, an in-house attorney responsible for providing legal review of Phoenixcor's deal documentation, resigned. (Pltf's Dep. at pp. 83-84, 112; Edel Dep. at p. 18). Defendant did not hire a lawyer to replace Mr. Kolb, but instead coupled certain of Mr. Kolb's duties with what remained of plaintiff's former contracts management responsibilities into a single Contracts Manager job. One of the principal duties associated with this newly created position was to negotiate the terms of individual loan and lease agreements directly with customers or their legal representatives. (Pltf's Dep. at pp. 113-14, 137-38; Edel Dep. at pp. 18-23, 81; Wright Dep. at pp. 32-36, 46-52). Paralegal experience was therefore deemed an essential qualification, and the job posting so stated. (Edel Dep. at pp. 102-12, Ex. 2E; Cherry Dep. at pp. 61-62, 65-66). Plaintiff concedes she did not satisfy this requirement. (Pltf's Dep. at pp. 15-16). Nor did plaintiff have practical experience negotiating legal documents. (Pltf's Dep. at pp. 131-33; Edel Dep. at pp. 55-57, 97-98, 106-08).

After interviewing several potential candidates, all of whom had worked as a paralegal (Edel Dep. at p. 59), GE Capital hired Christine Wright to fill the role of Contracts Manager. Ms. Wright had a Bachelor of Arts degree in legal studies and had worked for over thirteen years as a paralegal. In addition, through her employment by MetLife Capital Corporation, and elsewhere, Ms. Wright had experience negotiating the terms of loan and lease agreements similar in kind to those she would be dealing with at GE Capital. (Wright Dep. at pp. 8-17, 22-29; Edel Dep. at pp.

5

28-32). Ms. Wright commenced employment on July 31, 2000. At Mr. Edel's request, plaintiff helped to cross-train Ms. Wright on defendant's computer systems and forms. (Pltf's Dep. at pp. 115-16; Wright Dep. at pp. 53-55; Edel Dep. at pp. 35-38).

In early 2001, GE Capital merged the CAF organization into the Small Business Finance unit, headquartered in St. Louis, Missouri, which maintains its own centralized support functions. As a result, other than plaintiff, all of the employees responsible for servicing the CAF portfolio were stationed in St. Louis. Ms. Cherry inquired of William Duffek, Senior Vice President & Risk Manager for CEF's Small Business Finance unit, as to whether he wished to maintain a customer support resource in Norwalk and he declined. Mr. Duffek's decision not to retain plaintiff was needs driven and had nothing to with plaintiff herself; indeed, Mr. Duffek never met plaintiff, nor had he ever worked with her. Plaintiff's duties were ultimately assumed by existing personnel in St. Louis already handling the same or similar customer service functions. (Duffek Aff. ¶¶ 3-4; Cherry Dep. at pp. 85-86; Edel Dep. at pp. 42-43; Pltf's Dep. at pp. 48-49, 81-82, 121-22, 180, 184-85, 229-30).

Thereafter, starting August 30, 2001, Ms. Wright went out on a maternity leave of absence. With plaintiff's duties dwindling as the remaining Phoenixcor portfolio was being transitioned to St. Louis, defendant assigned plaintiff responsibility for handling certain of Ms. Wright's duties. Plaintiff was not asked to assume responsibility for negotiating contract terms nor did she take on Ms. Wright's supervisory functions. (Edel Dep. at pp. 50-51, 100; Cherry Dep. at pp. 62-66). Rather, Ms. Wright directed plaintiff to seek assistance from in-house counsel with respect to all but the most perfunctory of customer proposals for altering defendant's form contracts. (Pltf's Dep. at pp. 122-25; Wright Dep. at pp. 63-68, 80). By assigning plaintiff to

cover for Ms. Wright during her maternity leave, defendant was able to extend plaintiff's tenure until at least year-end. (Pltf's Dep. at pp. 121-22; Edel Dep. at pp. 42-44).

Ms. Wright returned from her maternity leave in late December 2001, and reassumed her position as Contracts Manager. As a result, plaintiff was left without a defined role. On February 1, 2002, defendant issued plaintiff a layoff notice; her termination became effective February 2, 2002. (Pltf's Dep. at pp. 163-64, Exh. 7). Coincident with her layoff, plaintiff also received a $5,000.00 bonus payment. (Pltf's Dep. at pp. 109-10, 214-15). In order to expedite processing, and avoid administrative hassles as well as management scrutiny, Ms. Cherry classified the payment as a stay bonus, even though it was, in fact, a VIC bonus. (Pltf's Dep. at p. 215; Cherry Dep. at pp. 128, 131-32).

