29. Accord Gonzalez v. State of Connecticut, 151 F. Supp. 2d 174, 181 (D. Conn. 2001). "That [plaintiff] disagreed with their wisdom does not make them illegitimate." Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 32 (1st Cir. 2003). "Absent a showing by the plaintiff that the employer's demands were made in bad faith, an employer who is sued on allegations of age discrimination is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury." Thornley, 104 F.3d at 29 (Citations omitted).

"Here there is no claim, and [plaintiff] has put forth no evidence, that the defendant[] failed to apply the prior [paralegal] experience requirement uniformly ..." Jackson, 228 F. Supp. 2d at 162. To the contrary, it is undisputed that every applicant considered for the position was a paralegal by training, including of course Ms. Wright. (Edel Dep. at p. 59). Indeed, plaintiff admits she has no basis for believing defendant erected the requirement of paralegal experience as a barrier to her candidacy. (Pltf's Dep. at p. 115). Absent such a proffer, plaintiff's claim cannot survive summary judgment. Cf. Seay v. Tennessee Valley Authority, 339 F.3d 454, 466 (6th Cir. 2003)("When neither the plaintiff nor the selectee meets all the stated criteria, the qualified prong is satisfied for summary judgment purposes, because a genuine issue of material fact arises as to whether the posted standards actually dictated whether Plaintiff was qualified.")(Footnote omitted).

"Employers, not employees or courts, are entitled to define the core qualifications for a position, so long as the criteria utilized by the company are of a nondiscriminatory nature." Cerutti v. BASF Corp., 349 F.3d 1055, 1064 (7th Cir. 2003). Because there is no evidence from which a reasonable jury could infer that defendant set the requirements for the job of Contracts Manager in bad faith, or applied the disqualifying standard in a selective fashion, defendant is "entitled to the deference in selecting hiring criteria recognized in Thornley." Jackson, 228 F.

Supp. 2d at 162. Summary judgment is therefore properly entered in defendant's favor as to plaintiff's claim alleging discrimination in connection with Ms. Wright's hiring.[5]

### (b) Denial of a Raise for 2002

It is undisputed that plaintiff's 2001 salary was better than double that of the average PAR. (Cherry Dep. at p. 124). Plaintiff avers, however, that for salary planning purposes she should have been compared to managers (even though she had no management responsibilities),[6] rather than PAR's (Amended Complaint ¶ 37), and claims that by failing to do so, and denying her a raise for 2002, defendant engaged in unlawful age-based or disability-based discrimination.

Jennifer Cherry cited two perfectly legitimate, and logical, business reasons why she rejected Mr. Edel's recommendation that plaintiff receive a raise for 2002: "we knew her position was being eliminated and that possibly the fact that her compensation was so high may have also come into play." (Cherry Dep. at pp. 55-56). (See also Cherry Dep. at p. 51; Edel Dep. at pp. 13-16). Plaintiff can point to literally no evidence suggesting Ms. Cherry's explanation is a mere pretext masking an underlying discriminatory motivation. Notably, plaintiff was unable to identify a single GE Capital manager -- younger or not, disabled or not -- employed in a similar role who would even be an appropriate comparator (Pltf's Dep. at p. 189), thereby conceding she lacks probative evidence of disparate treatment. Padilla v. Harris, 285 F. Supp. 2d 263, 270-71 (D. Conn. 2003)(rejecting discrimination claim where plaintiff failed to prove he received less

---

[5] Even were plaintiff qualified for the job in question (which she was not), and even had she submitted an application in response to the posting (which she did not), the mere fact that a younger, non-disabled qualified candidate was hired is not alone proof of unlawful age-based or disability-based discrimination. To prove her claim alleging discriminatory denial of the Contracts Manager job, plaintiff's "credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [her] for the job in question.'" Byrnie v. Town of Cromwell, Bd. of Education, 243 F.3d 93, 103 (2d Cir. 2001)(Citations omitted). Plaintiff does not allege that her qualifications were vastly superior to Ms. Wright's, much less can she prove it.

