UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------- X
JOAN KOSSOFF,                          :
                                       :   Civil Action No. 3:03CV00203 (PCD)
               Plaintiff,              :
                                       :
v.                                     :
                                       :
GENERAL ELECTRIC CAPITAL               :
CORPORATION,                           :   MARCH 1, 2004
                                       :
               Defendant.              :
------------------------------------------------------- X

## DEFENDANT'S LOCAL RULE 56(a)1 STATEMENT

Pursuant to D. Conn. L. Civ. R. 56(a)1, and in support of its motion for summary judgment in the above-captioned matter, defendant General Electric Capital Corporation ("defendant" or "GE Capital"), by its attorneys, Wiggin and Dana LLP, submits that there is no genuine issue to be tried as to any of the material facts in this case, which are set forth below.

1. In April 1999, GE Capital acquired Phoenixcor, Inc. ("Phoenixcor"), where plaintiff was employed as Director of Contracts. As a result of this transaction plaintiff became an employee of GE Capital, and retained her title of Director of Contracts with no downward adjustment in her salary. (Pltf's Dep. at pp. 64-67).

2. Upon becoming employed by GE Capital, plaintiff continued to manage a department made up of approximately six (6) Contracts Specialists, a Team Leader, a file clerk and an administrative assistant. (Pltf's Dep. at pp. 71-72, 79-80).

3. Plaintiff has been diagnosed with sciatica, which during the period of her employment by GE Capital caused her pain and discomfort when she was required to sit for an extended period, such as during a long car ride. Plaintiff's condition did not impair her ability to

perform any task associated with the positions she held at GE Capital or her current position. Plaintiff experienced little or no discomfort at work so long as she periodically got up from her chair and stretched, which she was freely able to do while employed by GE Capital. (Pltf's Dep. at pp. 96-102, 171-73).

4. Within several months after GE Capital acquired Phoenixcor, two Contracts Specialists reporting to plaintiff, as well as the Team Leader and file clerk, resigned. (Pltf's Dep. at pp. 72-75).

5. During the first part of 2000, GE Capital merged a substantial component of the former Phoenixcor loan portfolio into its Commercial Asset Funding ("CAF") business. In connection with this restructuring, GE Capital laid off two (2) of the Contracts Specialists reporting to plaintiff, Michelle Martin and Dewania Lofton, both of whom were in their thirties at the time. (Pltf's Dep. at 73-74, 86-88; Cherry Dep. at pp. 58-59, 68-69).

6. GE Capital retained two (2) Contracts Specialists, one to support the biotech line of business and the other to support the third-party originations line of business. As a result of these organizational changes, plaintiff no longer had any direct reports and her position as Director of Contracts was eliminated. (Pltf's Dep. at pp. 86-88, 106-07; Cherry Dep. at pp. 59, 68-69).

7. Following the elimination of the Director of Contracts job, GE Capital assigned plaintiff to the position of Support Services Manager providing customer support for the former Phoenixcor portfolio of loans and leases that continued to be serviced our of the Norwalk office. In this capacity, plaintiff had no direct reports. Despite the change in her position from manager to individual contributor, GE Capital did not adjust plaintiff's compensation downward, but

instead maintained her manager salary. (Pltf's Dep. at pp. 83-86, 119-21, 130-31, 144-46, 180-81; Edel Dep. at pp. 33, 35, 71-72, 87-90, 93; Cherry Dep. at pp. 52-54, 70-71, 75-77).

8.    In September 2000, GE Capital awarded plaintiff a merit increase elevating her annual salary above $80,000.00. GE Capital also awarded plaintiff a Variable Incentive Compensation, or VIC, bonus for the year 2000 in the approximate amount of $7000.00, which plaintiff deemed satisfactory. (Pltf's Dep. at pp. 67-68, 108-09, 190; Cherry Dep. at pp. 53-54, 105-06).

9.    In or around April 2000, Al Kolb, an in-house attorney who came to GE Capital as part of the Phoenixcor acquisition, resigned. (Pltf's Dep. at pp. 83-84, 112; Edel Dep. at p. 18).

10.   GE Capital decided not to hire a lawyer to replace Mr. Kolb. (Edel Dep. at pp. 18, 81; Cherry Dep. at pp. 81-83).

11.   In or around June, 2000, GE Capital posted an opening for the position of Contracts Manager, or Contracts Administration Manager. The stated qualifications for the position included prior paralegal experience and a paralegal degree. (Cherry Dep. at pp. 61-62, 65-66; Edel Dep. at pp. 18-20, 102-12, Exh. 2E).

12.   Mr. Edel drafted the job posting for the position of Contracts Manager, or Contracts Administration Manager, and determined that paralegal experience and a paralegal degree were essential requirements primarily because the job entailed, *inter alia*, negotiation of loan and lease agreement terms directly with customers or their legal representative. (Edel Dep. at pp. 18-23, 55-57, 102-12).

13. Every candidate interviewed by GE Capital for the position of Contracts Manager, or Contracts Administration Manager, indicated on their resume or application that they had experience working as a paralegal. (Edel Dep. at p. 59).

14. At the point in time when GE Capital was conducting a search for a candidate to fill the position of Contracts Manager, or Contracts Administration Manager, plaintiff did not have a paralegal degree or paralegal experience, nor had she ever been directly responsible for negotiating legal documents. (Pltf's Dep. at pp. 15-16, 130-33; Edel Dep. at pp. 18-19, 97-98, 106-08).

15. GE Capital hired Christine Wright to fill the position of Contracts Manager, or Contracts Administration Manager. Ms. Wright has a Bachelor of Arts degree in legal studies and came to GE Capital with approximately thirteen (13) years of experience working as a paralegal. Through her prior employment, Ms. Wright had gained familiarity with loan and lease agreements similar in type to those used by GE Capital. (Wright Dep. at pp. 8-17, 22-29; Edel Dep. at pp. 28-32).

