UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------- X
JOAN KOSSOFF,                          :
                                       :   Civil Action No. 3:03CV00203 (PCD)
            Plaintiff,                 :
                                       :
v.                                     :
                                       :
GENERAL ELECTRIC CAPITAL               :
CORPORATION,                           :   APRIL 5, 2004
                                       :
            Defendant.                 :
---------------------------------------------------------- X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**


Lawrence Peikes (ct07913)
Wiggin and Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

Attorneys for Defendant
GENERAL ELECTRIC CAPITAL
CORPORATION

Plaintiff's opposition brief is replete with conclusory allegations and factual representations that find no evidentiary support in the record, bereft of citations to case law supportive of her legal arguments, and dismissive of the substantial body of precedent cited by defendant in its moving papers, which plaintiff makes no effort whatsoever to distinguish or repudiate. In the end, summary judgment is properly entered as to all counts.

1.  **Actual "Disability"**

Although plaintiff accuses defendant of understating "the limit of Plaintiff's physical limitations" (Plaintiff's Local Rule 56(a)2 Statement ("Pltf's Statement") ¶ 3), nowhere in the deposition excerpts she cites does plaintiff identify a major life activity restriction other than an inability to sit for extended periods without stretching her legs. (Pltf's Dep. at pp. 97-102). Second Circuit precedent teaches that the incapacity to remain seated for hours at a time is, as a matter of law, *not* a substantial impairment. (Def's Mem. at p. 10).

Plaintiff gains no mileage from her further assertion that "it's difficult standing for long shots." (Pltf's Mem. at p. 9). The inability to stand for "long shots" is no more a substantial impairment than the inability to sit for "long shots."[1] Equally unavailing is plaintiff's allegation that "[a]t times, she was physically incapable of driving to work." (Pltf's Mem. at p. 9). To begin with, "driving is not considered a major life activity." Felix v. New York City Transit Authority, 324 F.3d 102, 106 (2d Cir. 2003). Plaintiff's occasional inability to commute from New Jersey to Norwalk, moreover, is not an independent limitation; rather it is a consequence of

---

[1] Banks v. Potter, 253 F. Supp. 2d 335, 346-47 (D. Conn. 2003)(inability to stand for over four hours per day is not a substantial impairment); Beason v. United Technologies Corp., 213 F. Supp. 2d 103, 110-11 (D. Conn. 2002)("A belief that one cannot stand for longer than two hours, [and] can only perform sedentary work ... does not constitute a belief that one is severely restricted in his ability to stand as compared with the average person.")(Citation omitted), rev'd on other grounds, 337 F.3d 271 (2d Cir. 2003).

her inability to sit for extended periods of time, which, to reiterate, is not a substantial impairment. Colwell v. Suffolk County Police Dept., 158 F.3d 635, 644 (2d Cir. 1998).

Likewise, it is immaterial that plaintiff allegedly "had to change from normal work hours" and "undergo physical therapy during work hours up to two times per week" (Pltf's Mem. at p. 9) -- these are merely examples of corrective measures, they are not major life activity limitations in and of themselves.[2] To be sure, moreover, plaintiff does not allege that such slight alterations of her work schedule disqualified her from a broad class of jobs, so as to substantially impair her ability to work. E.E.O.C. v. J.B. Hunt Transport, Inc., 321 F.3d 69, 75-76 (2d Cir. 2003). Indeed, it is undisputed that plaintiff's employability by defendant was unaffected by the adjustments to her work schedule.[3]

2.  **"Regarded As" Disabled**

No reasonable jury could possibly interpret Mr. Edel's comment in plaintiff's March 2000 evaluation that "health and commuting issues could be limiting factors in placing elsewhere" as reflective of a belief that, by virtue of her sciatica, plaintiff was incapable of taking on a wide range of jobs. On its face, Mr. Edel's comment speaks in terms of geographic limitations, not physical limitations. (Def's Mem. at pp. 11-12).

---

[2] It bears noting that (i) defendant approved the non-standard schedule proposed by plaintiff without fanfare, and without requiring medical support (Pltf's Dep. at pp. 95-96), and (ii) plaintiff's physical therapy lasted all of ten (10) weeks. (Pltf's Dep. at pp. 103-04).

