UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOAN KOSSOFF,

        Plaintiff,

        Civ. Action No. 3:03CV00203(PCD)

v.

GENERAL ELECTRIC CAPITAL CORPORATION,    DATE 4/22/04

        Defendant.

## SUR-REPLY TO DEFENDANT'S 4/5/04 REPLY BRIEF

Plaintiff hereby replies to Defendant's 4/5/04 Reply Brief in Further Support of it's Motion for Summary Judgment. Contrary to Defendant's assertions, the allegations in the complaint support the causes of actions enumerated therein, and Plaintiff has provided ample statutory and case-law support in its reply brief to Defendant's motion for summary judgment. As such, Defendant's motion should be dismissed in its entirety. Plaintiff responds to Defendant's arguments in the order raised by it.

### ACTUAL DISABILITY

Ms. Kossoff has provided substantial evidence of her physical limitations. As detailed in the reply to Defendant's instant motion, Plaintiff provided evidence in support of her allegations of substantial life limitations, including sitting, standing, inability to drive. Defendant attempts to twist caselaw in an attempt to argue that these are not applicable limitations.

Defendant cites <u>Banks v. Potter</u> with regard to the issue of standing, but mis-states the finding of the court. The court did not hold that difficulties standing was not a significant impairment, but that "(t)he nature and severity of such a limitation [of the plaintiff] do not connote a substantial deviation from the ability of the average person to stand. Additionally, the

temporary nature of those restrictions weighs against a finding of substantial limitation" (Banks at 347). The standard is the degree of limitation "as compared with the average person (Banks at 346). This is a factual issue to be determined at trial, especially as Defendant does not dispute that Plaintiff in fact had difficulties standing.

Defendant also cites Beason v. United Technologies Corp., a case factually different from the case at bar. Beason, the Plaintiff was a drill press operator in a machine shop, who requested limitations were for "sedentary work". Kossoff was an office worker. Her regular job activities were "sedentary" work (which is her job), and she could not perform these without various accommodations, including breaking up her work day and duties, changing her hours, telecommuting, etc. The jobs are not equivalent. Beason (as well as Colwell, the other case cited) did not deal with the issue of actual disability, but only whether "the Defendant could have *perceived* (emphasis added) that Beason was unable to stand for longer than two hours" resulted in a *perception* of disability. It does not hold that a person in Kossoff's position was, as a matter of law, not disabled under the ADA.

The same issues arise in Banks with regard to the issue of Kossoff's difficulties sitting. The court held that the issue was whether he "was severely restricted in his ability to sit as compared with the average person. The physician's evaluation stated that he "did not seem to be uncomfortable while sitting" (Banks at 348). Kossoff's limitations in this regard are much more pronounced. Especially in light of the fact that Banks was a lettercarrier, a position in which he was not standing for much of his work day, while Kossoff's office position required her to sit while working, the reliance on this case is misguided.

Defendant claims that driving is not a major life function, citing as its authority Felix v.

3

New York City Transit Authority, 324 F.3d 102, while the section cited was merely dicta in the Court's decision. However, the Second Circuit has held otherwise. In Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 217 (2d Cir 2001), the plaintiff survived summary judgment, despite the fact that the reason she was denied a promotion was because she could not drive due to her epilepsy. The impairment which affected Plaintiff's eligibility to perform her job was her epilepsy, which caused her inability to drive, but was not a part of the major life activity that the epilepsy interfered with. However, a causal connection was made by the court.

Similarly, Ms. Kossoff's sciatica causes her pain, and her difficulties sitting (detailed more fully in Plaintiff's response to Defendant's motion). Further, the numbness in her legs (Kossoff at 100) makes it difficult to operate the brakes in the car. Moreover, Kossoff has to wear a brace at work, which Defendant knew (Kossoff at 96 and 175), and she had to take pain medication as a result (Kossoff at 100).

