# EXHIBIT C

COPY

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------X
JOAN KOSSOFF,

        Plaintiff,

Vs.                Civil Action No.
                   3:03CV00203(PCD)

GENERAL ELECTRIC CAPITAL CORPORATION,

        Defendant.
------------------------------------------X

    DATE:   January 27, 2004
    TIME:   10:00 a.m.
    PLACE:  4 Washington Avenue
           Sandy Hook, Connecticut

**DEPOSITION OF JENNIFER CHERRY**,
a witness on behalf of the Defendant, General Electric Capital Corporation, held pursuant to Notice, before Joanna P. Mastrantuono, Registered Professional Reporter and Notary Public in and for the State of Connecticut.

---

GREATER DANBURY COURT REPORTERS
100 Mill Plain Road; P.O. Box 354
Danbury, Connecticut 06810
(203) 792-9695/FAX(203) 798-0725

```
                            JENNIFER CHERRY                          13
```

2  that's what they should be using.
3  Q. Does the policy say that the Resolve program is
4     mandatory?
5  A. I don't believe it does. I would have to read
6     the document again to know for sure.
7  Q. Is it mandatory for an employee to use the
8     Resolve program if they have a dispute?
9  A. If they signed the acknowledgment after the
10    program was rolled out, I believe it is
11    mandatory. But I am not sure for employees who
12    were already on payroll at the time whether or
13    not it was mandatory. If they changed jobs, if
14    they transferred, they would sign a new offer
15    letter for that new job and sign an
16    acknowledgment. But someone who stayed in their
17    current role since the program was rolled out,
18    I'm not sure if it is or isn't.
19 Q. Did Joan Kossoff ever sign this form that you
20    are talking about?
21 A. No, because she was an existing employee.
22 Q. So, therefore, was it mandatory for her to use
23    the Resolve program?
24 A. As I said, I'm not sure if an employee who's
25    already on payroll, who didn't have to sign the

```
                                                        14
 1                   JENNIFER CHERRY
 2           documents, I don't know if it was mandatory.
 3   Q.      Who would know?
 4   A.      Probably Sarah Gorman.
 5   Q.      And who is Sarah Gorman?
 6   A.      She's the chief employment counsel for GE
 7           Commercial Finance and has some oversite over
 8           the Resolve program for our business.
 9   Q.      Other than this attorney, is there anyone at GE
10           who would know whether or not it was essential
11           for Ms. Kossoff to use this program?
12   A.      I'm sure there are other people, but I don't
13           know -- I wouldn't know what names to give you
14           at this moment.
15   Q.      But you, yourself, are not aware?
16   A.      Correct.
17   Q.      Out of curiosity, does GE have any specific
18           policy to determine what documents are kept in
19           an employee personnel file?
20   A.      There are guidelines, yes.
21   Q.      Are these guidelines written down anywhere?
22   A.      I believe I've seen them on a compliance website
23           in the past, but I haven't seen anything
24           recently to know if it was perhaps revised.
25   Q.      Are you personally aware of what that policy is?
```

JENNIFER CHERRY

| | | |
|---|---|---|
| 2 | | salary of an approximately $30,000 incorrect? |
| 3 | A. | That's why we use the word approximately, not exactly. |
| 4 | Q. | Want to get an average? |
| 5 | | MR. PEIKES: What are you asking her to calculate? |
| 7 | Q. | I'm asking her to calculate what the average is. |
| 8 | | MR. PEIKES: Of? |
| 10 | A. | Of the PARS? |
| 11 | Q. | Of the PARS. |
| 12 | A. | (Witness using calculator.) |
| 13 | Q. | What's the number? |
| 14 | A. | 30,714.29. |
| 15 | Q. | Really? Does it look like it should be that? |
| 16 | A. | You asked me to average the PARS. |
| 17 | Q. | This entire list. |
| 18 | A. | That's not what you said, you said the PARS. |
| 19 | Q. | Your attorney represented that this was an entire spreadsheet of all the PARS. |
| 21 | A. | All the PARS are contained within the spreadsheet, and that is what I averaged. |
| 23 | Q. | Then Ms. Kossoff was not a PAR, was she? |
| 24 | A. | She was not titled a PAR. |
| 25 | Q. | She was titled a contracts manager, according to |

GREATER DANBURY COURT REPORTERS/792-9695

142
JENNIFER CHERRY

transitioned over to me from another HR manager. Let's see. At that time, I can't say with a hundred percent certainty, but I think also at that time I supported the northeast region, the mid-Atlantic region, and I may have supported CAF east; I may have supported the dealer finance group, and the Tildon organization.

Q. Is this your handwriting?
A. Yes.

(Plaintiff's Ex. 9C - GE000123 DOCUMENT.

marked for identification.)

Q. This appears to document to some extent Christine Wright's hiring; is that correct?
A. It looks like some notes I took based on a conversation with John Edel.
Q. And who said it was like a combo of Al and Joan's job?
A. I would presume John.
Q. Was that on the posting?
A. Those exact words?
Q. Well, there's a line that says, who is this person replacing, who is this guy replacing.

