UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| JOAN KOSSOFF, | |
| Plaintiff, | Civil Action No. 3:03CV00203 (PCD) |
| v. | |
| GENERAL ELECTRIC CAPITAL CORPORATION, | MAY 18, 2004 |
| Defendant. | |

---

### NOTICE OF INTERVENING AUTHORITY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion for summary judgment is presently pending before the Court in the above-captioned employment discrimination suit. On May 13, 2004, several weeks after the summary judgment motion was fully briefed and submitted, the Second Circuit issued its decision in Williams v. R.H. Donnelley Corp., __ F.3d __, 2004 WL 1067939 (2d Cir. May 13, 2004). The Williams decision, summarized below, further confirms there is no legal merit to plaintiff's claim that she was unlawfully denied appointment to the position of Contracts Manager on account of her age or alleged disability.

As discussed at length in the memoranda of law previously submitted by defendant, among the stated qualifications for the Contracts Manager job was paralegal training and experience. Plaintiff concededly lacks these qualifications, but avers that she was nevertheless fully capable of performing the tasks of a Contracts Manager. It is plaintiff's contention that paralegal training and experience were not truly required in order to effectively serve in the role of Contracts Manager and, she argues, a jury should have the final word as to whether the qualifications set by defendant were job-related.

Williams reiterates, however, that, per Thornley v. Penton Publishing, Inc., 104 F.3d 26 (2d Cir. 1997), "in order to prove a prima facie case of discrimination, [plaintiff] must show that she met the *defendant's criteria* for the position." Williams, at *3 (Emphasis added). As in the matter *sub judice*, the plaintiff in Williams acknowledged she was unable to satisfy the experience requirements established by the employer as a basic qualification for the job in question (Account Manager). In an effort to sidestep this obstacle, Ms. Williams alleged that R.H. Donnelley Corp. had "previously interpreted the requirements for the Account Manager position loosely, and consequently, interviewed candidates without the required experience." Id. The undisputed evidence of record revealed, though, that the lone comparator identified by plaintiff did, in fact, possess the requisite experience and proven track record demanded by R.H. Donnelley, leading the Second Circuit to conclude that: "Thus, Donnelley's decision to interview Allan, rather than Williams, for the position does not suggest that Donnelley relaxed the qualifications necessary for the Account Manager position. Williams simply failed to show that she was qualified for the Account Manager position, therefore this claim fails." Id.

Here, as detailed in defendant's summary judgment papers, there is no evidence that GE Capital relaxed the requirement of paralegal training and experience for applicants outside the pertinent protected classes. Indeed, not only is it undisputed that the successful candidate had worked for several years as a paralegal both in-house and with law firms, but it is likewise undisputed that every applicant interviewed for the position met the paralegal training and experience requirements set forth in the job posting. To paraphrase the Williams decision, "[plaintiff] has not proffered any evidence demonstrating that [GE Capital] ever disregarded this requirement [of paralegal training and experience] as to other applicants. Thus, this claim fails

because [plaintiff] has not established her qualifications for the [Contracts Manager] position." Id. at *5 (Citation omitted).

For the Court's convenience, a copy of the Second Circuit's recently issued decision in Williams v. R.H. Donnelley Corp. is annexed hereto at Tab A.

                              Respectfully submitted,

                              Wiggin and Dana LLP
                              400 Atlantic Street
                              P.O. Box 110325
                              Stamford, CT  06911-0325
                              (203) 363-7600
                              (203) 363-7676 (fax)

By: _____
                              Lawrence Peikes (ct 07913)
                              lpeikes@wiggin.com

Attorneys for Defendant
GENERAL ELECTRIC CAPITAL CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Notice of Intervening Authority in Further Support of Defendant's Motion for Summary Judgment was served on this 18th day of May, 2004, by first-class U.S. mail, postage prepaid, on:

> Michael T. Paes, Esq.
> Fern H. Paes, Esq.
> Paes & Paes, LLC
> 4 Washington Avenue
> Sandy Hook, CT 06482

_____
Lawrence Peikes

\2542\7\87138.1

Westlaw.

2004 WL 1067939      Page 1
--- F.3d ---
(Cite as: 2004 WL 1067939 (2nd Cir.(N.Y.)))

H
Only the Westlaw citation is currently available.

United States Court of Appeals,
Second Circuit.

Charlina WILLIAMS, Plaintiff-Appellant,
v.
R.H. DONNELLEY, CORP., Defendant-Appellee.

