UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

---

JOAN KOSSOFF,

                                            Civ. Action No. 3:03CV00203(PCD)

      Plaintiff,

  v.

GENERAL ELECTRIC CAPITAL CORPORATION,    2/25/05

      Defendant.

---

### MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

Plaintiff respectfully requests that this Court consider the following factors in reconsidering Defendant's motion to dismiss. Plaintiff submits that the Court did not consider all the evidence before it. We address the issues in the order raised in the Court's Ruling, after discussing the facts not considered.

### STANDARD OF REVIEW

As the court cited in its decision, a Defendant is entitled to summary judgment only when it can "point to an absence of evidence to support an essential element of the nonmoving party's claim." Legg v. Dellavolpe, 228 F.Supp. 2d 51, 56 (D. Conn. 2002). All ambiguities must be resolved and all reasonable inferences are drawn against the moving party." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). In its decision, the Court accepted mere allegations of fact by the Defendant, and accepted it despite evidence by Plaintiff which contradicted it.

Defendant claimed that its decision to "eliminate" Kossoff's position as Director of Contracts and assign her a position with less managerial duties was not a demotion. The Court ignores the fact that Defendant soon after, created the position of Manager of Contracts with essentially the same duties, including supervising several employees as Kossoff did in her capacity as Director. (Plaintiff's Memorandum dated 3/22/04 Exhibit O, Edel at 20, Exhibit N, Kossoff at 226-7)

Defendant falsely claims that paralegal experience was essential for this position, yet ignored the fact that Defendant admitted that the position could be done without this qualification, and stated that the only change between the positions was to negotiate contracts. It should be noted that the court also mistakenly alleged that Kossoff had no direct reports when Wright was hired in the position of Contract Manager - "When Christine came on... I still had direct reports. I had Sabrina and Vicky and I was told once she [Christine] was comfortable with her new position and I trained her, then they would report to her." (Defendant's Exhibit A, Kossoff deposition at 107 and 108) Kossoff testified at deposition that she had negotiated contracts in her prior position (Plaintiff's Memorandum 3/22/04 Exhibit N Kossoff at 123), and Defendant admitted at deposition that Kossoff performed these duties while Wright, her replacement, was out on maternity leave. Plaintiff submits that this was an artificial qualification devised with the express intent of preventing Kossoff for consideration for the position.

It is Plaintiff's contention that when Defendant removed her from the position of Director of Contracts, that position was intended only as a temporary two-year job, but it told her otherwise in order to convince her take that position and not apply for the Contract Manager position (Exhibit P of Plaintiff's Memorandum 3/22/04 Exhibit P, Cherry at 143, 144, Exhibit E ,

wherein Kossoff's name appears at the top and underneath is a bullet point "two years"). Kossoff testified that she repeatedly asked Edel if her job was in jeopardy, but was told it was not (Plaintiff's Memorandum 3/22/04, Exhibit N Kossoff at 47).

Although Defendant claimed the reason it took away Kossoff's ability to telecommute was that it did not know if she was really working, Edel admitted at deposition that it had no basis for this concern. (Plaintiff's Memorandum 3/22/04 Exhibit O Edel at 45) There were no allegations of work not being completed, and at no time did any party have any problem reaching her. Cherry, in fact, questioned Edel regarding this and Edel told Kossoff that this was the reason her telecommuting was discontinued (Plaintiff's Memorandum 3/22/04, Exhibit N, Kossoff 183-4). GE denied under oath any knowledge of this, although both its Senior Vice President of Risk and Cherry were involved. (Plaintiff's Memorandum 3/22/04 Exhibit O, Edel at 44 and Exhibit D at 18 Answer at 00377, Statement at 000003)

Accepting Defendant's position that Kossoff's new position of Director of Support Services from Director of Contracts was only that of a Portfolio Administration Representative ("PAR") (not a director level position) flies in the face of Defendant's own contention that this action was not a demotion. However, it is clear from the testimony that Kossoff only discovered this in late 2002 when she was denied a raise by Cherry who stated that she was an overpaid clerk.

