UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- X
JOAN KOSSOFF,                                                :
                                                             :   Case No. 3:03cv0203 (PCD)
                    Plaintiff,                               :
                                                             :
v.                                                           :
                                                             :
GENERAL ELECTRIC CAPITAL                                     :
CORPORATION,                                                 :   MARCH 18, 2005
                                                             :
                    Defendant.                               :
------------------------------------------------------------- X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Joan Kossoff ("plaintiff") seeks reconsideration of this Court's Ruling on Motion for Summary Judgment ("Ruling"), entered on February 11, 2005, on the theory that "the Court did not consider all the evidence before it." (Pltf's Mem. at p. 1). Yet every item of evidence and argument presented by plaintiff in her motion for reconsideration was in fact addressed by the Court in its thorough and cogent 28-page opinion, and deemed insufficient to establish the existence of a material factual dispute warranting a trial. If plaintiff believes the Court erred, recourse is available via an appeal to the Second Circuit; reconsideration, however, is not a viable means of challenging the correctness of the district court's decision, as plaintiff purports to do.

\* \* \* \* \* \* \* \* \*

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' ... A court must narrowly construe and strictly apply Local Civil Rule [7(c)], so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute

for appealing a final judgment." Melnitzky v. Rose, 305 F. Supp. 2d 349, 350 (S.D.N.Y. 2004)(Citations omitted).

Accordingly, parties moving for reconsideration face a stiff burden: "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995)(Citations omitted). "A motion for reconsideration 'is not simply a second opportunity for the movant to advance arguments already rejected.'" Connecticut State Dep't of Social Services v. Thompson, 242 F. Supp. 2d 127, 163 (D. Conn. 2002), quoting Shrader, 70 F.3d at 257.

"Here, Plaintiff point[s] neither to any controlling decisions nor any data that the Court overlooked. Accordingly, [her] motion to reconsider [should be] denied." ACEquip Ltd. v. American Engineering Corp., 218 F.R.D. 364, 365 (D. Conn. 2003)(Dorsey, J.).

A.   **Disability Discrimination Claims**

   1.   **Actual Disability**

Plaintiff does not appear to be pressing the claim that she is substantially impaired in her ability to perform one or more major life activities, so as to be disabled within the meaning of the ADA. In any event, the Court carefully analyzed each and every impairment plaintiff ascribes to herself and determined as a matter of law that these limitations were either insubstantial or did not affect a major life activity, and consequently that plaintiff "fail[ed] to make out a prima facie case of actual disability based on the record at hand." (Ruling at p. 12). Plaintiff presents no new facts or case law to suggest the Court's conclusion in this regard was erroneous.

### 2. Regarded As Disabled

Plaintiff simply retraces her steps in arguing that Mr. Edel's comment in her March 2000 evaluation, that "health and commuting issues could be limiting factors in placing elsewhere," suffices to establish a triable issue as to whether defendant regarded her as disabled. This argument is no more compelling now than it was before.

To begin with, plaintiff misstates the governing law in asserting that defendant "considered her medical condition enough to effect her ability to work, the very definition of a regarded as disabled claim." (Pltf's Mem. at p. 4). Plaintiff's reading of the "regarded as" prong of the ADA's definition of a "disability" is, as the Court observed, overly broad: "To make out this claim, a plaintiff must establish that she was regarded as significantly restricted in the ability to perform 'either a class of jobs or a broad range of jobs' ..." (Ruling at pp. 12-13, quoting Cameron v. Community Aid for Retarded Children, Inc., 335 F.3d 60, 64-65 (2d Cir. 2003)). Thus, even if defendant regarded plaintiff as somewhat impaired in her ability to work, and to be sure there is no record evidence suggesting that is the case, she still comes up short of the applicable standard of proof. See Jacques v. DiMarzio, Inc., 386 F.3d 192, 202-04 (2d Cir. 2004).

