UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN KOSSOFF,<br>　　　　　Plaintiff,<br>　v.<br>GENERAL ELECTRIC CAPITAL<br>CORPORATION,<br>　　　　　Defendant. | Civ. Action No. 3:03CV00203(PCD)<br><br><br><br>DATE: March 29, 2005 |

### PLAINTIFF'S REPLY ON MOTION FOR RECONSIDERATION

Plaintiff JOAN KOSSOFF hereby files this Reply Memorandum in support of its Motion for Reconsideration.

### STANDARD OF LAW

Defendant claims that the issues raised in the motion for reconsideration cannot be considered when it was raised in summary judgment proceedings, yet with regard to the issue of its putting medical information in Kossoff's personnel file, claims that new factors cannot be considered under motions for reconsideration. However, an erroneous factual finding is good reason to reverse a summary judgment motion through a motion for reconsideration. RJE Corp. v. Northville Industries Corp. 329 F.3d 310, 315. The Second Circuit has considered, on appeal, even purely legal arguments first raised in a motion for reconsideration. Id at 274 and 275.

Summary judgment is inappropriate when a material fact at issue is an employer's intent. Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir 1988). A trial court must be cautious about granting summary judgment to an employer when intent is at issue Gallo v. Prudential Residential Services, LP, 22 F.3d 1219, 1224 (2d Cir, 1994). Further, documentary evidence from which a reasonable finder of fact could infer that discrimination had taken place is reason to deny summary judgment. Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003).

In disparate treatment cases, courts generally use a variation of the McDonnell Douglass

balancing test for "an allocation of the burden of production and an order for the presentation of proof in ... discriminatory treatment cases." <u>Reeves v. Sanderson Plumbing Products, Inc</u>. 530 U.S. 133, 142.  This is a burden of production and "can involve no credibility assessment." Id. With regard to both the age and disability/perceived disability claims, Kossoff has provided the following information regarding a number of adverse employment actions.  Kossoff has established at the time the adverse actions occurred she was in her late fifties and/or disabled or perceived as disabled.  She therefore comes under the protections of the ADEA, 29 U.S.C. 631 (a) because she is over the age of 40 and under the protections of the ADA, 42 U.S.C. 12102.  She has established that she was otherwise qualified for either the position of Contracts Manager /Director and Director /Manager of Support Services (Kossoff had two titled positions in 2001, including Contracts Manager and Director/Manager of Support Services, Exhibit O, Edel deposition at 13 "Both the titled positions that she had, one was contracts manager and the other is -- I forget what title they gave her as customer...") , she received good reviews as Director/Manager of Support Services and  Contracts Manager or acting as Contract Manager during Wright's absence. She established she was demoted, denied a raise and then terminated by Defendant.  She  established that Defendant hired at least one person under the age of 40, not disabled to fill her position (with regard to the Contract Manager position) and with regard to the circumstances surrounding her termination, that she was similarly situated to Wright in that Defendant's documents show that she was considered, in fact, a Contracts Manager in 2001 (Exhibit G, 7th person down under employee name, as was Wright "The manager of contracts, Christine Wright...Exhibit O Edel deposition at 9) and she, as well as Wright were working on portions of the Phoenixcor portfolio and CEF biotech. (Id., compare with Wright, 5th person down). She established that Wright was given a raise in October 2001 whereas she was not

(Id). In addition, her treatment by Defendant with regard to the terms and conditions of her employment shows that two individuals layed off under the same circumstances as part of the Phoenixcor acquisition were given an opportunity to explore other jobs within Defendant's corporation whereas she was not (Defendant's memorandum at Exhibit C, page 148, Kossoff was the last person layed off), and both those individuals were at least 15 years younger or under the age of 40 and neither were disabled or perceived as disabled (Exhibit K, Beth D'Amato and Shannon Engel, identified at Exhibit L). According to Cherry, other persons who were layed off may have received a VIC bonus and a stay bonus, but Kossoff not. (Plaintiff's Sur-Reply at Exhibit C, p. 146)