## III.   ARGUMENT

### A.   Summary Judgment Standard

"A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. 'A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'' In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences drawn against the moving party. Summary judgment is proper when reasonable minds could not differ as to the import of evidence. 'Conclusory allegations will not suffice to create a genuine issue.'" Barton v. City of Bristol, 294 F. Supp. 2d 184, 193 (D. Conn. 2003)(Dorsey, J.)(Citations omitted). Likewise, "[a] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" Lillbask ex rel. Mauclaire v. Sergi, 193 F. Supp. 2d 503, 508 (D. Conn. 2002)(Dorsey, J.)(Citation omitted). Because

plaintiff's claims rest entirely on "mere speculation or conjecture" this action is ripe for disposition on summary judgment.

**B.    Statutory Claims**

Summary judgment is properly entered (i) as to plaintiff's ADA claim because she does not suffer from an ADA-covered "disability," and thus falls outside the class of persons entitled to statutory protection; and (ii) as to both her ADA and ADEA claims because there is no record evidence supportive of a rational finding that any of the challenged decisions were rooted in disability-based or age-based animus.

**1.    Non-Existence of an ADA-Covered "Disability"**

"The ADA prohibits discrimination against any 'qualified individual with a disability because of the disability of such individual in regard to,' *inter alia*, 'discharge of employees.' To make out a *prima facie* case under the ADA, a plaintiff must establish that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."

Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001)(Citations omitted).

**(a)    Actual Disability**

Under the ADA, "[t]he term 'disability' means, with respect to an individual – (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "[T]hese terms need to be interpreted strictly to create a demanding standard for qualifying as disabled ..." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002). Plaintiff cannot meet this "demanding standard" -- although plaintiff apparently suffers from sciatica, an

impairment, and claims this condition compromises her ability to sit (which we assume is a major life activity), as a matter of law she is not substantially limited.

"To qualify for ADA protections, a person's 'impairment' must 'substantially limit' a 'major life activit[y].' Major life activities may include 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning,' and ... 'working.' An activity is 'substantially limited' when an individual cannot perform the activity that an average person in the general population could perform or faces significant restrictions in the 'condition, manner, or duration under which the individual can ... perform [the] activity.'" EEOC v. J.B. Hunt Transport, Inc., 321 F.3d 69, 74-75 (2d Cir. 2003)(Citations omitted). "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of medical diagnosis of an impairment. Instead, the ADA requires 'those claiming the Act's protection ... to prove a disability by offering evidence that the limitation caused by their impairment in terms of their own experience ... is substantial.'" Toyota Motor Mfg., 534 U.S. at 198, 122 S. Ct. at 691-92 (Citation and brackets omitted). In other words, a "mere difference" in "an individual's manner of performing a major life activity" is not enough to invoke the ADA's protections. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565, 119 S. Ct. 2162, 2168, 194 L. Ed. 2d 518 (1999).

As noted, plaintiff claims to be "materially restricted in her daily life functions, having a substantial impairment in her ability to sit." (Amended Complaint ¶ 11). This conclusory allegation was not borne out in discovery. Plaintiff testified at deposition that she suffers from sciatica, which causes her pain and discomfort when sitting for extended periods, such as during a long drive.[4] So long as she can stretch from time to time, however, plaintiff is largely unaffected

---

[4] As an accommodation, defendant permitted plaintiff to work flexible hours and thereby avoid commuting from New Jersey to Norwalk during rush hour. (Pltf's Dep. at pp. 93-98; Cherry Dep. at 35-36).

by her condition. Plaintiff concedes, moreover, that she has no trouble performing the day-to-day functions of life, and is not at all impeded in her ability to execute any tasks associated with her current job or her job at GE Capital. (Pltf's Dep. at pp. 96-102, 171-73).

The Second Circuit has made it quite clear that an employee's inability to "sit 'for long periods of time' at his desk without getting up and stretching" is not substantially impairing. Colwell v. Suffolk County Police Dept., 158 F.3d 635, 644 (2d Cir. 1998). Accord Piascyk v. City of New Haven, 64 F. Supp. 2d 19, 29 (D. Conn. 1999)("plaintiff's testimony that when he returned to work, he could not sit for 'long periods of time,' sometimes not longer than fifteen or twenty minutes, at other times not longer than two hours ... is too vague to establish a substantial limitation.")(Citations omitted), aff'd mem., 216 F.3d 1072 (2d Cir. 2000). As a matter of law, therefore, plaintiff's somewhat "restricted ability to sit does not amount to a substantial limitation in the major life activity of sitting." Banks v. Potter, 253 F. Supp. 2d 335, 348 (D. Conn. 2003)(Citations omitted).