[6] (Cherry Dep. at pp. 53-54)(testifying that plaintiff was not compared with managers for salary planning purposes because "[s]he didn't manage any people ..." and therefore was not considered a manager).

17

favorable treatment than similarly situated employee outside the protected class); Hogan v. State of Connecticut Judicial Branch, 220 F. Supp. 2d 111, 119-20 (D. Conn. 2002)(same), aff'd mem., 64 Fed. Appx. 256, 2003 WL 1894590 (2d Cir. April 17, 2003).

Indeed, moreover, in the immediately preceding years (when plaintiff was only slightly younger and was suffering from the same alleged disability) Ms. Cherry had acted favorably on Mr. Edel's recommendations that plaintiff's salary be increased; this despite the fact that, as of mid-2000, plaintiff no longer had any management responsibilities. (Pltf's Dep. at pp. 67, 190; Cherry Dep. at pp. 53-54, 105-06). Ms. Cherry also decided to retain plaintiff and, along with Mr. Edel, constructed a non-management job for her out of whole cloth rather than issue her a layoff notice when her management-level position was eliminated in 2000. (Cherry Dep. at 70-71; Edel Dep. at 33, 71-72). This "does not support and indeed contradicts an inference of discrimination. Here, an invidious motivation would be inconsistent with [Ms. Cherry's] earlier affinity towards Plaintiff." Atterberry, at *8, citing Grady v. Affiliated Central, Inc., 130 F. 3d 553, 560 (2d Cir. 1997).

Whether plaintiff agrees with defendant's reasoning or not is immaterial, the critical fact being she has adduced no evidence tending to suggest the challenged decision was other than genuine. Flaherty v. Metromail Corp., 293 F. Supp. 2d 355, 363 (S.D.N.Y. 2003)("'it is not the function of a fact-finder to second guess business decisions ... [unless] the employer's 'business decision' was so lacking in merit as to call into question its genuineness.'"), quoting Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988). Because defendant's legitimate non-discriminatory explanation for the decision not to increase plaintiff's salary in 2002 stands unrebutted, summary judgment is properly entered as to plaintiff's claim alleging salary-based discrimination.

### (c)    Alleged Denial of a VIC Bonus for 2001

It is undisputed that coincident with the issuance of plaintiff's layoff notice, defendant awarded plaintiff additional compensation in the amount of $5000.00. Plaintiff characterizes this as a "stay bonus," not a VIC bonus, and claims the reason she received no VIC bonus was her age and/or alleged disability. This asseveration is unsupported by the record developed during discovery.

The fundamental objective of a "stay bonus," or "retention bonus," is to incentivize an employee to remain with his or her employer for a certain period of time, typically for transitional purposes. Consequently, a "stay bonus" is, by nature, necessarily negotiated in advance so the employee is fully aware of the reward that awaits him or her if he or she stays with the employer for the desired duration. Here, it is undisputed that no such negotiation took place, and plaintiff was never told she would receive a $5000.00 payment if she remained in defendant's employ until February 2002. (Cherry Dep. at p. 128). *A fortiori*, this payment cannot be fairly cast as a "stay bonus." See Abbad v. Amman, 285 F. Supp. 2d 411, 419 (S.D.N.Y. 2003)(characterizing "bonus compensation [ ] offered to these defendants to induce them to stay with the company and complete a restructuring" as "restructuring or retention bonuses")(Citations omitted).

Jennifer Cherry's explanation that, for plaintiff's benefit, the $5,000.00 payment was identified as a "stay bonus," even though it was actually a VIC bonus, makes perfect sense: "It was simply called that [i.e., a stay bonus] so that I could give it to her earlier and outside of the VIC process, which I explained to her during our exit meeting.... We processed her VIC bonus as a stay bonus, so we could give it to her earlier and because she hadn't set any objectives for the year, and essentially in the last four months of the year, she will be acting in a non-VIC eligible capacity." (Cherry Dep. at pp. 128, 131-32). (See also Cherry Dep. at p. 148)(**Q**: So, did Ms.