16. One of Ms. Wright's principal responsibilities as the Contracts Manager, or Contracts Administration Manager, was to negotiate lease and loan terms on behalf of GE Capital. (Wright Dep. at pp. 32-36, 46-52; Edel Dep. at pp. 55-56, 75, 102-08).

17. In early 2001, GE Capital merged the CAF business unit into the Small Business Finance unit, headquartered in St. Louis, Missouri. The Small Business Finance unit maintains centralized support capabilities in St. Louis, including a customer support staff. (Duffek Aff. ¶¶ 3-4; Cherry Dep. at pp. 85-86).

18. In connection with the merger of CAF into the Small Business Finance unit, Jennifer Cherry of defendant's Human Resources department inquired of William Duffek, Senior

Vice President & Risk Manager for the Small Business Finance unit, as to whether he wished to maintain a customer support resource in Norwalk, and he declined. (Duffek Aff. ¶ 4; Cherry Dep. at pp. 85-86).

19. At the time of Ms. Cherry's inquiry, Mr. Duffek had never worked with plaintiff, or met her personally, and he had no knowledge of plaintiff's age or her health or medical condition. (Duffek Aff. ¶ 5).

20. Commencing in or around August 2001, plaintiff's customer support duties were transitioned to existing GE Capital employees in St. Louis. (Pltf's Dep. at pp. 120-21, 140-43; Cherry Dep. at pp. 85-86; Edel Dep. at pp. 42-43, 86-88; Duffek Aff. ¶ 3).

21. While serving as Support Services Manager, and until such time as Ms. Wright took a maternity leave of absence in or around September 2001, plaintiff was permitted to telecommute from home on Fridays, and work flexible hours. Plaintiff did not go back to telecommuting after Ms. Wright returned from maternity leave because she had learned that Ms. Cherry had questioned whether she was actually working from home. (Pltf's Dep. at pp. 48-49, 81-82, 121-22, 180, 184-85, 229-30).

22. During the course of her employment by GE Capital, plaintiff informed Mr. Edel that she was not interested in transferring to a position in Danbury because it would lengthen her commute. (Pltf's Dep. at pp. 156-57; Edel Dep. at pp. 71-72).

23. On or about February 1, 2002, defendant issued plaintiff a layoff notice with an effective date of February 2, 2002, and granted plaintiff layoff benefits. (Pltf's Dep. at pp. 163-64, Exh. 7; Cherry Dep. at pp. 86-88).

24. At or around the time of her layoff, plaintiff received a $5000.00 bonus payment. (Pltf's Dep. at pp. 109-10, 214-15).

25. VIC payments were ordinarily distributed in March of the following year, and are determined based largely on the manager's assessment of the employee's performance against established objectives. Plaintiff did not have any defined objectives for the year 2001. (Cherry Dep. at pp. 127-28, 131-32, 148).

26. In order to avoid scrutiny, and expedite payment to plaintiff, Ms. Cherry classified the $5000.00 bonus payment as a "stay" bonus. This payment had not been conditioned on plaintiff's remaining with GE Capital for a pre-determined period of time. (Pltf's Dep. at p. 215; Cherry Dep. at pp. 128, 131-32).

27. In connection with defendant's salary planning for 2002, Mr. Edel proposed that plaintiff be awarded a raise. Ms. Cherry rejected Mr. Edel's recommendation. (Pltf's Dep. at pp. 185-87; Edel Dep. at pp. 61-62, 94, 118; Cherry Dep. at p. 110).

28. At the time Ms. Cherry rejected Mr. Edel's recommendation that plaintiff receive a raise, plaintiff's duties were in the midst of being transitioned to employees in St. Louis and, consequently, plaintiff was slated for layoff. (Pltf's Dep. at pp. 158-61; Cherry Dep. at pp. 51, 55-56; Edel Dep. at pp. 64-65, 86-88).

29. Plaintiff's salary in 2001 was better than double the average salary of GE Capital's Danbury-based Portfolio Administration Representatives. (Cherry Dep. at p. 124; Edel Dep. at pp. 13-16).

30. In or around May 2000, GE Capital issued an e-mail to its employees concerning a new employee dispute resolution program called RESOLVE. Attached to the e-mail was an electronic version of the RESOLVE Handbook. Plaintiff received this e-mail and the attachment. (Pltf's Dep. at pp. 211-13, Exh. 10; Cherry Dep. at pp. 138-39, Exh. 8C).

31.     Plaintiff did not invoke RESOLVE, or otherwise assert any claims or grievances she may have had arising out of her employment by GE Capital or her layoff until her CHRO filing. (Pltf's Dep. at pp. 51-54, 138-39, 165-67; Cherry Dep. at pp. 88-89).

Because there is no genuine dispute as to any of the material facts set forth above and, as articulated more fully in the memorandum of law submitted herewith, the undisputed facts demonstrate that defendant is entitled to a judgment as a matter of law, defendant's motion for summary judgment should be granted, and plaintiff's Amended Complaint dismissed in its entirety, with prejudice.

Respectfully submitted,

Wiggin and Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

By: _____
         Lawrence Peikes (ct 07913)
         lpeikes@wiggin.com

Attorneys for Defendant
GENERAL ELECTRIC CAPITAL CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Defendant's Local Rule 56(a)1 Statement was served on this 1st day of March, 2003, by first-class U.S. mail, postage prepaid, on:

>Michael T. Paes, Esq.
>Fern H. Paes, Esq.
>Paes & Paes, LLC
>4 Washington Avenue
>Sandy Hook, CT  06482

_____
Lawrence Peikes

\2542\7\83505.1