[3] Plaintiff simply ignores the substantial body of adverse precedent cited above, and in defendant's opening brief, conclusively demonstrating she does not suffer from an actual "disability," instead relying on a single unpublished district court opinion, Abbrassi v. Herzfeld & Rubin, 1995 WL 303603 (S.D.N.Y. May 17, 1995), that pre-dates the Second Circuit's controlling decision in Colwell, and is in any event inapposite. The plaintiff in Abbrassi alleged far more extensive limitations than the non-substantial restriction on sitting complained of by plaintiff. In particular, Mr. Abbrassi alleged that, as a result of a stroke, he was limited in his ability to work, engage in strenuous activity, exercise to the same degree as before, walk up flights of stairs, stand for long periods of time, or carry heavy boxes or files. Id., at *2. The district court found these allegations sufficient to defeat a *motion to dismiss*. On summary judgment, however, plaintiff must go beyond the pleadings and come forward with evidence of a substantial impairment; she has not done so.

Plaintiff, moreover, badly overreaches when she says "[t]he plain language of this statement clearly show [sic] that Defendant felt Kossoff had physical limitations that prevented her from obtaining other positions within the company." (Pltf's Mem. at p. 9). "[A]n employer is free to decide that ... some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." Sutton v. United Air Lines, Inc., 527 U.S. 471, 490-91, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999)(Emphasis in original). Mr. Edel's comment may reflect a belief that plaintiff was "less than ideally suited for a job" located even farther away from her New Jersey home than Norwalk, but the remark does not in any way hint at a perception that plaintiff suffers from an ADA-covered disability. Simonson v. Trinity Regional Health System, 336 F.3d 706, 709 (8th Cir. 2003)(manager's response to plaintiff's inquiry concerning job opportunity that, "I'm not sure if that's physically a good choice for you" did not establish that plaintiff was regarded as disabled); Harmon v. Sprint United Mgm't Corp., 264 F. Supp. 2d 964, 970-71 (D. Kan. 2003)("... the fact that Defendant's stated reason for not hiring Plaintiff was that it believed Plaintiff's 'health' prevented him from working at Defendant's offices on a full-time basis ... is still insufficient to establish that Defendant regarded Plaintiff as disabled.").

Indeed, during the same time period when Mr. Edel prepared the evaluation referencing "health and commuting issues" he was constructing a job for plaintiff out of whole cloth, thereby keeping her employed by defendant for another two (2) years. (Def's Mem. at pp. 4-5). These actions are entirely inconsistent with a belief that plaintiff was substantially limited in the major life activity of working, or any other major life activity. To the contrary, "[t]he record

3

demonstrates without dispute ... that [defendant] regarded [plaintiff] as capable of performing h[er] job." Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 46 (1st Cir. 2003).[4]

The balance of plaintiff's argument points to Mr. Edel's suggestion that plaintiff work from home one day per week, her flexible work schedule and her consumption of pain medication in the office, "presumably in the presence of her co-workers," ostensibly as proof she was "regarded as" disabled. (Pltf's Mem. at p. 10). Plaintiff, however, erroneously equates an employer's offer to accommodate an employee's medical condition with a perception that the employee suffers from an ADA-covered disability. Cameron v. Community Aid For Retarded Children, Inc., 335 F.3d 60, 65 (2d Cir. 2003)(manager's awareness of plaintiff's anxiety attacks, requiring psychiatric attention, and authorization of time off for treatment did not support finding that he regarded plaintiff as disabled); Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 118 (1st Cir. 2004)(even if employer terminated plaintiff out of concern that alcoholism impaired his ability to do his job this does not prove employer considered him disabled under "the rigorous standards of the ADA."). Notably, the accommodations made for plaintiff are analogous to a light-duty assignment, which the Second Circuit has held is not indicative of a perceived disability. Colwell, 158 F.3d at 647.

3. **The Contracts Manager Position**

Plaintiff's claim alleging discriminatory denial of the Contracts Manager job rests entirely on legal arguments that have been expressly disavowed by the Second Circuit; this despite the fact these controlling cases were cited in defendant's brief.