It is important to note that Ms. Kossoff alleged at deposition that the reason why her disability or perceived disability played a part in Defendant's failure to consider her for the Contracts Manager position is "(B)ecause I think he felt that I couldn't be there at all times. ... I think he would not have offered me working at home if he thought I could be there every day definitely (Kossoff at 197). Kossoff also pointed to the way Defendant treated Edel, who is three years her senior, once he had become ill and was older (and possibly perceived as, if not actually, disabled) and likened it to her situation - "He had some stomach problems and because of his health problems he was demoted. ... Because his position was given to Tom Anino who was quite healthy and younger and when John came back he was told about his demotion" (Kossoff at 198). This circumstance was confirmed by Edel at his deposition:

4

> "Sometime in February or March of 2001 I was approached by the head of Capital Funding ... They wanted to know if I was interested in taking over as general manager of that business; I said yes ... Shortly after than I had emergency surgery ... Basically I had 80% of my large intestine removed" (Edel at 81 and 82).

Edel testified further:

> Q. Were you removed from your position as general manager while you were in the hospital?
> A Yes. I was not told that was happening until I returned at the end of June and it was not formally announced until I returned from my second operation in October.
> Q. Out of curiosity, how old is Mr. Anninno?
> A. Forties.
> Q. And how old are you?
> A. Sixty- six. (Edel at 82 and 83).
> Q. Does Ms. Anninno have an physical disabilities, problems of which you are aware?
> A. He's got some removal of cancer growths, I think some basal cells. Aside from that I'm not aware of any.
> Q. Mr. Edel, you had talked about Mr. Anninno taking your job when you were out and ill. Is Mr. Anninno still there?
> A. No.
> Q. Who assumed his duties?
> A. A gentleman named Anthony Storino.
> Q. Did you ever get your general manager's job?
> A. No.
> Q. Did you consider that a demotion?
> A. Yes, I suppose. (Edel at 83 and 84).

Prior to requiring medical attention, Edel was considered employable. But his age and medical history worked against him once Defendant became aware of it. Once Edel was in a position similar to Kossoff, he was demoted, which is Defendant's *modus operandi*. Those persons with a record of physical impairment, perhaps with an age factor, are considered to be liabilities for Defendant and are demoted (This goes to an age-plus medical issues claim as well). Defendant appears to feel that the fact that it constructed a temporary job for Plaintiff and stated that health and commuting issues might pose a problem for her should be taken as a sign of generosity. In

5

fact, the question is whether the <u>health issues</u> referred to at a time Defendant was constructing a position (and demoting Kossoff) were a motivating factor in the insertion of the paralegal requirement in the job description, especially in light of the fact that there were little or no substantial difference in the positions (interestingly, Defendant does not address the issue of age discrimination in its reply).

Finally, the fact that Ms. Kossoff was still "employable", as raised by Defendant, is absolutely irrelevant to the issue of whether she was disabled. The ADA states that an employer must make reasonable accommodations to allow an employee to perform the essential functions of his/her position, and may not otherwise discriminate against her.  In summary, Plaintiff has provided more than adequate evidence to demonstrate Defendant's violation of the ADA on the basis of actual disability, and its motion should be denied.

## PERCEIVED DISABILITY

Defendant's very argument supports Plaintiff's position that there is, at the very least, an issue of fact as to whether she was perceived as disabled by Defendant.  Defendant tries to counter the issue of perceived disability by arguing that the document in question, which plainly stated "health ... issues" was irrelevant to show perception (page 2 of Reply).  Defendant raises no legal precedent in support - by its own failure to show law, it shows there is no legal issue. Defendant then claims that it perceived that Kossoff had some (as opposed to substantial) limiting impairments (Defendant's Reply at 3) - and that therefore, there was no perception of disability. At *best*, these are issues of fact, to be determined at trial.

There were many other examples of Defendant's perception of Kossoff's disability. Two are, in response to whether her was aware of Kossoff's Sciatica, Edel, Kossoff's supervisor,

6

admitted "knew she [Kossoff] was having problems with her leg back all the way back to Phoenixcor" (Edel at 72-73). Defendant admitted that because of "health and commuting issues" which "could be a limiting factor in placing elsewhere, I [Edel] thought I [he] was doing her [Kossoff] a favor by making sure she would not be transferred up to Danbury" (Edel at 71-72).