GREATER DANBURY COURT REPORTERS/792-9695

```
                    JENNIFER CHERRY                    143
```

2   Was Joan's name there?

3  A.   No.

4  Q.   But it did replace Joan's job, didn't it?

5  A.   It replaced some of what Joan had been doing.

6  Q.   Was Joan ever told that her job was temporary?

7  A.   What job?

8  Q.   Her job as a super PAR.

9  A.   No, because it wasn't.

10 Q.   Her job as a super PAR lasted for approximately two years; is that correct?

12 A.   Approximately.

13 Q.   Was that planned?

14 A.   Was what planned?

15 Q.   That her job would only last about two years?

16 A.   No. We had no idea at the time that the work would be transitioned to St. Louis. And John and I had no involvement in that decision either.

            MS. PAES:  Can we take a break for a second?

            (Pause in proceedings.)

            (Plaintiff's Ex. 10C - HANDWRITTEN DOCUMENT

            marked for identification.)

        GREATER DANBURY COURT REPORTERS/792-9695

144
JENNIFER CHERRY

| | | |
|---|---|---|
| 1 | | |
| 2 | | BY MS. PAES: |
| 3 | Q. | In front of you is a document that's stamped |
| 4 | | GE00052. Is that your handwriting? |
| 5 | A. | Yes. |
| 6 | Q. | See the fourth bullet point? Does that say two |
| 7 | | years? |
| 8 | A. | It says two years question mark, was intended to |
| 9 | | manage document specialists. I don't know what |
| 10 | | these notes are now. |
| 11 | Q. | This is a document Bate stamped GE 00050. |
| 12 | | (Plaintiff's Ex. 11C - GE00050. |
| 13 | | DOCUMENT marked for |
| 14 | | identification.) |
| 15 | Q. | Is that your handwriting? |
| 16 | A. | Yup. |
| 17 | Q. | Who is Marcy? |
| 18 | A. | Marcy Raymond, I believe. |
| 19 | Q. | Weren't you supposed to assign Marcy to create a |
| 20 | | new job description? |
| 21 | A. | No. |
| 22 | Q. | Who was supposed to create the new job |
| 23 | | description? |
| 24 | A. | We didn't have anyone create a job description. |
| 25 | Q. | Was she supposed to? |

GREATER DANBURY COURT REPORTERS/792-9695

146

1       JENNIFER CHERRY
2       there was no need for a stay bonus.
3   Q.  Did they get VIC checks?
4   A.  Those that were --
5   Q.  Those that were eligible?
6   A.  If they were eligible, and they had earned
7       variable compensation, I presume so, but I would
8       have to look at the list of the employees and
9       check one by one.
10  Q.  Did anybody get stay bonuses and VIC bonuses?
11  A.  Possibly. I don't know without looking at them
12      specifically.
13  Q.  Did Ms. Kossoff ever get information about open
14      GE and GE Capital positions?
15  A.  That was always accessible to her through our
16      online posting system.
17  Q.  Did HR prepare a package for Joan Kossoff about
18      open GE and GE Capital positions?
19  A.  No. We don't do that as a matter of course.
20  Q.  Did you do that for other employees?
21  A.  No.
22              (Plaintiff's Ex. 12C - GE000119
23              THROUGH GE000121 DOCUMENT.
24              marked for identification.)
25  Q.  You will see in front of you GE000119 through

GREATER DANBURY COURT REPORTERS/792-9695

# EXHIBIT
# D

COPY

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------X
JOAN KOSSOFF,

               Plaintiff,

                                   Civil Action No.
Vs.                              3:03CV00203(PCD)

GENERAL ELECTRIC CAPITAL CORPORATION,

               Defendant.
------------------------------------------X

       DATE:     January 30, 2004
       TIME:     10:30 a.m.
       PLACE:    4 Washington Avenue
                    Sandy Hook, Connecticut


**DEPOSITION OF CHRISTINE WRIGHT,**

a witness on behalf of the Defendant, General Electric Capital Corporation, held pursuant to Notice, before Joanna P. Mastrantuono, Registered Professional Reporter and Notary Public in and for the State of Connecticut.

------------------------------------------
GREATER DANBURY COURT REPORTERS
100 Mill Plain Road; P.O. Box 354
Danbury, Connecticut  06810
(203) 792-9695/FAX(203) 798-0725

CHRISTINE WRIGHT 57

2  Q. How about the information data base? Did Ms.
3     Kossoff speak to you about that?
4  A. I don't know if the information data base is the
5     same as the PMS system that I had mentioned
6     earlier. I don't know what the information data
7     base is.
8  Q. Were you ever asked to give any legal opinions
9     while working for GE?
10            MR. PEIKES: Objection to the
11    form.
12 A. No.
13 Q. But you negotiate legal issues?
14 A. Yes.
15 Q. Would that not require making a legal opinion?
16            MR. PEIKES: Objection to the
17    form.
18 A. I wasn't forming a legal opinion. I know what
19    the boundaries were given to me by Joan and what
20    I learned over time, knowing what the boundaries
21    were when negotiating certain areas in a
22    document.
23 Q. You earlier testified that you did not need
24    approval from anyone in negotiating legal
25    issues; is that correct?

GREATER DANBURY COURT REPORTERS/792-9695