No. 02-7681.

Argued: Feb. 3, 2004.
Decided: May 13, 2004.

**Background:** African-American former employee brought Title VII action against employer. The United States District Court for the Southern District of New York, Conner, J., 199 F.Supp.2d 172, granted employer's motion for summary judgment, and employee appealed.

**Holdings:** The Court of Appeals, Sotomayor, Circuit Judge, held that:
(1) employee failed to establish that she was qualified for the position of account manager, as required for failure to promote claim;
(2) employer's refusal to create a management position for the employee was not motivated by discriminatory animus; and
(3) employer's refusal to transfer employee to an account executive position at a different office did not constitute an adverse employment action.

Affirmed.

**[1] Federal Civil Procedure** ⌾0

170Ak0 k.

For purposes of employee's Title VII action against employer, employee was not entitled to an extension of discovery in order to substantiate a former employee's allegations of a pattern of race and sex discrimination in employer's hiring practices, where employee learned of the former employee's allegations during the original discovery period but did not obtain such discovery at that time, and failed to file an affidavit explaining the need for additional discovery. Civil Rights Act of 1964, § 703, as amended, 42 U.S.C.A. § 2000e-2(a)(1); Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.;.

**[2] Civil Rights** ⌾0
78k0 k.

African-American former employee failed to establish that she was qualified for the position of account manager, as required for employee's Title VII failure to promote claim against employer. Civil Rights Act of 1964, § 703, as amended, 42 U.S.C.A. § 2000e-2.

**[3] Civil Rights** ⌾0
78k0 k.

African-American employee failed to establish that employer's refusal to create a management position for the employee at the employee's office of choice was motivated by discriminatory animus, as required for employee's Title VII claim alleging that a position was not created for her on the basis of employee's race and sex; in fact, employee failed to show that employer had ever created a position for an employee, white or otherwise, who sought a transfer for purely personal reasons. Civil Rights Act of 1964, § 703, as amended, 42 U.S.C.A. § 2000e-2.

**[4] Civil Rights** ⌾0
78k0 k.

Employer's refusal to transfer African-American employee to an account executive position at a different office did not constitute an adverse employment action, as required for employee's claim under Title VII; the account executive position actually paid less than, and organizationally was a demotion from, the position

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1067939
--- F.3d ---
(Cite as: 2004 WL 1067939 (2nd Cir.(N.Y.)))

Page 2

the employee held at that time she requested the transfer. Civil Rights Act of 1964, § 703, as amended, 42 U.S.C.A. § 2000e-2.

**[5] Civil Rights** 🗝0
78k0 k.

African-American employee was unqualified for promotion, as required to support employee's Title VII failure to promote claim; although employee may have possessed the necessary skills and experience for the position, employee was on indefinite disability leave at the time the position became vacant. Civil Rights Act of 1964, § 703, as amended, 42 U.S.C.A. § 2000e-2.

Plaintiff-appellant Charlina Williams appeals from a decision of the United States District Court for the Southern District of New York (Conner, J.), granting summary judgment to her employer, R.H. Donnelley Corporation, on her Title VII employment discrimination claims. Williams alleges that Donnelley discriminated against her on the basis of race and sex in denying her various promotions, denying her a lateral transfer, and refusing to create a management position for her. We hold that Williams failed to establish a prima facie case of discrimination on any of her claims.

Affirmed.

Leonard Buddington, Jr., Yonkers, NY, for plaintiff-appellant.

James S. Urban, Jones, Day, Reavis & Pogue (Amy E. Dias, on the brief), Pittsburgh, PA, for defendant-appellee.

Before: POOLER, SOTOMAYOR, and WESLEY, Circuit Judges.

SOTOMAYOR, Circuit J.

*1 Plaintiff-appellant Charlina Williams ("Williams") appeals from a judgment of the United States District Court for the Southern District of New York (Conner, J.), granting summary judgment to her employer, R.H. Donnelley Corporation ("Donnelley"), on her claims, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000, et seq. (2000) ("Title VII"). See Williams v. R.H. Donnelley Inc., 199 F.Supp.2d 172 (S.D.N.Y.2002). Williams, an African-American woman, alleges that Donnelley discriminated against her on the basis of race and sex by not promoting her to the positions of Account Manager, District Sales Manager II ("DSM II"), and District Sales Manager III ("DSM III"). Williams further alleges that Donnelley discriminated against her on the basis of race and sex by denying her a lateral transfer and refusing to create a management position for her. We hold that (1) Williams failed to establish that she was qualified for the Account Manager and DSM III positions she sought; (2) Williams failed to prove that Donnelley's failure to create a management position for her in its Las Vegas office was motivated by discriminatory animus; (3) the denial of a transfer to an equal or lesser position in a different locale does not constitute an adverse employment action; and (4) Williams' indefinite disability leave of absence rendered her unqualified for the DSM II position that became available during her absence.