Defendant also claimed that the person who made the decision to terminate Kossoff's position was William Duffeck. However, the evidence from the written documentation of GE indicates that the plan was to terminate Ms. Kossoff 2 years after she took the position of Director of Support Services. This document was written by Jennifer Cherry (Memorandum in

3

Opposition, 3/22/04, Exhibit P at 143 and 144)

## THE COURT IGNORED DOCUMENTARY AND OTHER EVIDENCE IN THIS MATTER, WHICH TENDED TO PROVE KOSSOFF'S CASE

The court ignored documentary evidence in this matter, which tended to prove Kossoff's case. In Terry v. Ashcroft, 336 F.3d 128 the Second Circuit criticized the lower court's failure to consider the documentary evidence as well as evidence evinced during deposition more favorable to Plaintiff.  Specifically, it criticized the court's failure to consider that a handwritten notation appeared on Terry's application for a position.  The Second Circuit stated "Although there is a factual issue as to who made the notation and when, the presence of the notation would allow the factfinder to conclude that Small was not telling the truth when she said that she did not consider race and that the defendants' stated rationale for the promotion decision was pretextual." (Id at 139). Here, Plaintiff has provided admissible documentary evidence that Defendant considered Ms. Kossoff's "medical condition" to be a significant factor in its placement of her (Amended complaint at paragraph 45, Exhibit O  Plaintiff's Memorandum dated 3/22/04 Edel deposition at 71, Exhibit E of Defendant's Exhibits Dated 4/5/04 at 00010).  It appears to preclude working at any other job, not any particular job and does not refer to working at another location with regard to this  and another location should not be read into this statement. In other words, it considered her medical condition enough to effect her ability to work, the very definition of a regarded as disabled claim. This Court also ignored the written and admissible position statement from Defendant that stated that Ms. Kossoff was informed in June 2001 that she would eventually  be laid off when Edel admitted that he did not, in fact, inform Kossoff, after she directly asked him what was going to happen to her  (Plaintiff's Memorandum dated 3/22/04 Exhibit B at 00386 and

4

Exhibit O at 86 Line 19 through 23, and the allegation that Edel told her in October 2001 that her duties were going to be transferred Exhibit O at 42 , lines 8 - 13).  The Court did also not consider the admissable document (Plaintiff's Memorandum dated 3/22/04 Exhibit J which shows that Kossoff was entitled to both a Stay bonus and her VIC bonus, since it clearly states, "Other compensation such as bonuses, Share the Success (pro-rated), Quality Checks and Management Awards, may be paid throughout the timeline." and credited only Cherry's testimony that the Stay bonus was supposed to replace the VIC bonus. This Court also did not consider the written admissible evidence that shows that Ms. Kossoff's position of Director of Support Services was intended to be a job of only two years (Exhibit E, bullet point at two years) where Kossoff was terminated approximately two years (almost to the day) of when she was told that she was to become the Director of Support Services, which is contrary to the submitted affidavit of Duffeck.  It should be noted that although Defendant alleged to the CHRO that Kossoff was  was allegedly informed that she was to be laid off in June 2001,  Duffeck's affidavit states that the decision was made <u>sometime in the summer of 2001</u>. (Duffeck affidavit at 4) There were then only six working days during which all this could have occurred and Duffeck could not affirmatively state when specifically he determined that Kossoff's services were not needed.  The Court also ignored the fact that Cherry for Defendant  falsely stated in writing under oath that she had no knowledge or information "sufficient to form a belief as to the truth of the Complainant's allegation that she was granted permission to telecommute one day per week by some unnamed individual" when in fact she testified under oath that it was her own employees that arranged this (Plaintiff's Memorandum in Opposition of 3/22/04 Exhibit D,Defendant's CHRO answer signed under oath, by Cherry at #11, Plaintiff's Memorandum of 3/22/04 Exdhibit

5

P Cherry deposition at 34-36). The Court also ignored in its entirety the Answer under Oath to CHRO by Defendant in the person of Jennifer Cherry with numerous allegations that turn out to be contradicted by their own testimony. As such, there is sufficient evidence by which a jury could rule in favor of Plaintiff, and summary judgment is not warranted.