Plaintiff's assertion that Mr. Edel's comment "appears to preclude working at any other job" (Pltf's Mem. at p. 4) is grounded in pure supposition. On its face the remark does not suggest anything more than a belief by Mr. Edel, as stated in his non-contradicted sworn testimony, that plaintiff's commuting limitations narrowed her employment options within this particular GE business. (Def's SJ Mem. at p. 11-12). This belief is hardly surprising given plaintiff's admission that she was unwilling to commute to Danbury, the location of the business' headquarters. (Id.).

In the end, therefore, the Court correctly concluded that: "There is nothing in the record before the Court to suggest that being unable to commute long distances has anything to do with [plaintiff's] ability to actually perform in the workplace as there is no indication that being able to drive long distances was in any way a job requirement of this job or any class of jobs at stake." (Ruling at p. 14). Plaintiff's motion for reconsideration does not adequately bolster the record as to overcome this deficiency.

3.  **Medical Records**

Plaintiff claims for the first time in her motion for reconsideration that defendant violated the ADA by ostensibly "plac[ing] medical information in Ms. Kossoff's personnel file." (Pltf's Mem. at p. 7). It is far too late in the day for plaintiff to be advancing a new cause of action. U.S. v. Demosthene, 326 F. Supp. 2d 531, 534 (S.D.N.Y. 2004)("A motion for reconsideration is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion ...")(Citation omitted). Be that as it may, plaintiff's freshly minted allegations do not establish an ADA violation.

Although nowhere stated by plaintiff, the so-called "medical information" in question appears to be the March 2000 evaluation prepared by Mr. Edel wherein he makes a passing reference to "health and commuting issues." According to plaintiff, by including this evaluation in her personnel file, defendant ran afoul of the EEOC's Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans With Disabilities Act. (Pltf's Mem. at p. 7). Regulations issued by the EEOC make plain, however, that employers must treat as confidential only that medical information obtained *in connection with a "a medical examination (and/or inquiry) of an employee..."* 29 C.F.R. §

1620.14(c)(Emphasis added).  See Giaccio v. The City of New York, 2005 WL 95733, at *3-4 (S.D.N.Y. Jan. 19, 2005)(discussing scope of ADA's confidentiality provision as extending to information obtained via medical examinations or medical inquiries).

Mr. Edel's evaluation merely alludes to "medical information" provided by plaintiff as it relates to plaintiff's prospects for procuring alternative positions.  This information was not obtained by defendant in connection with a medical examination or inquiry and, therefore, the evaluation does not come within the regulatory definition of "a confidential medical record." 29 C.F.R. § 1620.14(c)(1).  See Cash v. Smith, 231 F.3d 1301, 1307-08 (11th Cir. 2000)("In this case, the disclosure that Cash complains of was not [] the result of an examination ordered by APCO, but of a voluntary disclosure that Cash made to Smith.  The statute and regulation cited by Cash do not govern voluntary disclosures initiated by the employee, and therefore the district court correctly granted APCO's motion for summary judgment on this count.").

As a matter of law, defendant's retention of the March 2000 evaluation in plaintiff's personnel file did not breach the ADA's requirement that medical test results and disclosures made in response to medical inquiries be kept in separate files.

B.      **Age Discrimination Claims**

   1.      **Contracts Manager Position**

In support of her renewed contention that she was denied the Contracts Manager position on account of her age, plaintiff makes the same basic arguments previously presented to, and rejected by, the Court.  Plaintiff again takes issue with the qualifications established by defendant for the job, namely a paralegal degree and experience, claiming, as before, "that this was an artificial qualification devised with the express intent of preventing [her] for consideration for the position." (Pltf's Mem. at p. 2).

5

As the Court observed in addressing this very argument the first time around, "[i]n most circumstances, 'in order to establish a prima facie case of discrimination, a plaintiff must show that she met the defendant's criteria for the position.'" (Ruling at p. 16, quoting Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 127 (2d Cir. 2004)). It is, of course, undisputed that plaintiff did not satisfy the minimum qualifications established by defendant for the Manager of Contracts position.