## REGARDED AS DISABLED

The referenced review from John Edel (Exhibit E of Defendant's Memorandum "Health and commuting issues could be limiting factors in placing *elsewhere*. [*emphasis added*]) demonstrates that he considered Ms. Kossoff to be unable to perform "either a class of jobs or a broad range in jobs" rather than "single, particular job" (the standard in <u>Cameron</u> used by the Court). This document stated that Edel's perception of her medical issues "could be limiting factors in placing elsewhere". As Plaintiff stated, this shows that she was considered by virtue of her medical condition to be limited from a wide range of positions. If Edel merely thought that the issue was commuting long distances then he would not have made the statement about her medical condition. This clearly meets the standard of <u>Cameron</u>. This can be combined with the document which demonstrated that Defendant considered the position of Support Services Manager was specifically intended for a limited period of time (Exhibit E of Plaintiff's Memorandum in Opposition, bullet point at 2 years, where Defendant admitted that she was terminated approximately 2 years after she was placed in the Support Services position , Q: "Her job as a super PAR lasted for approximately

two years; is that correct?" A: "Approximately.", Cherry at 143). A reasonable fact-finder could determine that Kossoff was considered to be incapable of performing any permanent position by Defendant. Moreover, Kossoff presented evidence both through herself and Edel (also over the age of 55) that he had been demoted. As in Terry, how others, similarly situated were treated, is relevant. In Terry, non-specific testimony, that retaliation was commonplace was sufficient to reverse a lower court decision that there was no evidence of retaliation against Terry. "Terry's evidence of retaliation includes evidence suggesting that retaliation was commonplace in the New York District office." (Id at 141) Here, there is specific testimony by both Edel and Kossoff that Edel was demoted at the time he had health issues after receiving a promotion just *prior* to having those issues. As such, Summary Judgment should not have been granted on the perception of disability claim. Moreover, there is written evidence, provided by Defendant, that Kossoff was entitled to both a stay bonus and a VIC bonus (Exhibit J of Plaintiff's Memorandum in Opposition "NOTE: Other compensation, *such as bonuses*, Share the Success (pro-rated), Quality checks, and Management Awards, may be paid throughout the timeline.")*(emphasis added)*. According to Cherry, a VIC bonus had to be approved by upper management. Q: "In order to get a VIC bonus, would you have had to go to other upper management?" A: "VICS get approved at a higher level than me." Q: "Is it only you that approved the stay bonus?" A: "Yes." (Cherry at 149, Exhibit P of Plaintiff's Memorandum in Opposition). Kossoff was only given a stay bonus. As such, there are sufficient facts to warrant a reversal.

### THE ISSUE OF DEFENDANT'S VIOLATION OF THE ADA WAS NOT A "NEW ALLEGATION"

Defendant incorrectly claims the issue of its placing of Kossoff's medical records into her personnel file as a "freshly minted allegation". Plaintiff detailed this in its reply to Defendant's motion for summary judgment (p. 6-7) and its LRCP 56(a)(2)statement page 7 at number 31.

4

Especially as Plaintiff has alleged that Defendant has stated it did not keep performance reviews in personnel files (the document which contained this medical information was part of the personnel file provided to Plaintiff by Defendant) it is important that Plaintiff found the document in her personnel file, in that it contained medical information. This simply is additional evidence demonstrating an issue of fact which should be resolved at trial - not at the summary judgment stage.

## PLAINTIFF HAS DEMONSTRATED SHE WAS SIMILARLY SITUATED TO WRIGHT

Defendant incorrectly claims Plaintiff's motion for reconsideration contained only "conclusory allegations" regarding the similarities between her former position as Director of Contracts, and "Manager of Contracts", the job given to Ms. Wright Exhibit O, p 9.) It referenced specific similarities further detailed in Plaintiff's Reply to Motion for Summary Judgment:

(1) At deposition, Edel testified the jobs had "essentially the same responsibilities" (Edel at 20 Exhibit A, Plaintiff's LRCP 56(a)2 p5 at #6); (2) Kossoff trained Wright for the position over a three-month period (Kossoff at 115 Exhibit B. ); (3) Kossoff simultaneously and satisfactorily performed her new duties and other duties while she (Wright) was on maternity leave, needing only about an hour or two of training in order to assume all her duties (Edel at 9-10, Wright at 66-67 Exhibits C and D); (4) Defendant has admitted that it was not Wright's paralegal certification or degree, but rather her prior job experience that qualified her for the position (Edel at 57 Exhibit E); (5) While Defendant claims that the difference between the two positions in that the new position involved what Defendant alleged in its deposition meant negotiating with clients . Kossoff did this in the former position, that is : Assist and opine on legal issues or interface with CEF Danbury "I would interface with Danbury ongoing with legal issues, with Peggy Nebs on the Phoenixcor portfolio. When I was at Phoenicor I interfaced with Al Kolb (Kossoff at 133 Exhibit F) and Q:

"The third bullet point says interface with customers or third party intermediaries on legal and business issues." Was that part of your job as director of contracts?" A: "Yes."(Kossoff at 133)

Significantly, Kossoff was told personnel who reported to her would be transferred to Wright's supervision, lending support to the claim that this was the same position previously held by Kossoff. "When Christine came on, I still reported to - -I still had direct reports. I had Sabrina and Vicky and I was told once she was comfortable with her new position and I trained her, then they would report to her." (Kossoff deposition at 107 and 108).