It being undisputed that plaintiff is *not* substantially impaired in her ability to perform a major life activity, summary judgment is properly entered in defendant's favor on that aspect of plaintiff's ADA claim alleging discrimination on the basis of an actual disability. Id.

### (b)    "Regarded As" Disabled

"Under 42 U.S.C. § 12102(2)(C) ('regarded as disabled'), the decisive issue is the employer's *perception* of his or her employee's alleged impairment. [Plaintiff] must show not only that [defendant] 'regarded [her] as somehow disabled,' but that [defendant] 'regarded [her] as disabled *within the meaning of the ADA.*'" Giordano, 274 F.3d at 748 (Emphasis in original)(Citations omitted). Thus, for one to be "regarded as" disabled under the ADA the employer "must believe either that one has a substantially limiting impairment that one does not

have or that one has a substantially limiting impairment, when, in fact, the impairment is not so limiting." Sutton v. United Airlines, Inc., 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).

As support for her "regarded as" disabled claim, plaintiff cites (i) Mr. Edel's alleged suggestion that she work from home one day per week in order to reduce her commuting burden (Pltf's Dep. at pp. 175-76); and (ii) a notation made by Mr. Edel in plaintiff's performance appraisal dated March 8, 2000 (almost two years prior to her layoff), to the effect that: "Health and commuting issues could be limiting factors in placing elsewhere." (Pltf's Dep. at p. 173, Exh. 4). Plaintiff's proffer, however, establishes nothing more than Mr. Edel's awareness that "[h]ealth issues" made it uncomfortable for plaintiff to be in a car for extended periods of time. And, as the Second Circuit has made quite plain, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Reeves v. Johnson Controls World Services, Inc., 140 F.3d 144, 153 (2d Cir. 1998)(Citation and internal quotation marks omitted). Accord MacGovern v. Hamilton Sunstrand Corp., 170 F. Supp. 2d 301, 307 n.8 (D. Conn. 2001).

As Mr. Edel explained, moreover, his reference in the March 2000 evaluation to plaintiff's "health and commuting issues" was nothing more than an expression of a view, *shared by plaintiff*, that transferring plaintiff to CEF's headquarters in Danbury (the logical situs of any alternative employment opportunities) was untenable because it would extend her drive time. (Edel Dep. at pp. 71-72). Plaintiff acknowledged speaking to Mr. Edel about the possibility of a transfer to Danbury, and admitted she objected to the idea, testifying that: "To drive an hour and a half to Danbury, that would be too much of a commute. I would have to move." (Pltf's Dep. at

pp. 156-57). Under the circumstances, "it would be speculation to infer from any interest [Mr. Edel] might have expressed [about plaintiff's commuting burden] that he was inappropriately fixated on her condition." Cameron v. Community Aid for Retarded Children, Inc., 335 F.3d 60, 65 (2d Cir. 2003).

Mr. Edel's mere recognition of plaintiff's condition as a limitation on her ability to sit in a car for extended periods does not translate into a belief that plaintiff is substantially limited in her ability to sit, or perform any other major life activity. Certainly, a perception that plaintiff could not comfortably commute to an office located as far away from her New Jersey residence as Danbury does not equate to a perception that plaintiff is incapable of performing a broad class of jobs, so as to be substantially impaired in the major life activity of working. Munck v. New Haven Savings Bank, 251 F. Supp. 2d 1078, 1084-85 (D. Conn. 2003)(granting summary judgment with respect to "regarded as" disabled claim because "[t]here is no evidence in the record that suggests that the defendants perceived the plaintiff as unable to work in a broad class of jobs.")(Citation omitted).

Because there is absolutely nothing in the record supportive of a finding that defendant "believed, however erroneously, that [plaintiff] suffered from an 'impairment' that, if it truly existed, would be covered under the statutes ...," Francis v. City of Meriden, 129 F.3d 281, 285 (2d Cir. 1997), plaintiff's "regarded as" disabled claim is unsustainable and properly dismissed on summary judgment.