Kossoff receive her VIC check when all CEF VIC checks were processed? A: No. She received her VIC check earlier."). As a matter of undisputed fact, therefore, plaintiff was awarded a VIC bonus for 2001 in the amount of $5000.00.

To be sure, plaintiff offers no evidence supportive of a finding that she was looked upon unfavorably in the VIC process because of her age or alleged disability. As with all of her claims, plaintiff purports to prove discrimination by merely establishing that she was a member of a protected class and suffered an adverse employment action. "However, Plaintiff is not entitled to survive summary judgment simply by setting forth a prima facie case." Atterberry, at *9 (Citations omitted). Missing from plaintiff's proffer is the requisite evidence of a linkage between her alleged protected status and the challenged decision. Jetter, 324 F.3d at 76 (even though plaintiff established a prima facie case of age discrimination, summary judgment was properly entered where "Plaintiff failed to adduce sufficient evidence from which a rational fact finder could find that he had been fired because of his age. Indeed, Plaintiff provided virtually no proof of age discrimination.")(Citation omitted); Anthony v. City of New York, 339 F.3d 129, 141 (2d Cir. 2003)("However one might interpret Officer Migliaro's comment [that Anthony 'seemed to be needing of assistance because she appeared to be slow'], it is not enough to defeat summary judgment on the claim that discriminatory intent was a motivating factor in Sergeant Mendez's decision to order Officer's Collegio and Migliaro to seize Anthony.")(Footnote omitted).

The undisputed facts show that plaintiff did receive a VIC bonus for 2001, and there exists no record evidence from which an inference can be drawn that the VIC process was somehow marred by age-based or disability-based discrimination. Consequently, summary judgment is

properly entered in defendant's favor as to plaintiff's claim alleging discriminatory denial of a 2001 VIC award.

**(d)** **Termination**

As this Court recently observed: "A plaintiff may not survive a motion for summary judgment by merely suggesting that the defendant's proffered reasons for discharge are false. Even if defendant's reasons are rejected entirely, plaintiff must produce evidence from which a reasonable fact finder could infer that a discriminatory motive played a role in her discharge." Sodersberg v. Gunther Int'l, Ltd., 2004 WL 57380, at *5 (D. Conn. Jan. 7, 2004)(Dorsey, J.)(Citations omitted). Plaintiff has produced no evidence that defendant's stated reasons for her layoff were false, much less can she offer the requisite "proof that a discriminatory motive played a role in her discharge." Id.

To reiterate, defendant eliminated plaintiff's position in connection with a reorganization in 2001 that resulted in her duties being assumed by existing GE Capital personnel in St. Louis. The sequence of events was cogently described by Ms. Cherry:

> ... There was a reallocation or restructuring between the COR, CAL, and small business groups.
>
> Q: And what was the restructuring?
> A: They took the CAL organization and merged it with the small business administration group that was based out of St. Louis.
>
> ........
>
> Q: Was Ms. Kossoff affected as a result of this restructuring?
> A: Yes, she was.
>
> Q: How was her employment with GE affected?
> A: The servicing of the portfolio, well, the Phoenixcor portfolio, the existing portfolio, the decision was made that it was going to be serviced out of St. Louis where the rest of the CAF organization was being merged into. And the St. Louis operations manager determined that it didn't make sense to have one loan []

21

>   employee sitting outside of St. Louis when he had adequate capacity to absorb the work in his existing organization.

(Cherry Dep. at pp. 85-86).