---

[4] See also Colwell, 158 F.3d at 646 ("Continuous assignment of a policeman to non-confrontational positions does not permit the inference that the officers were regarded as substantially limited in their ability to do work."); Munck v. New Haven Savings Bank, 251 F. Supp. 2d 1078, 1084-85 (D. Conn. 2003)(fact that employer provided plaintiff with a left-handed teller window did not "suggest[] that the defendants perceived the plaintiff as unable to work in a broad class of jobs."); Siederbaum v. City of New York, __ F. Supp. 2d __, 2004 WL 574811, at *6-7 (S.D.N.Y. March 23, 2004)(plaintiff could not prove he was regarded as disabled where employer invited him to apply for other jobs).

Thus, in strenuously arguing "that the requirement of a paralegal degree was not a necessary requirement for the position," (Pltf's Mem. at p. 12), plaintiff brazenly disregards the Second Circuit's mandate that "[a] plaintiff is not entitled to get his or her case before a jury by contending that the demands of the employer were not reasonably related to the performance of the job." Thornley v. Penton Publishing, Inc., 104 F.3d 26, 29 (2d Cir. 1997). Similarly, plaintiff's attempt to defeat summary judgment by pronouncing herself "qualified" for the position of Contracts Manager is unavailing because being qualified is not nearly enough to prove the selection process was marred by discriminatory animus. Rather, to prevail on such a claim in this Circuit plaintiff's "credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person in the exercise of impartial judgment, could have chosen the candidate selected over [her] for the job in question.'" Byrnie v. Town of Cromwell, Bd. of Education, 243 F.3d 93, 103 (2d Cir. 2001). Plaintiff makes no such claim of superiority, nor can she.

Plaintiff, moreover, emasculates the record in representing to the Court that "Kossoff's and Wright's jobs had 'essentially the same responsibilities'" and that "there were no substantive differences in the two positions." (Pltf's Mem. at p. 11). Contrary to plaintiff's mischaracterization of the testimony, Mr. Edel and was quite explicit in identifying the fundamental differences between plaintiff's former job as Director of Contracts and the Contracts Manager position filled by Ms. Wright. (Edel Dep. at pp. 52-56). Most notably, whereas negotiating contract terms is a staple of Ms. Wright's job (Wright Dep. at pp. 32-35, 46-48, 60-68; Edel Dep. at pp. 18-24, 55-56), plaintiff acknowledged that in her prior position as Director of Contracts she did not negotiate changes to defendant's form documents; rather, any variances "would go to legal." (Kossoff Dep. at pp. 130-31). In like fashion, when she was

filling in for Ms. Wright, plaintiff admittedly brought any "legal issues" to the attention of in-house counsel in the first instance. (Pltf's Dep. at pp. 123-24). These are precisely the types of "legal issues" that Ms. Wright was called upon to address on her own. (Wright Dep. at pp. 33-35; Edel Dep. at pp. 55-56, 101-12).

### 4. 2002 Raise

Plaintiff cannot establish the existence of a triable issue of material fact by way of her assertion "that Defendant's proffered reasons for denying Kossoff a raise, that she was overpaid compared with PARs working for them, is untrue." (Pltf's Mem. at p. 14).

First of all, plaintiff misstates the reason given by Ms. Cherry for the challenged decision, namely that "we knew her position was being eliminated." Ms. Cherry was uncertain whether "the fact that [plaintiff's] compensation was so high may have also come into play." (Cherry Dep. at pp. 55-56). Plaintiff cannot prove pretext by attacking the legitimacy of a rationale for an adverse employment decision that, if factored in at all, was of secondary importance.[5]

Second, the essence of plaintiff's argument -- that defendant should have used managers, rather than PAR's, as a basis for any salary comparison -- improperly attacks the wisdom of defendant's decision making process. Even if a trier of fact agreed with plaintiff that, in all fairness, defendant should have compared her salary with that of managerial employees and awarded her a raise, this would not support a verdict in plaintiff's favor. Norton v. Sam's Club, 145 F.3d 114, 119-20 (2d Cir. 1998)(while "it is easy to see how a reasonable person could conclude from the facts of this case that it was *wrong* for Sam's Club to fire Norton ... the ADEA

---

[5] Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544 (6th Cir. 2004)("In order to prove discrimination, though, the plaintiffs must directly confront the asserted justification for the discharge ...."); Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 530 (7th Cir. 2003)(evidence of "allegedly more favorable treatment of the two white employees who received similar performance ratings" is not probative of pretext where employer did not cite plaintiff's performance ratings as the reason for the termination).

does not make employers liable for doing stupid or even wicked things: it makes them liable for *discriminating*, for firing people on account of their age.")(Emphasis in original).