Plaintiff provides further evidence in support of Defendant's perception of disability in the prior section in citing Edel's testimony.

Defendant's reference to the two year employment period of Kossoff's employment on page 3 of its Reply misstates the facts. When Kossoff was demoted from Contracts Manager, she was not told that the position was to be a temporary one (Cherry at 143), or that her job was in jeopardy, or that it was a demotion, although it is clear that Defendant intended the position to be temporary when it was created (Cherry at 144, Plaintiff's Exhibit E of Memorandum in Opposition to Motion for Summary Judgment, wherein Kossoff's name appears at the top and underneath is a bullet point "two years"). In fact, Kossoff repeatedly asked Edel if her job was in jeopardy, but was told it was not (Kossoff at 47).

A plaintiff is considered within the meaning of the ADA if the employer mistakenly believes that a person is has a physical impairment that substantially limits one or more major life activities, or ... mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life functions. Sutton v. United Air Lines, Inc. 527 U.S. 471, 489 (1999). The evidence shows that Defendant considered Kossoff's medical impairment as a bar to her continued employment, and as such, she was perceived as disabled by the Defendant.

Further, Defendant's reliance on Cameron v. Community Aid for Retarded Children, Inc. is misplaced. No where in the case does it hold that an employer's accommodation of a medical

7

condition does not constitute evidence of perceived disability as a rule. In <u>Cameron</u>, the employer, by plaintiff's own sworn testimony "didn't seem to care one way or the other" about her "anxiety attacks", and in fact promoted her. The court held that this was not evidence of perceived disability. The Defendant in this case demoted Kossoff, took duties away, denied her a salary increase and bonus, and then terminated her. Similarly, <u>Sullivan v. Neiman Marcus Group, Inc.</u>, the other case cited by Defendant, is also irrelevant. In <u>Sullivan</u>, the defendant terminated plaintiff, an alcoholic, because of job performance, in that it believed he was drinking on the job. The plaintiff failed to provide any evidence either that defendant's knowledge of his alcoholism itself played *any* part in his termination, and even if that were true, the defendant did not regard him as being disabled within the meaning of the ADA. The factual disparities in the cases render any authority in <u>Cameron</u> or <u>Sullivan</u> without merit.

In summary, Plaintiff has provided more than adequate evidence to demonstrate Defendant's violation of the ADA on the basis of actual disability, and its motion should be denied.

## CONTRACTS MANAGER POSITION

Defendant misstates the law in an attempt to provide a legitimate non-discriminatory reason for its denying Kossoff the position of Contracts Manager on the basis that the job description required paralegal training, a requirement Kossoff has alleged, and provided substantial evidence, was not needed. The United States Supreme Court held in <u>Griggs v. Duke Power Company</u>, 401 U.S. 424 (1971):

> "The touchstone (of a stated job requirement) is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited. ... Diplomas and tests are

8

useful servants, but Congress has mandated the commonsense proposition that they are not to become masters of reality" Griggs at 432-433.

The court specifically re-affirmed Griggs in 1988 in Watson v. Ft. Worth Bank and Trust, 487 U.S. 977, stating "(B)elieving that diplomas and tests could become 'masters of reality' ... the Court (in Griggs) concluded that such practices could not be defended simply on the basis of their facial neutrality or on the basis of the employer's lack of discriminatory intent" (Watson at 988).

Similarly, in Gonzalez v. City of New York, 135 F.Supp.2d 385 (E.D.N.Y. 2001), the plaintiff was a hospital emergency room physician, who was terminated on the basis that she was not "otherwise qualified" for the position because the job description required board-certification. Like with Kossoff, the plaintiff challenged that requirement as being discriminatory. The court stated:

> "To accept the Defendants' position (requiring board certification) would allow an employer to discriminate freely by simply choosing job requirements that allowed it to dispose of unwanted employees. Where the only reason that an employee was not "otherwise qualified" is the very condition which the plaintiff is challenging as discriminatory, the lack of that qualification cannot prevent the plaintiff from stating a prima facie case" Gonzalez at 402.