BACKGROUND

Williams was hired by Donnelley, a company that publishes telephone directories, in May 1996, as an entry-level New Business Development Representative in Donnelley's Las Vegas office. Thereafter, between 1998 and 1999, Williams was promoted several times: first, in January 1998, to Account Executive within the business development unit; second, in July 1998, to full Account Executive; and finally, in January 1999, to Sales Training Manager ("STM"). Williams' voluntary acceptance of the STM position required her to relocate to Purchase, New York, where Donnelley's sales training department is located.

After working as an STM in New York for approximately ten months, Williams sought to return to Las Vegas, where she still maintained a home, and where Donnelley permitted her to work as an STM one week out of every month. On October 18, 1999, Williams applied for an Account Manager position in Donnelley's Las Vegas office. The Account Manager position, however, required two to three years of proven performance working with medium to large accounts with minimum monthly billings of $1,800, Williams concedes she did not have this experience. Williams alternatively

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

requested that, if she were found unqualified for the Account Manager position, Donnelley create a new management position for her in the Las Vegas office. Approximately two months later, in December 1999, Donnelley denied her application for the Account Manager position and offered the position to another woman. Donnelley also refused Williams' request that a management position be created for her in the Las Vegas office. On December 21, 1999, Williams requested to be transferred to Las Vegas as an Account Executive, the position she had held before being promoted to STM. Donelley denied this request as well. In January 2000, Donnelley advertised a vacant DSM III position in its Las Vegas office. Williams inquired about the DSM III position, even though she did not have the requisite two years of experience as a DSM II.

*2 Donnelley rejected Williams's application and, in February 2000, gave the DSM III position to an African-American male, who up to that time held a DSM II position. Two days before that employee's promotion took effect, Williams, on the advice of her physician, requested an indefinite disability leave of absence until her medical condition stabilized. Donnelley thereafter, without soliciting applications, filled the newly vacated DSM II position with a white male. Williams remained on disability leave until July 2000, when Donnelley offered her the choice of two Account Executive positions in Las Vegas. In September 2000, Williams resigned from Donnelley.

Williams initiated this suit on January 5, 2001, "alleging that defendant's failure to promote her to the Account Manager and DSM III positions and to create an Account Manager position in Las Vegas was the result of race and sex discrimination." *Williams*, 199 F.Supp.2d at 175. Williams further alleged that Donnelley's failure to grant her request for a lateral transfer to the Account Executive position in Las Vegas, or to consider her for a promotion to the DSM II position, was discriminatory. *Id.*

The district court granted summary judgment in Donnelley's favor on all claims. The court found that Williams did not establish that she was qualified for any of the promotions she sought, and that the denial of her requests for a lateral transfer and the creation of a new position did not constitute adverse employment actions in violation of Title VII. *Id.* at 177-79. This appeal followed.

DISCUSSION
A. Standard of Review

[1] Williams argues that the district court erred in granting summary judgment in favor of Donnelley on her race and sex discrimination claims. [FN1] We review a district court's grant of summary judgment *de novo*. *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace,* 352 F.3d at 780.

B. Statutory Scheme

Under Title VII, an employer may not discriminate against an individual "with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2000). "In an employment discrimination case, a plaintiff has the burden at the outset to prove by the preponderance of the evidence a prima facie case of discrimination." *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002) (citation and internal quotation marks omitted).

*3 To meet her initial burden of establishing a prima facie case of discrimination, Williams must demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Abdu-Brisson v.. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001). Although, "[a] plaintiff's burden of establishing a *prima facie* case is *de minimis*,"

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1067939  
--- F.3d ---  
(Cite as: 2004 WL 1067939 (2nd Cir.(N.Y.)))

Page 4

*Abdu-Brisson,* 239 F.3d at 467 (internal quotation marks omitted), a Title VII plaintiff's claims nevertheless fail if she cannot make out a prima facie case of discrimination. *See Mc Donnell Douglas,* 411 U.S. at 802.