### EVIDENCE THAT OTHER PERSONS OVER THE AGE OF FIFTY WITH HEALTH CONDITIONS THAT WERE DEMOTED BY DEFENDANT IS RELEVANT TO THE INQUIRY

Evidence that other persons over the age of fifty with health conditions that were demoted by defendant is relevant to the inquiry because it provides proof that Defendant's normal course of business was to demote those over the age of fifty whom it perceived to be disabled or have health problems. In Terry v. Ashcroft, 336 F.3d 128, 141 the Second Circuit accepted evidence suggesting that retaliation was commonplace based on the known similar treatment of others under the same or similar circumstances. Here, Kossoff provided evidence that one of the reasons that she suspected age and/or disability discrimination was not only what happened to her once Phoenixcor was merged into Defendant, but what occurred specifically to John Edel (over the age of 50) when he was hospitalized and had a substantial portion of his intestines removed. (Exhibit A of Plaintiff's Surreply. Kossoff at 197, 198 and Exhibit B of Plaintiff's Surreply, Edel at 82-84), indicating that demotion under such circumstances was commonplace.

### DEFENDANT VIOLATED THE ADA BY MAKING MEDICAL INFORMATION PART OF PLAINTIFF'S PERSONNEL RECORD

Here it is clear that Defendant placed medical information in Ms. Kossoff's personnel file. This was, in fact, a violation of the ADA. According to the EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act 915.002 7/25/00 (at p. 3) an employer is required to treat any medical information, even if voluntarily disclosed by an employee, as a confidential medical record. Confidential medical records may not be disclosed unless it is required to be used in accommodating an employee or for safety reasons, and must be kept in a separate file apart from personnel records,. This is to protect employees from misuse of medical information by their supervisors, and to prevent employers from discriminating against current employees with regard to changes in employment status. See H.R. Rep. No. 101-485, pt.2 at 75 1990 and e.g. 29 CFR1630.14

## ACTUAL DISABILITY

The court held that Kossoff was not disabled, while Kossoff has provided evidence by which a jury could reasonably determine that she was disabled. It should be noted that "[T]he Act addresses substantial limitations on major life activities, not utter inabilities" Bragdon v. Abbott, 524 U.S. 624, 640 (1998). Here, Plaintiff provided evidence that she was limited in her ability to stand and to sit. She had to use a back brace and pain medication. She sought treatment through physical therapy. The Court notes that she only pursued physical therapy for ten weeks, yet that is not her testimony. Her testimony was that her health care insurance provided by Defendant in 2001 would only authorize ten weeks therapy at the New Jersey site - that is not to say that she did not require additional therapy - she also had additional physical

7

therapy in New City on Saturdays beyond that (See Plaintiff's Memorandum 3/22/04 at Exhibit N page 104 describing physical therapy sessions for 10 weeks in New Jersey at line 14 and 15 and in New City at line 23 through 25). Despite these mitigating factors, she still had problems sitting and standing. Although this court held that driving is not a major life activity or is a substantial limitation, her description is indicative of the problems Ms. Kossoff had in sitting and in moving her legs - her leg would become numb to the point that she needed a driver when driving and thus had substantial difficulties controlling her movements. (Memorandum in Opposition 3/22/04 Exhibit N, Kossoff at 97-100) Again, the ADA addresses substantial disabilities, not inabilities.

As such, summary judgment is inappropriate.

## REGARDED-AS DISABILITY

The court held that Kossoff was not disabled, while Kossoff has provided evidence by which a jury could reasonably determine that she was. Here, Plaintiff has provided admissible documentary evidence that Defendant considered Ms. Kossoff's "medical condition" to be a significant factor in its placement of her (Amended complaint at paragraph 45, Exhibit O Plaintiff's Memorandum 3/22/04 Edel deposition at 71, Exhibit E of Defendant's Exhibits Dated 4/5/04 at 00010). It appears to preclude working at any other job, not any particular job and does not refer to working at another location with regard to this and another location should not be read into this statement. In other words, it considered her medical condition enough to effect her ability to work, the very definition of a regarded as disabled claim. In addition, Kossoff provided evidence that one of the reasons that she suspected age and/or disability discrimination was not only what happened to her once Phoenixcor was merged into Defendant, but what occurred

specifically to John Edel when he was hospitalized and had a substantial portion of his intestines removed. (Exhibit A of Plaintiff's Surreply. Kossoff at 197, 198 and Exhibit B of Plaintiff's Surreply, Edel at 82-84), indicating that demotion after being taken ill and being perceived as disabled was commonplace at Defendant. Moreover, it is of no effect that this notation was put in Kossoff's file after she had been moved from her position of Director of Contracts. A statement made even several years after the fact is relevant and, "...the weight to be given these comments is a matter for the jury..." Terry v. Ashcroft at 139