Plaintiff contends, though, as she did before, "that the position could be done without this qualification ..." (Pltf's Mem. at p.2). But, as the Court already concluded, this contention simply misses the point: "When it comes to hiring and job performance criteria, 'absent a showing by the plaintiff that the employer's demands were made in bad faith ... an employer who is sued on allegations of age discrimination is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury.'" (Ruling at p. 15, quoting Thornley v. Penton Publishing, 104 F.3d 26, 29 (2d Cir. 1997)).

Yet again, plaintiff argues that, notwithstanding the undisputed fact she did not possess either a paralegal degree or paralegal experience, she was equally or more qualified for the position than the successful applicant, Christine Wright. (Pltf's Mem. at p. 10). The Court, however, squarely addressed and rejected this argument, finding that plaintiff failed to make the requisite showing that her qualifications were so far superior to Ms. Wright's "'that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" (Ruling at p. 17, quoting Byrnie v. Town of Cromwell Bd. of Education, 243 F.3d 93, 103 (2d Cir. 2001)).

Whether or not plaintiff was competent to handle the functions associated with the Contracts Manager position, as she strenuously urged in opposing summary judgment and

6

strenuously urges once again in support of her motion for reconsideration, is, as the Court correctly concluded, immaterial: "While Plaintiff may indeed have been capable of performing the duties of the Contracts Manager, this is not the determinative inquiry." (Ruling at p. 17)(Citations omitted).

Plaintiff cites not a single precedent overlooked by the Court in granting defendant's motion for summary judgment as to her claim alleging discriminatory denial of the Contracts Manager job, and the evidence cited in her motion for reconsideration is no different than that already found wanting by the Court. Reconsideration is, therefore, plainly unwarranted. Thompson, 242 F. Supp. 2d at 164 ("Accordingly, because the principle now raised by the defendant was both previously raised by the defendant and previously known to the court, the defendant has failed to meet the threshold requirement for a motion for reconsideration ...").

2.   **2002 Raise**

After repeating a series of factual contentions previously advanced in her opposition to defendant's motion for summary judgment, plaintiff offers the conclusory allegation that she was "similarly situated" to Ms. Wright and hence, absent age-based animus, she too would have received a raise in 2002. (Pltf's Mem. at pp. 11-12). The Court, however, expressly rejected the notion that Ms. Wright was an appropriate comparator, finding that she, unlike plaintiff, had supervisory responsibilities and, as such, the two were not in fact "similarly situated." (Ruling at pp. 18-19). As before, "[o]utside the bare fact that a younger non-similarly situated employee did receive a raise, which is not enough in itself, Plaintiff presents no evidence tending to connect her treatment to her age and there is simply no reason to infer age discrimination at all." (Ruling at p. 19).

### 3. 2001 VIC Bonus

Plaintiff avers that: "In its decision, the Court totally accepted Defendant's contention that the bonus paid to [her] was a VIC bonus ..." (Pltf's Mem. at p. 11). Quite the contrary, the Court found the matter of nomenclature to be entirely immaterial: "While Plaintiff points to irregularities in Defendant's handling of this bonus, i.e., calling it a stay bonus when it was apparently meant to be a VIC bonus, there is still nothing in the record to suggest that it had anything to do with her age." (Ruling at pp. 19-20).

The Court further observed that: "Plaintiff has not even established that she was entitled to a VIC bonus or explained under what conditions one is supposed to receive the bonus." (Ruling at p. 20). Plaintiff, however, offers nothing in her reconsideration papers that even begins to bridge this evidentiary divide. Rather, plaintiff simply re-states the conclusory assertion that she and Ms. Wright were "similarly situated." (Pltf's Mem. at p. 13). The Court found otherwise in granting defendant's motion for summary judgment, and plaintiff has come forward with nothing new in the way of case law or evidence to establish that this determination was incorrect as a matter of law or fact.

### 4. Termination

Plaintiff's effort to resurrect her discriminatory discharge claim is predicated on the contention that, "[t]he evidence demonstrating an issue of fact that age was a factor in the decision is that Kossoff is an age protected individual, that she (and her position) was replaced with a younger female not more qualified than she, that Defendant has failed to demonstrate any legitimate non-discriminatory reason for the action." (Pltf's Mem. at p. 13). There is nothing new here.