Contrary to this Court's recitation of the facts it is not merely Kossoff who alleged she was told she was not qualified to apply for the position of Manager of Contracts when she was Director of Contract, Edel, Defendant's Senior Vice President confirmed he told her that (Edel at 112 and 113 and Plaintiff's LRCP 56(a)2 statement at p.5, #10). Wright admitted that it was Kossoff who gave her the contours for negotiating. "I know what the boundaries were given to me by Joan [Kossoff] and what I learned over time, knowing what the boundaries were when negotiating certain areas in a document." (Plaintiff's Surreply Exhibit B)

In fact, while Kossoff rarely had to ask counsel for advice while performing Wright's job, (Kossoff at 124 Exhibit G), Wright had to consult counsel most of the time after she stopped training with Kossoff (Wright at 59 Exhibit H of Plaintiff's Memorandum). Moreover, Defendant falsely claimed at the inception that Wright's position was to replace an attorney, whereas Defendant's documentation proves the position was in large part, intended to replace Kossoff (Cherry at 143).

**DEFENDANT HAS NOT DEMONSTRATED AS A MATTER OF LAW ITS REASONS FOR THE ADVERSE JOB ACTIONS SUFFERED BY KOSSOFF WERE LEGITIMATE**

Defendant misstates the law with regard to this issue, and attempts to totally ignore the issue of whether its proffered reason for the adverse actions are pretext. In Reeves v. Sanderson

Plumbing Products, Inc., the Court held "that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." It equated it to a "party's dishonesty about a material fact as affirmative evidence of guilt." Id.  With regard to Kossoff's termination,  Defendant made  false statements to the Connecticut Commission on Human Rights and Opportunities, both under oath and as part of its position statement such as she was told (by some unnamed person) that her position was to end in June 2001 (Exhibit C of Plaintiff's Memorandum in Opposition at 386 "Complainant was advised of this decision in June 2001, and was further informed *at that time* that once her customer service duties were fully transitioned to the St. Louis office, which would take several months, her position would be eliminated and she would be laid off." [*emphasis added*]) when Edel testified that he told Kossoff that he did not know what would happen to her in June 2001 Q: "Did she ask you what was going to happen to her in June?" A: "I think she did." Q: "What did you respond?" A: "I think I responded I don't know." and Kossoff testified that after June she was assured by Edel that her job was secure.  Defendant has not provided any testimony that says otherwise and significantly has not provided a witness who has said that he or she informed Kossoff in June 2001 that she was to be laid off. Significantly, under oath to the Commission on Human Rights and Opportunities (CHRO), in response to Kossoff's affidavit at 16 ("When I asked my supervisor what was going to happen to me [he] told me he knew nothing about me being let go") Defendant denied what Edel later confirmed (Exhibit D at 16(p 00377), "Deny").  The Connecticut Commission on Human Rights and Opportunities required a corporate representative to sign the answer under oath, and that individual who provided a false statement of a material fact was Jennifer Cherry.  By providing evidence to show that the claim of required paralegal

requirement was unnecessary (Q: "So is it your testimony that a person with business experience but not the paralegal degree would not be qualified for that portion [negotiation] of the duties?" A: "I have a degree in history and I consider myself very qualified to do credit analysis, risk analysis or bankruptcy.  No, I think it was a level of business experience and my comfort with the person.") and that Kossoff was fully capable (and performed) the position of Contract Manager satisfies the standard set out in Schmidt v. St. Regis Paper Co., 811 F.2d 131 (2d Cir, 1987) when an employer's proffered explanation is unworthy of credence it provides an inference of discrimination.  Moreover, it is Edel's testimony, that he specifically told her she was not qualified. (Exhibit B of Surreply Brief, Edel deposition at p.113  Q. "That would have been after you told her personally that you felt she wasn't qualified for the job; correct?" A: "Yes." Defendant again cannot have it both ways, alleging that only paralegals were interviewed when it purposefully told someone who held the job that she was not qualified (implying that she did infomally apply) only to come back and say maybe she was, but because she didn't formally apply after being told she wasn't qualified, she was not considered.