### 2.    No Evidence of Intentional Discrimination

Courts "analyze ADEA discrimination ... claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff must first present a prima facie case of discrimination. If the plaintiff does this,

discriminatory animus is presumed and the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the employment decision. If defendant does so, the plaintiff must show that the articulated non-discriminatory reason for defendant's action is in fact a pretext for discrimination." Jetter v. Knothe Corp., 324 F.3d 73, 75-76 (2d Cir. 2003)(Citations omitted). This same methodology likewise governs the analysis of plaintiff's ADA claims. Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002); Wright-Kahn v. People's Bank, 274 F. Supp. 2d 205, 212-13 (D. Conn. 2003).

To meet her "burden at the outset to prove 'by the preponderance of the evidence a prima facie case of discrimination' ... plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. New York City Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002)(Citations omitted). See also Cameron, 335 F.3d at 63 (articulating same basic prima facie proof requirements in ADA case). If plaintiff is capable of proving a prima facie case of discrimination with respect to any of the challenged employment decisions, defendant would then assume the burden "to produce an explanation 'which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action.'" Wright-Khan, 274 F. Supp. 2d at 215 (Emphasis in original), quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

"[T]he only relevant question before the Court ... after [defendant] present[s] a neutral explanation for its decision[s] ... [is] whether there [exists] sufficient evidence from which a jury could conclude that [defendant] did make its employment decision[s] based on [plaintiff's age or her alleged] status as disabled despite [defendant's] proffered explanation." Raytheon Co. v.

Hernandez, __ U.S. __, 124 S. Ct. 513, 520, 157 L. Ed. 2d 357 (2003). Consequently, "to defeat summary judgment, plaintiff must present evidence from which a fact-finder could reasonably conclude that the employer's reasons were pretextual and the real reason was discrimination. Although direct evidence of discrimination is not necessary, an employer is entitled to judgment as a matter of law if the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination has occurred." Choate v. Transport Logistics Corp., 234 F. Supp. 2d 125, 130 (D. Conn. 2002)(Citations, internal quotation marks and brackets omitted).

"Plaintiff is entitled to rely on the evidence comprising [her] prima facie case as evidence of pretext ... [but she] is not entitled to survive summary judgment simply by setting forth a prima facie case. At this stage

> the Court must examine the entire record to determine if Plaintiff meets [her] ultimate burden of persuading the fact-finder of a central element of a ... claim; namely that Defendant intentionally discriminated against [her] on the basis of [her age or alleged disability] ...  Whether summary judgment is appropriate here depends upon the strength of Plaintiff's prima facie case, the probative value of the proof that Defendant's explanation is false, and any other evidence that supports Defendant's case.

Here, after considering the strength of Plaintiff's prima facie case, Defendant's explanation, and any other evidence supporting Defendant's case, Defendant is entitled to summary judgment, as the record does not support an inference that Plaintiff was intentionally discriminated against on the basis of [age or an alleged disability]." Atterberry v. IKON Office Solutions, Inc., 2003 WL 22937719, at *9 (D. Conn. Dec. 10, 2003)(Dorsey, J.)(Citations, internal quotation marks and brackets omitted).

(a)    **Contracts Manager Position**

Plaintiff claims she was denied the Contracts Manager position, ultimately filled by Christine Wright, on account of her age or alleged disability. It is undisputed, however, that plaintiff lacked the paralegal training and experience that was an express requirement for the job. This failure to "establish basic eligibility for the position at issue" necessarily precludes plaintiff from making out a prima facie case of discrimination. Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 92 (2d Cir. 2001).

It is axiomatic "that the prima facie case in an employment discrimination suit includes a showing that the plaintiff was 'qualified' for the position. [B]eing 'qualified' refers to the criteria the employer has specified for the position." Thornley v. Penton Publishing, Inc., 104 F.3d 26, 29 (2d Cir. 1997)(Footnote omitted). "Consistent with this understanding, courts have afforded employers considerable latitude in selecting employment qualifications." Jackson v. University of New Haven, 228 F. Supp. 2d 156, 161 (D. Conn. 2002). See also Bailey v. City of New York, 2003 WL 21031972, at *8 (S.D.N.Y. May 2, 2003)("Applying the prima facie requirement, it would appear that Bailey has not met the requirement that he be 'qualified' for the position at issue since an employer is entitled to determine the qualification for a position.")(Citation omitted).

Plaintiff does not, and cannot, claim to meet "the criteria the employer has specified for the position" of Contracts Manager. Rather, plaintiff seemingly focuses her attack on whether a paralegal background is truly necessary to fulfill the duties associated with the position in question. Plaintiff's strategy stands in direct contravention of the Second Circuit's mandate that "[a] plaintiff is not entitled to get his or her case before a jury by contending that the demands of the employer were not reasonably related to the performance of the job." Thornley, 104 F.3d at