This wholly legitimate reason for plaintiff's termination is not some pretext for age or disability-based discrimination. Indeed, Bill Duffek, the manager who rejected the idea of retaining plaintiff as a remote customer support resource in Norwalk, thereby sealing plaintiff's fate, had never worked with plaintiff, or even met her for that matter, and was completely oblivious to her age and medical condition. (Duffek Aff. ¶ 5). Where, as here, the effective decision-maker is unaware of the plaintiff's protected characteristics, the requisite link between those protected characteristics and the employment decision alleged to be discriminatory is necessarily absent. Clark County School Dist. v. Breeden, 532 U.S. 268, 272-73, 121 S. Ct. 1508, 1510-11, 149 L. Ed. 2d 509 (2001)(where manager was unaware of plaintiff's lawsuit or right-to-sue letter at time she first contemplated transfer, plaintiff could not show causal connection between protected activity and adverse employment action); Hoffman v. Worldcom Communications, Inc., 178 F. Supp. 2d 152, 156 (D. Conn. 2001)(granting summary judgment in ADA wrongful discharge case upon determination "as a matter of law that MCI did not have notice of Hoffman's disability."). See also Mitchell v. Shane, 350 F.3d 39, 49 (2d Cir. 2003)(in Fair Housing Act case, "The plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination; without some evidence of knowledge of the prospective buyers' racial identity, it is impossible to infer such motivation.")(Citations omitted).

There is, moreover, nothing about the circumstances of plaintiff's layoff that suggests the taint of an underlying unlawful motivation. "The ADA is specifically meant to ensure that 'truly disabled, but genuinely capable, individuals will not face discrimination in employment because

22

of stereotypes about the insurmountability of their handicaps.'" Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 113 (2d Cir. 2001)(Citation omitted). Likewise with the ADEA: "The statutory objects were 'to promote employment of older persons based on their ability rather than age; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment.'" General Dynamics Land Systems, Inc. v. Cline, 504 U.S. __, __ S. Ct. __, 2004 WL 329956, at *5 (Feb. 24, 2004)(Citation omitted). Thus, "the very essence of age discrimination [is] for an older employee to be fired because the employer believes that productivity and competence decline with old age." Hazer Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).

Here, the record is wholly devoid of evidence that plaintiff's termination was somehow rooted in negative stereotypical assumptions about disabled or older employees. If anything, the record shows just the opposite. Most notably, less than two (2) years earlier, defendant literally manufactured a position for plaintiff rather than terminate her employment in conjunction with the elimination of her position as Director of Contracts. Furthermore, when asked at deposition to explain the basis for her allegation that the challenged employment decisions were discriminatory, plaintiff did not even mention her layoff. Rather, plaintiff cited Ms. Wright's comparative youth and her own assumption that because Mr. Edel allowed her to work flexible hours and telecommute one day per week he must have considered her to be disabled. (Pltf's Dep. at pp. 194-97). None of this bears any connection to the elimination of plaintiff's position, much less does it allow for an inference of discrimination.

Ultimately, "summary judgment is appropriate in the case at bar, for plaintiff has presented no evidence upon which a reasonable trier of fact could base the conclusion that age [or an alleged disability] was a determinative factor in defendants' decision to fire [her]." Schnabel

v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000). Rather, "plaintiff offers only 'unsupported assertions,' 'conjecture or surmise,' [and] conclusory statements 'to support an essential element of her case." Soderberg, at *4 (Citation omitted). Plaintiff's "conclusory belief, based on conjecture and surmise, that she was terminated because of her age [or alleged disability] is insufficient to survive summary judgment. '[A] jury cannot infer discrimination from thin air.'" Id. at *5 (Citation omitted.) See also Slattery, 248 F.3d at 94 (affirming summary judgment in ADEA wrongful discharge case where "the evidence presented by Slattery is not enough to permit a jury to find that the real reason he was fired was his age."); James v. New York Racing Ass'n., 233 F.3d 149, 157 (2d Cir. 2000)("Because James's evidence was insufficient to permit a reasonable trier of fact to find that age discrimination was the reason for his discharge from NYRA, we must affirm the grant of summary judgment in defendant's favor.").