Furthermore, contrary to plaintiff's contention, Ms. Wright is not an appropriate comparator for salary purposes because she, unlike plaintiff, actually managed subordinates. Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2004)("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."); Rose v. Panolam Industries Int'l Inc., 301 F. Supp. 2d 239, 244 (D. Conn. 2004)(proposed comparator was not similarly situated to plaintiff because they held different positions). Ms. Wright, moreover, was, unlike plaintiff, not on the verge of being laid off.[6]

**5.    2001 VIC Bonus**

While plaintiff's portrayal of the $5000.00 bonus she received in February 2002 as a stay bonus, rather than a VIC bonus, is unsupported by logic or record evidence (Def's Mem. at pp. 19-20), ultimately the characterization of the payment is an exercise in semantics. At bottom, there is no evidence plaintiff was denied a VIC bonus, or shorted, on account of her age or alleged disability. That Ms. Wright received a substantially greater bonus is not evidence of discrimination. Plaintiff cites no evidence she and Ms. Wright had comparable performance objectives and achieved comparable results so as to be eligible for a comparable VIC award.

---

[6] Plaintiff cannot avert summary judgment by virtue of the fact she "was not in charge of payroll" and therefore ignorant of other employees' salaries (Pltf's Mem. at p. 14) -- plaintiff had ample opportunity to access comparative salary information through discovery. If plaintiff felt she needed further disclosures in order to oppose defendant's motion for summary judgment, recourse was available through Fed. R. Civ. P. 56(f). Because there is no evidence of disparate treatment in the record developed in discovery, summary judgment is inherently appropriate. See Kincade v. O'Neill, 2003 WL 22244943, at *9-10 (D. Conn. Sept. 23, 2003)(Dorsey, J.)(granting summary judgment on race discrimination claims where plaintiff's allegation that she was treated less favorably than white employees was not supported by evidence showing she and the comparators were similarly situated). Accord Grey v. City of Norwalk, F. Supp. 2d __, 2004 WL 231171, at *7 (D. Conn. Feb. 4, 2004); Jenkins v. Area Cooperative Education Services, 248 F. Supp. 2d 117, 126-27 (D. Conn. 2003).

(Cherry Dep. at pp. 101-02). <u>Kincade</u>, at *9 ("To be 'similarly situated' Plaintiff must be able to demonstrate that he was 'similarly situated in all material respects' to those whom he alleges were treated differently.").

6. **Termination of Employment**

Plaintiff asks the Court to infer from Ms. Cherry's undated handwritten bullet point notation "2 years?" that plaintiff's position as Support Services Manager was earmarked from the outset as a temporary two-year assignment. (Pltf's Mem. at p. 16). Any such inference, however, would be wholly speculative. Although Ms. Cherry could not recall the meaning of the notation, both she and Mr. Edel steadfastly denied the job was designed to be temporary in nature. (Cherry Dep. at p.143; Edel Dep. at p. 88). Plaintiff's supposition that these denials are disingenuous does not give rise to a triable issue of material fact.

Even so, plaintiff does not begin to explain how being placed in a temporary position for *two years*, rather than being laid off when her position was eliminated, equates to unlawful discrimination. Plaintiff's reliance on the so-called "policy" by which defendant's human resources department provided "Phoenixcor terminated employees information about open positions in the [layoff] packages prepared for them" (Pltf's Mem. at p. 16) is misplaced, it being undisputed that such assistance was only provided to the group of former Phoenixcor employees affected by the initial round of layoffs stemming from the acquisition. (Cherry Aff. ¶ 2). Absent evidence, of which there is none, that defendant provided job search assistance to younger or non-disabled employees displaced outside the context of the acquisition, but failed to do so for plaintiff, no inference of discrimination arises. <u>Raytheon Co. v. Hernandez</u>, 124 S. Ct. 513, 519

8

2003)(it is the essence of disparate treatment that "[t]he employer treats some people more favorably than others because of their ... protected characteristic.").[7]