Similarly, Kossoff has alleged, and demonstrated, that she was qualified for, and successfully performed, the position of Contracts Manager, yet she was told by Edel she was not qualified because she lacked paralegal certification. The requirement of paralegal certification is not essential to the position, and in fact was put in place by Defendant with the specific discriminatory purpose of excluding her from the position, terminating her and hiring a younger, non-disabled person who was not more qualified.

The Defendant cites Thornley v. Penton Publishing, Inc., in an attempt to provide a

9

defense. The court in that case <u>actually</u> held "*(A)bsent a showing by the plaintiff that the employer's demands were made in bad faith* (internal citations omitted), an employer is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury" <u>Thornley</u> at 28, citing <u>Montana v. First Fed. Sav. and Loan Ass'n</u>, 869 F.2d 100, 106 (2d Cir. 1989).

Plaintiff's Reply to Defendant's Motion for Summary Judgment at pages 10-12 made an extensive showing of bad faith by the Defendant, including sworn testimony by two witnesses of Defendant as well as Ms. Kossoff (Plaintiff takes great exception of Defendant's claim that it "emasculates the record").

Other evidence of bad faith include:

1. According to Wright, it was *Kossoff* who gave her initial boundaries in negotiating (Wright at 57).

2. According to Edel, Kossoff could have persuaded him that she was qualified for the job (Edel at 113). According to Kossoff, Edel told her that she was no longer qualified, because paralegal training was essential (Kossoff at 180).

3. Plaintiff in particular provided evidence that the job was to replace Al Kolb, when in fact, it was to replace Kossoff as well.

Especially in light of the fact that this is a motion for summary judgment, and as such all facts must be read in a light most favorable to Plaintiff, this clearly is an issue of fact to be determined at trial.

## 2002 RAISE

Contrary to Defendant's reply, the claim (disproved by Plaintiff) that Kossoff was

overpaid for her position was not "a rationale for an adverse employment decision that, if factored in at all, was of secondary importance" (Defendant's reply at 6). It was only after the Commission on Human Right and Opportunities began their investigation of Kossoff's complaint of discrimination that this issue was raised as a reason for denying Kossoff the raise. Importantly, both parties to this matter have testified that the reason for the denial of raise was not the status of her position. Kossoff testified at deposition:

> "I finally again asked John (Edel) and he said basically that I was – there was some kind of analysis made of all the customer service people and I was the highest paid and I didn't deserve a raise because I was basically a high paid customer service person according to human resources and I would not be getting a raise" (Kossoff at 181).

> "I was told by John Edel through Jennifer Cherry that I was an overpaid high class clerk basically and that's why I wasn't getting a raise" (Kossoff at 187).

John Edel also cited this as the only reason for the decision not to give Kossoff a raise:

> Q. Did she (Kossoff) receive a raise in 2001?
> A. No, she didn't.
> Q. Why didn't she?
> A. She was at more than the top of her pay scale for the position she held (Edel at 13).

Edel testified for five pages regarding Kossoff allegedly being overpaid, yet the issue of the status of her job was *never* mentioned as a reason why she was not getting a raise.

Plaintiff previously provided evidence that Kossoff, along with two others, was in fact classified as a Contracts Manager along with two others and was mid-range between these two (Exhibit H in Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment. Rejection of the Defendant's proffered reasons can, together with the prima facie case, sufficiently establish unlawful discrimination St. Mary's Honor Center v. Hicks, 509 U.S. 502,

11

511.

Further, Plaintiff is not accusing Defendant merely of "doing wicked or even stupid thing", as implied by Defendant in its reply, in citing <u>Norton v. Sam's Club</u>. This is but one of many specific instances of disparate employment actions by Defendant as a result of its discriminatory actions.

With regard to other managers' salaries, Plaintiff specifically points to one manager - Christine Wright, a non age-protected, non disabled employee, who was paid a higher salary. And contrary to Defendant's statements, Kossoff specifically had been in a supervisory position. She originally directly managed at least four employees, and continued supervising until she was replaced by Wright (Kossoff at 71). While filling in for Wright, she supervised at least two employees (Kossoff at 217). It was only as a result of her discriminatory demotion that she was not acting as a supervisor. Defendant cannot use its own illegal and discriminatory actions as a defense. Further, as detailed in Plaintiff's reply to Defendant's motion, Cherry admitted that at the time Defendant failed to compare Kossoff to Managers for the purposes of determining salary increase eligibility, Kossoff was indeed a Manager (Cherry at 124).