Because she is an African-American female, Williams satisfies the first prong of the prima facie case for each of her claims. She fails, however, to establish the remaining elements. We address each of her claims in turn.

C. Failure to Promote to Account Manager

Having established that she is a member of a protected class, Williams must establish that she was qualified for the Account Manager position. As Williams correctly notes, the plaintiff's burden of establishing a prima facie case of disparate treatment is "neither onerous, nor intended to be rigid, mechanized or ritualistic." *Abdu-Brisson,* 239 F.3d at 467 (internal citations and quotation marks omitted). Nevertheless, this burden is not inconsequential. We have held that "being 'qualified' refers to the criteria the employer has specified for the position." *Thornley v.. Penton Publ'g, Inc.,* 104 F.3d 26, 29 (2d Cir.1997). Therefore, in order to establish a prima facie case of discrimination, Williams must show that she met the defendant's criteria for the position.

[2] By her own admission, Williams "may not have been qualified" for the Account Manager position, because she did not possess the two to three years of proven performance working with medium to large accounts required for that position. Williams, however, argues that Donnelly previously interpreted the requirements for the Account Manager position loosely, and consequently, interviewed candidates without the required experience. In support of her claims, Williams asserts that Scott Allan, a white male applicant for the Account Manager position, had qualifications similar to hers, but was granted an opportunity to interview for the position. It is undisputed, however, that Allan, unlike Williams, had two to three years experience in sales, and "ranked in the top third" of his peer group in sales. Thus, Donnelley's decision to interview Allan, rather than Williams, for the position does not suggest that Donnelley relaxed the qualifications necessary for the Account Manager position. Williams simply failed to show that she was qualified for the Account Manager position, therefore this claim fails.

D. Failure to Create a Management Position

*4 Williams also contends that Donnelley's refusal to create a management position for her was discriminatory. Again, Williams has failed to establish the required elements of a prima facie case. As a threshold matter, Williams presented no evidence suggesting that Donnelley intended at that time to create a management position in the Las Vegas office or that its failure to create a management position for her in Las Vegas was discriminatory.

[3] Williams alleged that Donnelley appointed a white male to a management position in the Las Vegas office several months later, and that two white males were appointed to District Manager positions in the Las Vegas office in 1999. These allegations, however, do not support Williams' argument that Donnelley's refusal to create a management position for her in the Las Vegas office was motivated by discriminatory intent. There is no indication that any of the later-filled positions were created for the appointed white employees. Indeed, the record evidence suggests only that the Las Vegas District Manager positions were vacant, and Donnelley filled the vacancies with qualified employees. Thus, these appointments do not raise an inference of discrimination with respect to Donnelley's failure to create a management position for Williams in the Las Vegas office. In fact, Williams has not shown that Donnelley has ever created a position for an employee--white or otherwise--who sought a transfer for purely personal reasons.

Because Williams has not proffered evidence sufficient to support the inference that Donnelley's refusal to create a management position for her in Las Vegas was motivated by discriminatory animus, this claim also fails.

E. Failure to Transfer to Account Executive

[4] Williams further claims that Donnelley discriminated against her on the basis of sex and race because it refused to transfer her to an Account Executive position in Las Vegas. This claim is unavailing because Williams has failed to establish

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1067939                                                                                                    Page 5
--- F.3d ---
(Cite as: 2004 WL 1067939 (2nd Cir.(N.Y.)))

that this inaction constituted an adverse employment action, as required under the third prong of the Title VII prima facie case. *See McDonnell Douglas,* 411 U.S. at 802.

Employment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (ellipsis in original) (citations omitted). As these examples suggest, "[t]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation and internal quotation marks omitted). Moreover, we have held that an involuntary transfer may constitute an adverse employment action if the plaintiff "show[s] that the transfer created a materially significant disadvantage" with respect to the terms of her employment. *Id.* at 641 (citation and internal quotation marks omitted). Unlike *Galabya,* which concerned an involuntary transfer of an employee, Williams claims that she suffered an adverse employment action by being denied a request for a transfer. Williams thus must establish that Donnelley's *denial* of her request for a transfer created a materially significant disadvantage in her working conditions. Williams has failed to meet this burden.