## AGE DISCRIMINATION

### 1. Contracts Manager Position

Again, the Court accepts the allegations of Defendant, although contradicted in its own testimony, and ignores evidence from Kossoff's deposition. Defendant claims that a paralegal degree was an essential requirement, but the only change in the position from that of Director of Contracts was that the Contracts Manager would be responsible for some negotiation of contracts. The facts clearly show otherwise:

1. It does not say how a paralegal certification was the only avenue to give training in this regard, and in fact admitted that a person without such a degree could do the job;

2. The paralegal was not responsible for any legal aspects of negotiation, but would have to report to the legal department for advice (a paralegal offering legal opinions on her own, on which the company would rely would be committing the unauthorized practice of law). Although this position was created at the same time Al Kolb, an in-house attorney, had resigned, Defendant specifically stated that the Contracts Manager would have to

9

report to the legal department. As such, its contention that this was a replacement for Kolb is untrue. Further, Kossoff testified that she also interfaced with GE attorneys in the position, and as such, met the actual requirement for the position - that she had experience in negotiating contracts, and could consult with the legal department when legal issue came up;

3. Contrary to the Court's evaluation, there is sufficient evidence that Kossoff was more qualified for the position than Wright:

   A. As the Court noted, Wright, the person selected for the position, did not have experience in such negotiations. Kossoff did have such experience, and performed all requirements of the position while Wright was on maternity leave;

   B. Wright admitted that it was *Kossoff* who gave her initial boundaries in negotiating (Plaintiff's Surreply of 4/22/04 Exhibit D, Wright deposition at 57), not any other party;

   C. Edel, the individual who determined who was qualified for the position, testified that Kossoff could have persuaded him that she was qualified for the job (Plaintiff's Surreply of 4/22/04 Exhibit B, Edel at 113), albeit after he (the hiring manager) told her she was not qualified. As such, for Defendant to now claim Kossoff was not qualified is without basis.

As such, there is sufficient evidence that a jury could determine that Kossoff was more qualified for the position than Wright. This clearly gives rise to an issue of fact as to whether the paralegal requirement was an artificial one, put in in bad faith, to prevent Kossof from being considered, while it hired a younger, less qualified individual. As such, summary judgment was

inappropriate.

## 2. Denial of a Raise in 2002

The Court was incorrect in its evaluation of Ms. Kossoff's position, where it accepted Defendant's contention that it was equivalent to a PAR. Defendant admitted to numerous facts showing this not to be an appropriate determination:

1. Defendant specifically did not refer to her as a PAR, but a "Super-PAR", a designation Defendant created for her <u>above that of PARS</u>, as she had (Plaintiff's Memorandum 3/22/04 Exhibit O Edel at 89, Exhibit P Cherry at 52);

2. Defendant testified that she had numerous substantial additional duties to that of PARS (Plaintiff's Memorandum 3/22/04 Exhibit O Edel at 90-91);

3. Her position was "*Director* of Support Services", <u>not</u> PAR (not a director-level position), although she was not compared to other directors ( Plaintiff's Memorandum 3/22/04, Exhibit O, Edel at 92);

4. The position held by Kossoff at that time was "contracts manager" (Plaintiff's Memorandum 3/22/04 Exhibit O, Edel at 13, Exhibit P Cherry at 124);

5. When asked why she was compared with PARS when that was not her designation, Edel's only explanation was "(B)ecause I thought I was doing the upmost to make sure she had a job" (Plaintiff's Memorandum 3/22/04, Exhibit O, Edel at 118).

6. Defendant claims that Cherry acted "favorably on Mr. Edel's recommendations that plaintiff's salary be increased". This totally mis-characterizes the testimony cited, and is contrary to her other testimony that Kossoff was not eligible or entitled for a pay increase (Plaintiff's Memorandum 3/22/04 Exhibit P, Cherry at 53). Documents show that Cherry

>   in fact <u>acted to block a raise</u> for Ms. Kossoff (GE 000219-20 and GE 000207, Exhibit I of Plaintiff's memorandum in opposition to Motion for Summary Judgment).