To begin with, defendant has never argued, nor can it, that plaintiff is outside the ADEA's protective sphere. Plaintiff's claim that she was replaced by an equally or less qualified employee has already been considered, and rejected, by the Court: "As to Wright, the position she filled was not Plaintiff's but a new position. Although, Plaintiff maintains Defendant acted purposely to force Plaintiff out, as discussed above, Plaintiff has failed to create a question as to whether the qualifications added were motivated by discriminatory purposes. Thus, for the same reasons, it is difficult to see now why on this record Wright's hiring suggests age discrimination." (Ruling at p. 21).

Plaintiff's assertion "that Defendant has failed to demonstrate any legitimate non-discriminatory reason for this action" (Pltf's Mem. at p. 13) is legally and factually untenable. Defendant's burden in the face of a prima facie showing is one of production not proof; thus, to overcome the presumption of discrimination generated by plaintiff's proof of a prima facie case, defendant need only articulate, not "demonstrate," some legitimate, non-discriminatory reason for the adverse action in question. <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216 (2d Cir. 2005). Defendant easily satisfied this minimal burden by explaining "that after Plaintiff's position as Director of Contracts was eliminated it 'manufactured' a position, the support services position, for her rather than terminate her employment and that once her work in that position was completed, when the files were transferred, there simply wasn't a place for her at the company." (Ruling at p. 20).

As to her claim alleging discriminatory discharge, plaintiff has failed to provide the Court with any justification for reconsidering the grant of summary judgment.

C.  **Common Law Claims**

    1.  **Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff misapprehends, or misrepresents, the essence of the Court's rationale for granting summary judgment on the covenant of good faith and fair dealing claim. Contrary to plaintiff's contention, the Court did not suggest "that because statements to CHRO were made by an attorney they should remain out of the bounds of consideration of litigation." (Pltf's Mem. at p. 14). Rather, the point made by the Court was that Ms. Cherry's inability to recall whether it was mandatory for plaintiff to invoke RESOLVE is immaterial given the absence of evidence indicating she was the one advocating that CHRO defer action on plaintiff's claims pending exhaustion of the RESOLVE procedures. (Ruling at pp. 23-24).

Significantly, moreover, plaintiff does not even attempt to challenge the Court's primary holding that she failed to adduce "evidence that Defendant was doing anything but trying to assert rights that it believed it had under the RESOLVE program that are based on what would seem a permissible reading of the program manual." (Ruling at p. 23). As plaintiff's silence on the point confirms, the Court's reasoning in this regard is simply unassailable.

    2.  **Fraud**

        (a)  **Manager of Contracts position**

Plaintiff's contention that defendant dissuaded her from applying for the Manager of Contracts position by falsely representing that a paralegal degree and experience was required continues to be premised on a fundamental misunderstanding of the difference between a job qualification and an essential skill. What plaintiff fails to grasp is, in the Court's words, "Defendant may have been wrong that a paralegal degree was required, but this by itself does not make fraud." (Ruling at p. 25). In other words, it being undisputed that defendant determined a

paralegal degree and experience would be a barrier to entry, there could be nothing fraudulent about telling plaintiff she was unqualified. This is so regardless of whether this qualification standard was truly essential to the ability to perform the functions of the job on a daily basis

Plaintiff misplaces reliance on the Connecticut Supreme Court's decision in Stewart v. Cendant Mobility Services Corp., 267 Conn. 96, 837 A.2d 736 (2003). To begin with, Stewart involved a claim for promissory estoppel, the elements of which are a clear and definite promise prompting detrimental reliance. Id. at 104-05. Plaintiff's claims, by contrast, sound in fraud and negligent misrepresentation and, therefore, she assumed the added burden of proving an intent to deceive or, at a minimum, a failure to exercise reasonable care before communicating false information. (Ruling at p. 24). For this reason alone, Stewart is inapposite.