## TELECOMMUTING

Defendant misstates Plaintiff's argument that termination of her telecommuting provides evidence of fraud and negligent misrepresentation.  Defendant gave its alleged reasons for terminating this benefit to Kossoff at the time the decision was made. There is ample evidence that Defendant knew the reasons were untrue.  Taking Defendant's arguments at face value, unless an employer gives the reason for the decision to the employee before it tells him/her what the decision is, a fraud action can't, as a matter of law, be asserted. This defies logic and the law.

## COMPENSATION

Contrary to Defendant, the reason the Court dismissed the claim for compensation was "(P)laintiff cannot therefore show that she relied to her detriment on any misrepresentation which affected her compensation". The issue of falsity was specifically not reached by the Court in its ruling. However, Kossoff's reply specified six separate reasons why Defendant's proffered reasons for not comparing Kossoff with directors or managers were untrue:

(1) Kossoff was not considered by either Edel or Cherry as a PAR, but a "Super-PAR", a designation created for her above that of PARS, (Edel at 89 Exhibit H); In fact, her position was "Director of Support Services", not PAR (Edel at 92 Exhibit I); (2) When asked why she was compared with PARS, Edel's only explanation was "(B)ecause I thought I was doing the upmost to make sure she had a job" (Edel at 118 Exhibit J); (3) Kossoff's position at that time was "contracts manager" (Edel at 13 Exhibit K); (4) Defendant claims Kossoff was "overpaid", it admits no comparison was actually done against other managers;(5) Kossoff identified a GE Capital Manager employed in a similar role, listing Wright, a younger, non-disabled employee (Kossoff at 189-190 Exhibit M); (6) Defendant incorrectly claims that Cherry acted "favorably on Mr. Edel's recommendations that plaintiff's salary be increased". Documents show that Cherry in fact acted to block a raise for Ms. Kossoff (GE 000219-20 and GE 000207, Exhibit N). Further, Kossoff did not receive the pay raise to which she was entitled..As such, there is clear evidence of the falsity of Defendant's reasons for its actions.

## Breach of the Covenant of Good Faith and Fair Dealing

Defendant has provided no evidence that Kossoff ever agreed to abide by its Arbitation agreement. The most that they can say is that she received a message that they were sending her the document by e-mail. Defendant never provided the actual attachment sent to Kossoff and

9

this court cannot read into the e-mail that she in fact received the attachment.  Moreover, Defendant has never alleged that it provided any consideration to make such an agreement binding upon her. According to <u>Tarosyan v. Boehringer Ingelheim Pharmaceuticals Inc.</u> 662A.2d 89, 99 (1995) such a change in the terms and conditions is ineffective and counsel is required to know this, yet proceeded to use the ineffective agreement on Defendant's behalf. According to the Connecticut Supreme Court "When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment, however, the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms." Id.  Kossoff,  did not even remember getting the Resolve program, and as previously stated, defendant never provided the e-mail attachment (which presumably it would have if it had possession).   Knowing this, Defendant instead chose to use a document which had no legal basis to attempt to prevent the CHRO from investigating a claim of discrimination. There are sufficient issues of fact to reverse.

## FRAUD AND NEGLIGENT MISREPRESENTATION

The Court failed to give due weight to a document demonstrating that the position of Support Services Manager was specifically intended for a limited period of time (Exhibit E of Plaintiff's Memorandum in Opposition, bullet point at 2 years, where Defendant admitted that she was terminated 2 years after she was placed in the Support Services position , Q: "Her job as a super PAR lasted for approximately two years; is that correct?" A: "Approximately.", Cherry at 143).  A reasonable fact-finder could determine Kossoff was to be kept on for a period of two years where Cherry who wrote the document couldn't explain the notation (Id).

Wherefore, Plaintiff respectfully requests that this Court grant its motion in its entirety.

10

        Respectfully submitted,
        THE PLAINTIFF - JOAN KOSSOFF

By:   _____

        FERN PAES, ESQ. - Bar No. CT 21566
        Paes & Paes, LLC
        4 Washington Avenue
        Sandy Hook, CT 06482
        203-270-6441

CERTIFICATION - This is to certify that a copy of this reply was sent, via first class mail, postage prepaid, on this date, to counsel of record: Lawrence Peikes, Esq. Wiggin & Dana, LLP, 400 Atlantic Street, PO Box 110325 Stamford, CT  06911-0325

        FERN PAES