### C. Common Law Claims

Plaintiff's remaining common law claims allege breach of the covenant of good faith and fair dealing, negligent misrepresentation, and fraud. None of these claims raise a triable issue of material fact.

#### 1. Breach of the Covenant of Good Faith and Fair Dealing

"The two principles that govern [this] claim are undisputed. 'Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.' 'Bad faith means more than mere negligence; it involves a dishonest purpose.'" Gupta v. New Britain General Hospital, 239 Conn. 574, 598, 687 A.2d 111 (1996)(Citations omitted). In other words, "[b]ad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as

to one's rights or duties, but by some interested or sinister motive." <u>Cadle Co. v. Ginsberg</u>, 70 Conn. App. 748, 768, 802 A.2d 137 (2002)(Citations and internal quotation marks omitted).

"In essence, Plaintiff argues that Defendant failed to invoke Resolve when it might have been of some benefit to her, i.e. prior [to] the administrative proceedings, and instead waited to invoke it as an 'offensive weapon' to deprive her of whatever benefit may have been and attempting to prevent her [CHRO] claim from proceeding." (Ruling on Motion to Dismiss, at p. 11). The undisputed facts reveal, however, that at no time prior to her CHRO filing did plaintiff ever register a complaint or concern about her treatment, so as to put defendant on notice of a potential RESOLVE claim. (Pltf's Dep. at pp. 51-54, 138-39, 165-67; Cherry Dep. at pp. 88-89). Significantly, moreover, it is undisputed that in May 2000, plaintiff (like all other employees) received an e-mail notifying her that defendant had instituted the RESOLVE program; a copy of the RESOLVE handbook was attached to the e-mail. (Pltf's Dep. at pp. 211-13, Exh. 10; Cherry Dep. at pp. 138-39, Exh. 8C). Having received notice that RESOLVE was an available means of pressing any grievance she may have had, it was plaintiff's burden to initiate the process. Her failure to do so does not somehow translate into bad faith on defendant's part.

Plaintiff has failed to substantiate her contention that defendant concealed the RESOLVE program from her and lay in the weeds awaiting an opportunity to spring RESOLVE on her as a means of derailing her CHRO claim. The breach of covenant claim should therefore be dismissed for want of proof that defendant acted in bad faith.

2.   **Negligent Misrepresentation/Fraud**

Plaintiff attributes three allegedly fraudulent statements to Mr. Edel: (i) that plaintiff was not qualified for the position of Contracts Manager because she lacked paralegal experience; (ii) that in her new position as Support Services Manager plaintiff would be permitted to telecommute one day per week; and (iii) that plaintiff's compensation would not be adversely affected by her reassignment to a non-management role. Negligent misrepresentation and fraud claims share the common proof requirements of, *inter alia*, a false representation and justifiable reliance. Visconti v. Pepper Partners Ltd. Partnership, 77 Conn. App. 675, 682-83, 825 A.2d 210 (2003). Plaintiff has failed to establish the existence of a triable issue of material fact as to either of these fundamental elements of proof.

(a)   **Alleged Representation Re: Qualifications for Contracts Manager**

Mr. Edel does not deny telling plaintiff she lacked the qualifications required by defendant for the newly created position of Contracts Manager. (Edel Dep. at p. 112). It is, however, undisputed that (i) paralegal experience was in fact a stated requirement of the job; (ii) plaintiff lacked experience as a paralegal; (iii) all of the candidates considered for the job had paralegal experience; and, (iv) the person hired, Ms. Wright, satisfied the requirement of paralegal experience. Given these undisputed facts, plaintiff cannot possibly prove Mr. Edel's statement that she was unqualified for the Contracts Manager position to be false. And, of course, "without falsity there could be no actionable misrepresentation." Retrofit Partners I, L.P. v. Lucas Industries Inc., 201 F.3d 155, 162 (2d Cir. 2001).