### 7. Covenant of Good Faith and Fair Dealing

Plaintiff points to no evidence supportive of the requisite showing "that the defendant engaged in conduct that injured [her] right to receive some or all of those benefits" of the RESOLVE program. Franco v. Yale University, 238 F. Supp. 2d 449, 455 (D. Conn. 2002), aff'd mem., 2003 WL 22717654 (2d Cir. Nov. 17, 2003). Rather, plaintiff purports to extract evidence of bad faith from Ms. Cherry's inability at deposition to "state that the [RESOLVE] program was mandatory for Kossoff ..." (Pltf's Mem. at pp. 17-18). The only act of bad faith, however, is plaintiff's failure to provide Ms. Cherry, or the Court, with a copy of the RESOLVE program, even though defendant produced the document in discovery, wherein it is expressly stated that "current employees," like plaintiff at the time, although not compelled to arbitrate their grievances, are obliged to invoke the first three levels of the RESOLVE process, culminating in mediation. (Cherry Aff. ¶ 3, Exh. A at Bates No. GE-000134, 137, 182). Bad faith cannot possibly be gleaned from defendant's mere invocation of its rights under RESOLVE. Neptune Group, Inc. v. MKT, Inc., 205 F.R.D. 81, 87 (D. Conn. 2002)(no bad faith where defendant's denial of commission was based on a permissible construction of the contract).

---

[7] Plaintiff does not contest Mr. Duffek's dispositive sworn testimony that he was unaware of plaintiff's age or physical condition when he decided there was no need to retain a customer support resource in Norwalk after the Phoenixcor portfolio was transferred to St. Louis, thereby sealing plaintiff's fate. Caruso v. Siemens Business Communications, Inc., 2004 WL 235365, at *8 (D. Conn. Feb. 5, 2004)("It is beyond peradventure that Plaintiff cannot establish a prima facie case of disability discrimination based on the existence of a condition unknown to Siemens at the time of Plaintiff's selection for lay-off."). Although plaintiff claims Mr. Duffek's affidavit was "post-dated" (Pltf's Statement ¶ 17), she did not file a motion to strike. To be clear, however, the March 27, 2004 date in the notary block is a scrivener's error; Mr. Duffek actually executed the affidavit on February 27, 2004. (Duffek Supp. Aff. ¶ 2).

8. **Fraud/Negligent Misrepresentation**

Plaintiff's arguments in support of her claims for fraud and negligent misrepresentation are legally misguided. Because plaintiff admits Mr. Edel accurately represented that paralegal training and experience were among the qualifications required by defendant for the job of Contracts Manager, she necessarily lacks the requisite evidence of falsity. Cessation of plaintiff's telecommuting arrangement in late 2001 does not prove Mr. Edel's alleged representation in 2000 that plaintiff could telecommute one day per week was false when made. Likewise, Ms. Cherry's rejection of Mr. Edel's recommendation that plaintiff receive a raise for 2002 is not evidence that Mr. Edel lied in 2000 when he told plaintiff her compensation would be unaffected by the change in her position.

9. **Compliance With Motion Procedures**

The Court's Supplemental Order provides that: "Before *filing* any motion, moving counsel shall consult all counsel to try to reach agreement as to the subject of the proposed motion." Under the Supplemental Order, motion papers are initially served but not *filed*. The non-movant then has the option of serving either an opposition brief or "a stipulation reflecting acquiescence in the motion." Here, plaintiff opposed defendant's motion in its entirety, thereby signaling she did not "acquiesce[] in the motion." Any preliminary dialogue would obviously have been fruitless. By essentially arguing that defendant should have engaged in such a futile exercise plaintiff elevates form over substance to an illogical degree. The motion has been fully briefed; there is no reason it should not be given due consideration by the Court.

Respectfully submitted,

Wiggin and Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600
(203) 363-7676 (fax)

By: _____
Lawrence Peikes (ct 07913)
lpeikes@wiggin.com

Attorneys for Defendant
GENERAL ELECTRIC CAPITAL CORPORATION

**CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment was served this 5th day of April, 2004, by first-class U.S. mail, postage prepaid, on:

>Michael T. Paes, Esq.
>Fern H. Paes, Esq.
>Paes & Paes, LLC
>4 Washington Avenue
>Sandy Hook, CT  06482

_____
Lawrence Peikes

\2542\7\84947.1