## 2001 BONUS

Plaintiff stands by its prior argument with regard to the payment received by Plaintiff in 2002. The evidence clearly shows that she was not paid a VIC bonus. Further, contrary to the statement made by Defendant on page 7 of its reply, the claim is not that Wright received a higher VIC bonus, but that Kossoff did not receive *any* VIC bonus, although it was earned. This continued misstatement of facts by Defendant should be noted when assessing credibility in this motion.

12

## TERMINATION OF EMPLOYMENT

In its Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff showed numerous specific facts supporting her allegation that her termination was illegal and discriminatory. Defendant's claim that these arguments are "wholly speculative" are untrue, and not supported by any legal authority. The determination of whether employer's proffered explanation for Kossoff's termination are illegal clearly is a factual issue. If the job was designed to be temporary at the time she was demoted, told she was not qualified, and a younger non-disabled person was hired to basically do her job, then certainly this is irrelevant.

With regard to the affidavit of Bill Duffek, Defendant's assertion that Kossoff did not deny the content of his affidavit is misplaced. She did not admit the content of the affidavit was true. This is a blatant attempt to twist facts. Further, it is not "clear" that the deficiencies in the document are a "scrivener's error", as Defendant alleges. The affidavit was defective on its face - it was both *post*-dated and *pre*-dated, and therefore should be denied any evidentiary value at this stage in the process.

Defendant then points to an affidavit by Cherry, stating that assistance was only provided for the first group of layoffs. No affidavit of Cherry was provided with either defendant's motion or its reply, so plaintiff cannot fairly address these claims. However, at deposition, Cherry testified that no one had been given assistance (Cherry at 146), which indicates she is trying to make a *post hoc* justification for helping younger, non-disabled persons find GE positions, but not Ms. Kossoff. As such, Defendant has provided no defense for its illegal termination of Ms. Kossoff.

13

## COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff is at a loss to properly access Defendant's position with regard to its misuse of the RESOLVE program. Defendant attempted to prevent the Commission on Human Rights and Opportunities (CHRO) from conducting its investigation of Kossoff's discrimination complaint on the basis that the Resolve process had not been undertaken (Exhibit M of Plaintiff's reply to motion), stating it was mandatory to exhaust this remedy before the CHRO investigation could continue. Defendant now admits the plan was not mandatory, although at deposition, Cherry, who was answering on behalf of Defendant, and also had been Manager of Human Resources, could not state whether in fact the plan *was* mandatory for Kossoff (Cherry at 13, 14). As such, Defendant had no "rights" as it claims in its reply, and so its reliance on Neptune Group, Inc. v. MKT, Inc. is entirely without merit.

## FRAUD/NEGLIGENT MISREPRESENTATION

Once again, Defendant attempts to torture the facts. Plaintiff stands by its arguments in its reply to the motion. Plaintiff does not deny that paralegal training was a stated requirement for the position of Manager of Contracts - rather that such training was not an actual requirement to perform the position. Plaintiff detailed in its reply how such training was not required. This very fact is the misrepresentation alleged by Plaintiff.

WHEREFORE, Plaintiff respectfully requests that Defendant's motion be denied in its entirety, together with such other and further relief as to this Court may deem just and proper.

Respectfully submitted,
PAES & PAES, LLC - Attorney for Plaintiff
4 Washington Avenue
Sandy Hook, CT 06482
203-270-6441

By: _____
MICHAEL T. PAES - Federal Bar No. CT19303

14

CERTIFICATION - This is to certify that a copy of this motion for leave to amend and sur-reply brief was sent, via first class mail, postage prepaid, on this date, to Attorney Lawrence Peickes, Wiggin & Dana, LLP, 400 Atlantic Street, PO Box 110325, Stamford, CT 06911-0325.

                                          MICHAEL T. PAES, ESQ.