*5 As the Tenth Circuit has noted, "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action ." *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532-33 n. 6 (10th Cir.1998). Here, the record suggests that, if anything, Williams would have suffered an adverse employment action if she *had* been transferred to the Account Executive position. Donnelley avers, and Williams does not dispute, that the Account Executive position actually paid less than, and organizationally was a demotion from, the STM position she held when she requested the transfer. Clearly, an employer's denial of a transfer request that would have resulted in a reduction in pay and the employee's demotion within the organization, without more, does not constitute an adverse employment action.

Williams' contention that the denial of her transfer request constituted an adverse employment action arises from the fact that she wished to return to Las Vegas, where she still maintained a home. Such subjective, personal disappointments do not meet the objective indicia of an adverse employment action. *Galabya,* 202 F.3d at 640.

Because she has failed to meet her burden of establishing a materially adverse change in her employment status, Williams cannot maintain a claim based on Donnelley's refusal to transfer her.

E. Failure to Promote to DSM III

Williams also claims that she was denied a promotion to the DSM III position. This claim fails, as Williams, by her own admission, was unqualified for that position. The DSM III position required two years of experience as a DSM II, a position Williams never held. Williams has not proffered any evidence demonstrating that Donnelley ever disregarded this requirement as to other applicants. Thus, this claim fails because Williams has not established her qualifications for the DSM III position. *See McDonnell Douglas,* 411 U.S. at 802.

F. Failure to Promote to DSM II

Finally, Williams argues that Donnelley discriminated against her by denying her a promotion to the DSM II position. This claim also fails because Williams has not established that she was qualified and available for this position.

Although Williams does not dispute that she never applied for the DSM II position, we have held that if an employee expresses to the employer an interest in promotion to a particular class of positions, that general expression of interest may satisfy the requirement that the employee apply for the position. *See Mauro v. S. New England Telecomms., Inc.,* 208 F.3d 384, 387 (2d Cir.2000) (finding application requirement satisfied by employee's general expression of interest in a class of positions where employee "was unaware of specific available positions because the employer

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1067939                                                                 Page 6
--- F.3d ---
(Cite as: 2004 WL 1067939 (2nd Cir.(N.Y.)))

never posted them"). Here, Williams' multiple requests for promotions and transfers clearly indicated her desire to be transferred to an available position in the Las Vegas office. Williams also alleges that Donnelley did not advertise the DSM II position, as was customary in the company. Donnelley has proffered no evidence contradicting this allegation. [FN2] Accordingly, we find that a formal application would have been futile, and that Williams' general expression of interest in a position in Donnelley's Las Vegas office satisfies the application requirement.

*6 Although Donnelley does not challenge Williams' contention that she possessed the necessary skills and experience for the DSM II position, it argues that she was nonetheless unqualified for the position because she was on indefinite disability leave at the time the position became vacant, and thus was not available to assume the DSM II.

[5] We need not address the question of whether any disability absence from the workplace automatically disqualifies an employee from consideration for an available position; instead, we confine our discussion to the facts of the instant case. In addition to possessing the skills and experience necessary for a position, an applicant must be available to assume an open position by the date an employer designates as necessary. Where, as here, the applicant has taken an indefinite leave of absence, and has given no indication of when she will return to the workplace, she need not be considered available to fill a position for which there is an immediate need, and will be deemed unqualified. Because she was unavailable to assume the vacant DSM II position within any specified time, Williams failed to establish a prima facie case of discrimination for this failure to promote claim.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FN1. Williams also appeals the district court's denial of her third request to extend discovery, in order to substantiate a former employee's allegations of a pattern of race and sex discrimination in Donnelley's hiring practices. "A district court's denial of more time to conduct discovery pursuant to Rule 56(f) is subject to reversal only if [the court] abused its discretion." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137 (2d Cir.1994) (citations omitted). Here, no abuse of discretion occurred because Williams learned of the former employee's allegations during the original discovery period, but did not obtain such discovery at that time. Moreover, Williams failed to file an affidavit explaining the need for additional discovery, as required by Rule 56(f), *Williams,* 199 F.Supp.2d at 179, which "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners,* 34 F.3d at 1137 (citations omitted). Accordingly, the district court was well within its discretion in refusing Williams's request.

FN2. Although there is some evidence that months before the DSM II position became vacant, Williams' colleagues informed her that Donnelley was "groom[ing]" another individual for a DSM II position, our review of the record reveals no evidence establishing that Williams actually knew of the DSM II vacancy.

2004 WL 1067939 (2nd Cir.(N.Y.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works