7. Defendant admits no comparison to any specific position was actually done, rather that "possibly" an "anecdotal" look was made, although Defendant could not show either who made this alleged comparison, or with whom Kossoff was actually compared (Plaintiff's Memorandum of 3/22/04 Exhibit P, Cherry at 53, 55). Further, at the time this alleged comparison was made, Kossoff was specifically listed as a "manager" (Id. Cherry at 124). If Kossoff truly was a PAR, one would expect her salary would have been diminished to approximate that of a PAR.

Kossoff's position, and duties, were much more similarly situated to that of Director. Wright, a younger female, was most similarly situated (her position replaced Kossoff, and Kossoff performed Wright's duties while she was on leave). As such, there is sufficient evidence by which a jury could determine Defendant's proffered non-discriminatory reasons for its actions are nothing more than pretext for their illegal and discriminatory actions, done in bad faith, and that it was improper to compare Kossoff with other PARS. As such, summary judgment is inappropriate.

### 3. Denial of VIC Bonus for 2001

In its decision, the Court totally accepted Defendant's contention that the bonus paid to Kossoff was a VIC bonus, while there is absolutely no evidence to back this - and the only evidence presented by either party was by Plaintiff - that:

1. It specifically was defined as a "stay" bonus, not VIC bonus, and was done entirely outside the VIC system; and

11

2. The bonus was given to her for remaining with Defendant after its decision to terminate her, to help facilitate the change.

3. The Court ignored the admissable documentary evidence at Plaintiff's Memorandum dated 3/22/04, Exhibit J that contradicts Defendant's statements - In particular it states that Kossoff was entitled to a stay bonus, as well as any other bonus for the prior year to which she might be entitled to during her severance period.

There is also evidence to show Defendant's actions were motivated by discrimination against Kossoff's age. Even if the Court were to accept that Kossoff received a VIC bonus, her replacement, Wright, a non age-protected female, received a VIC bonus almost three times Kossoff's, even though Kossoff had performed Wright's duties without incident. As such, summary judgment is inappropriate.

### D. Termination

Plaintiff's evidence demonstrating issue of fact regarding this matter have been mentioned previously in this motion. While Defendant makes the unsupported argument that Wright was not intended to replace Kossoff, the similarities in the position, the timing of the action, and the fact that Kossoff both trained Wright, and filled in for her suggest that Wright was in fact her replacement, and that "Manager of Contracts" was a replacement for "Director of Contracts". The evidence demonstrating an issue of fact that age was a factor in the decision is that Kossoff is an age protected individual, that she (and her position) was replaced with a younger female not more qualified than she, that Defendant has failed to demonstrate any legitimate non-discriminatory reason for the action. As such, summary judgment in inappropriate.

## COMMON LAW CLAIMS

### 1. Breach of Implied Covenant of Good Faith

The Court states that because statements to CHRO were made by an attorney they should remain out of the bounds of consideration of litigation. However, attorneys do not act in a vacuum and clearly received this information from Defendant, and it was not given to its attorneys in response to Plaintiff's affidavit. Since it is Defendant who initially raised the issue and Kossoff knew nothing about the plan, nor stated anything about it in her complaint to CHRO (See Memorandum dated 3/22/04, ExhibitD at 00002-4), it is Defendants actions to stop a CHRO investigation that should be considered here

### 2. Fraud Based Claims

### A. Qualification for Contracts Manager Position

The Court was incorrect in its ruling that "the only evidence Plaintiff puts forth ... is Plaintiff's own subjective belief that she could do that job and did in fact do the job without a paralegal". As detailed earlier in this Motion, Edel, her supervisor, testified that paralegal certification was not a requirement, and that Kossoff could in fact do the job (although he told her otherwise when she asked). Kossoff also was the trainer for Wright, and as the court noted, was able to perform the job in her absence. Further, plaintiff has provided clear evidence that when Defendant made this decision, it intentionally created only a temporary position for Kossoff. The mere fact that Defendant put in the requirement of paralegal, and interviewed only paralegals, can just as easily suggest that this was done solely to prevent Kossoff for consideration, and a jury could reasonably determine that Defendant intentionally or negligently