Plaintiff, moreover, adduces no evidence that she relied to her detriment on Mr. Edel's alleged assurances that her job was not in jeopardy. Thus, the record is devoid of evidence that plaintiff would have, or could have, successfully sought alternative employment, as distinguished from Stewart where the plaintiff came forward with concrete particulars sufficient "to establish that [she] could have secured a sales position with another relocation services firm" and "*would have departed Cendant* if she had not received [her manager's] assurances ... that her employment at Cendant would not be affected negatively in the event that her husband secured employment with a competing firm." 267 Conn. at 114 (Emphasis in original).

Nothing in Stewart, or the factual record, suggests plaintiff's claims for fraud and negligent misrepresentation are viable.

(b)     **Telecommuting**

Plaintiff takes issue with the Court's supposed determination that her "claim is based on the time defendant *allowed* [her] to telecommute," explaining that the claim focuses instead on

11

"the time when [defendant] *took away* this right." (Pltf's Mem. at p. 15). By so arguing, however, plaintiff proves too much. A promise can only form the basis of a fraud or negligent misrepresentation claim if it was false when made. Presley v. Pepperidge Farm, Inc., __ F. Supp. 2d __, 2005 WL 299849, at *23 (D. Conn. Feb. 8, 2005). Thus, even had defendant lied after the fact about the reasons for terminating the telecommuting pact, this would not give rise to a fraud claim.

**(c)    Compensation**

Plaintiff challenges the Court's determination that she failed to come forward with evidence sufficient to demonstrate "she relied to her detriment on any misrepresentation which affected her compensation," but finds no fault in the Court's threshold determination that there was no falsity. (Ruling at p. 27). This determination is, of itself, dispositive of plaintiff's claim. Even as to the matter of detrimental reliance, moreover, plaintiff proffers nothing more than the conclusory statement that "there was evidence that [she] took the position of Support Services Manager to her detriment." (Pltf's Mem. at p. 16). "Conclusory allegations will not suffice to create a genuine issue." Lupacchino v. ADP, Inc., 2005 WL 293508, at *2 (D. Conn. Jan. 21, 2005)(Citation and internal quotation marks omitted).

**(d)    Job Security**

Finally, plaintiff accuses the Court of "ignor[ing] the fact that [she] repeatedly asked for assurances regarding her employment from June up until approximately December 2001 yet was told in June that she need not worry about her employment, that it was secure and in October, Edel alleged he did not tell [her] anything in response to her query (Although Kossoff claims she was told her position was secure)." (Pltf's Mem. at pp. 16-17). Plaintiff again, however, misplaces reliance on Stewart, ignoring that her claims sound in fraud whereas Stewart involved

a claim for promissory estoppel. The record still remains devoid of evidence that at the time Mr. Edel allegedly told plaintiff her position was not in jeopardy, he knew, or upon reasonable inquiry should have known, otherwise. Likewise, as before, plaintiff identifies not a shred of evidence that, if accepted, would show detrimental reliance.

\* \* \* \* \* \* \* \*

"[T]he strict parameters of Local Civil Rule [7(c)] are designed to ensure 'the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" Melnitzky, 305 F. Supp. 2d at 350 (Citation omitted). To reiterate, "[r]econsideration 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked ...'" ACEquip Ltd., 218 F.R.D. at 365 (Citation omitted). Plaintiff's motion amounts to nothing more than a rehashing of previously rejected contentions. The Court did not overlook any record evidence, or disregard controlling case law, and as such plaintiff's motion for reconsideration must be denied.

Respectfully submitted,

Wiggin and Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600
(203) 363-7676 (fax)

By: _____
Lawrence Peikes (ct 07913)
lpeikes@wiggin.com

Attorneys for Defendant
GENERAL ELECTRIC CAPITAL CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration was served on this 18th day of March, 2005, by first-class U.S. mail, postage prepaid, on:

>Michael T. Paes, Esq.
>Fern H. Paes, Esq.
>Paes & Paes, LLC
>4 Washington Avenue
>Sandy Hook, CT  06482

_____
Lawrence Peikes

\2542\7\99250.1