Plaintiff's allegation that upon filling in for Ms. Wright during her maternity leave she developed the belief that paralegal experience was not actually required to perform the tasks associated with Ms. Wright's job is not evidence of falsity. Mr. Edel testified unequivocally that

in his view paralegal experience was essential because a primary function of the Contracts Manager was to negotiate the terms of various lease and loan documents. (Edel Dep. at pp. 18-23, 55-57, 102-12). Nothing in the record allows for the conclusion that Mr. Edel's stated belief in this regard was other than genuine. It is undisputed that Ms. Wright did in fact undertake such negotiations. (Wright Dep. at pp. 32-36, 46-52). Indeed, Ms. Wright agreed that through her experience as a paralegal she developed the negotiating skills necessary to succeed as Contracts Manager. (Wright Dep. at p. 37, 60-62). Plaintiff offers no countervailing evidence of an intent to defraud or a reckless disregard of the truth on Mr. Edel's part.

Nor does plaintiff explain how she relied on Mr. Edel's representation concerning her lack of qualifications to her detriment. The only act conceivably taken by plaintiff in reliance on this representation was to refrain from applying for the Contracts Manager job. Only by sheer speculation, however, could one conclude that had plaintiff applied she would have been the successful candidate. To the contrary, because, as noted, it is undisputed that, essential or not, paralegal experience was a stated requirement, and plaintiff admittedly did not satisfy this requirement, the only reasonable inference to be drawn is that defendant would not have selected plaintiff over Ms. Wright.

There being no evidence as to the falsity of, or plaintiff's detrimental reliance on, Mr. Edel's representation that plaintiff lacked the necessary qualifications for the Contracts Manager job, this aspect of plaintiff's fraud claims fails as a matter of law.

### (b)  Alleged Representation Re: Telecommuting

Plaintiff alleges that, in connection with her reassignment to the role of Support Services Manager, Mr. Edel assured her she would be permitted to telecommute one day per week. "Generally, misrepresentations must relate to an existing or past fact. A promise to do something

in the future is not actionable unless the promise is coupled with a present intention not to fulfill the promise." New Horizon Financial Services, L.L.C. v. First Financial Equities, Inc., 175 F. Supp. 2d 348, 352-53 (D. Conn. 2001)(Citations and internal quotation marks omitted).[7] Here, there is no evidence of an intention not to perform.

It is undisputed that plaintiff did in fact continue to telecommute for over a year until assuming responsibility for certain aspects of Ms. Wright's job during her maternity leave. (Pltf's Dep. at p. 48-49, 121-22, 180). Where, as in this case, a promise to do something in the future is in fact fulfilled, at least initially, the requisite showing that the promissor never intended to perform cannot possibly be made. By plaintiff's own admission, moreover, due to the nature of the Contracts Manager job, she was unable to telecommute while filling in for Ms. Wright. (Pltf's Dep. at pp. 183-85). Mr. Edel certainly could not have known at the time he told plaintiff she could work from home on Fridays that better than a year later, Ms. Wright (who had yet to be hired) would go out on maternity leave and plaintiff would fill in thereby precluding her from continuing to telecommute. Co-Options, Inc. v. News America Marketing Instore, Inc., 2002 WL 442094, at *13 (Conn. Super. Feb. 27, 2002)(representation that defendant would participate in marketing initiative was not fraudulent even though sale of division was in the works and defendant backed out of its commitment when the sale came to fruition: "Knowledge of a possibility that an event may occur did not make false the defendant's representation on May 23 that it would participate in New Product Showcase.").

Indeed, plaintiff admits defendant did not terminate the telecommuting arrangement after Ms. Wright returned. Rather, plaintiff, of her own volition, elected to cease telecommuting on

---

[7] The same principle applies to negligent misrepresentation claims. Shaw v. Greenwich Anesthesiology Associates, P.C., 137 F. Supp. 2d 48, 68 (D. Conn. 2001)("Since the memorandum reflects future intentions, it can only be the basis for negligent misrepresentation if there was a present intent not to fulfill the promise.")(Citation omitted).