14

and falsely created both the position of Contracts Manager, and the new position for Kossoff, with the intent of her accepting this lessor position and not applying for Contracts Manager, to her detriment.  This would satisfy the requirements of fraud or negligent misrepresentation, and as such, summary judgment was inappropriate.  Moreover, Plaintiff alleged that she repeatedly asked Defendant for assurances that her job was not in jeopardy between approximately June and December 2001 and Edel repeatedly told her that her job was secure (even though Defendant alleges that she was told in June 2001 that she was to be laid off).  Such a misrepresentation is exactly the situation in Stewart v. Cendant Mobility Corp.267 Conn. 96, 837 A.2d 736 (2003), where an executive was repeatedly told that her job was secure after inquiring.  In that case, Stewart didn't even know whether she would look for another job or not if she was told her job was not secure, yet the Connecticut Supreme Court held that such representations of reassurance were sufficiently clear and definite to constitute a promise upon which Plaintiff could rely.  In this case, Plaintiff repeatedly asked for assurance and did not start looking for a job in June, when she was assured her job was safe and did not .

### B. Telecommuting

Contrary to the Court's determination that this claim is based on the time Defendant *allowed* Kossoff to telecommute, but rather, the time when it *took away* this right - that is the action that gives rise to the claim.  Neither does Plaintiff claim that there was a specific agreement that it was intended to be permanent, As detailed earlier in this motion, Defendant testified that it took this away solely on the basis that it had no way of knowing that it knew she was working while home.  Yet Cherry testified that there was no way that Defendant could

15

monitor Kossoff's computer useage, which is what she did (nor did it ever try to), and both she and Edel testified that at no time did any person have any problems trying to contact her while she was at home (and that it did so). As such, at the time Defendant made this decision, its proffered reason is false, and Defendant knew it to be so. And again, the facts show that at the time Defendant created the position for her, it intended it only to be a two year position (arguably the amount of time it would take to eliminate the need for her). As such, summary judgment is inappropriate.

### C. Compensation

Contrary to the Court's ruling, there was evidence that Kossoff took the position of Support Services Manager to her detriment. Cherry's compensation, both in salary and bonus, was higher than Kossoff's. Plaintiff again contends that it has provided proof that the position was specifically intended to be temporary. Again, accepting Defendant's position that Kossoff was in reality a PAR, and no longer a director level employee would affect her ability to apply for management-level promotions. As such, summary judgment is inappropriate.

# FRAUD AND NEGLIGENT MISREPRESENTATION FROM APPROXIMATELY JUNE THROUGH DECEMBER 2001

The Court ignored the fact that Kossoff repeatedly asked for assurances regarding her employment from June up until approximately December 2001 yet was told in June she need not worry about her employment, that it was secure and in October, Edel alleged he did not tell Kossoff anything in response to her query (Although Kossoff claims she was told her position was

16

secure). This is precisely the situation faced in <u>Stewart</u>, totally misinterpreted by opposing counsel. Clearly this claim was made in Plaintiff's amended complaint at #77 and #85 wherein around October Edel told Kossoff that he did not know what was going to happen to her.

## CONCLUSION

As detailed above, Plaintiff has demonstrated clear issue of fact by which a jury could reasonably rule in her favor for all causes of action alleged in her complaint. As such, summary judgment is inappropriate, and Plaintiff respectfully requests that the Court grant Plaintiff's motion in its entirety, and direct that this matter be set for trial.

Respectfully submitted,

Fern H. Paes
Fed. Bar No. CT21566
PAES & PAES, LLC
Attorney for Plaintiff
4 Washington Avenue
Sandy Hook, CT 06482
203-270-6441

CERTIFICATION   This is to certify that a copy of this Memorandum in support of Motion for Reconsideration was sent to Attorneys for Defendant, Attorney Lawrence Peickes, Wiggin & Dana, LLP, 400 Atlantic Street, PO Box 110325, Stamford, CT 06911-0325 via first class mail, postage prepaid, on February 25, 2005.

_____
Fern H. Paes