28

Fridays ostensibly in the hopes of allaying concerns allegedly expressed by Ms. Cherry as to whether plaintiff was in fact working at home. (Pltf's Dep. at pp. 228-30). Given that Mr. Edel never even told plaintiff she could no longer telecommute, he cannot be shown to have harbored fraudulent intent at the time he proposed the telecommuting arrangement in the first place.

Furthermore, because Mr. Edel's telecommuting proposal was, by plaintiff's own account, wholly unsolicited (Pltf's Dep. at pp. 80-82), no rational jury could conclude that plaintiff relied on this representation to her detriment. For instance, plaintiff cannot logically claim that in the absence of Mr. Edel's gratuitous offer to allow her to work from home on Fridays, she would have left defendant's employ, much less can she prove an alternative position was readily available.[8] As such, plaintiff is unable to meet "the requirement of proof that she actually *would have acted* in the absence of the promise." Stewart v. Cendant Mobility Services Corp., 267 Conn. 96, 113, ___ A. 2d ___ (2003)(Citation omitted)(Emphasis in original).

On these undisputed facts, no reasonable jury could find that defendant defrauded plaintiff regarding her ability to telecommute.

### (c)    Alleged Representation Re: Compensation

The same analysis applies to plaintiff's allegation that Mr. Edel defrauded her when he represented that her reassignment to the position of Support Services Manager would not have an adverse affect on her compensation.

Thus, it is undisputed that plaintiff did not experience a reduction in pay when she changed jobs, and she received a salary increase in 2001 and a VIC bonus for 2000. (Pltf's Dep. at pp. 180-83). Plaintiff's disappointment in not receiving a raise in 2002, or, she claims, a VIC bonus for 2001, can in no way be deemed attributable to any false statement by Mr. Edel --

---

[8] That no such opportunity was awaiting plaintiff is evident from the fact that it took her nearly a year to find a permanent position, and even then she had to take a pay cut. (Pltf's Dep. at pp. 18-20).

29

plaintiff admits Mr. Edel made no representations at all about her eligibility for future salary increases and/or VIC bonuses; in plaintiff's words: "That was not discussed." (Pltf's Dep. at pp. 182-83).

It is in any event undisputed that Mr. Edel recommended to the human resources department that plaintiff receive a raise in 2002. (Pltf's Dep. at pp. 185-87; Edel Dep. at pp. 61-62, 118; Cherry Dep. at p. 110). In all respects, therefore, Mr. Edel honored the representations attributed to him by plaintiff. That Ms. Cherry rejected Mr. Edel's raise recommendation for 2002 in no way reflects an intention on Mr. Edel's part not to perform as allegedly stated over a year earlier. Co-Options, Inc., at *13 (characterizing as "illogical" plaintiff's contention "that because News America's senior vice-president ... knew of a 'possibility' of a sale of the sampling division 'a few months' prior to August 2000 that News America knew on May 23, 2000, that the statements made on its behalf on May 23, 2000, were false.")(Citation omitted).

Summary judgment is therefore properly entered as to this aspect of plaintiff's fraud claims as well.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment should be granted, and plaintiff's Amended Complaint dismissed in its entirety, with prejudice.

Respectfully submitted,

Wiggin and Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

By: _____
Lawrence Peikes (ct 07913)
lpeikes@wiggin.com

Attorneys for Defendant
GENERAL ELECTRIC CAPITAL CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment was served on this 1st day of March, 2004, by first-class U.S. Mail, postage prepaid on:

>Michael Paes, Esq.
>Fern H. Paes, Esq.
>Paes & Paes, LLC
>4 Washington Avenue
>Sandy Hook, CT  06482

_____
Lawrence Peikes

\2542\7\82291.1